UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

JEFFREY McNEIL and ALISSA McNeil,

                             Plaintiffs,

                                                6:18-cv-0631
v.                                          (MAD/TWD)

HCDSS and SARAH RIENTE,

                             Defendants.
———————————————————————————

APPEARANCES:

JEFFREY McNEIL
Plaintiff, *pro se*
239 William St.
Upstairs Apt.
Herkimer, NY 13350

ALISSA McNEIL
Plaintiff, *pro se*
239 William St.
Upstairs Apt.
Herkimer, NY 13350

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

      *Pro se* Plaintiffs Jeffrey McNeil and Alissa McNeil have commenced this action against

Herkimer County Department of Social Services ("HCDSS") and Sarah Riente, a HCDSS case

worker, pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  Plaintiffs' complaint and accompanying

application for leave to proceed *in forma pauperis* ("IFP") have been referred to the Court for

initial review.  (Dkt. Nos. 1, 2.)  Also before the Court is Plaintiffs' motion for appointment of

counsel.  (Dkt. No. 6.)  For the reasons discussed below, the Court recommends that Plaintiffs'

complaint be dismissed without prejudice and without leave to amend.

## I.    IFP APPLICATION

Plaintiffs appear to be a married couple.  They have filed only one application for IFP status.  (Dkt. No. 2.)  Technically, each Plaintiff should have completed his or her own form because they are separate plaintiffs in this action.  However, because they have each signed the application individually, the Court will excuse the technical error.

A court may grant IFP status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiffs' IFP application, the Court finds for purposes of this Order and Report-Recommendation that, together, and separately, Plaintiffs meet the financial criteria for IFP.  Therefore, Plaintiffs' IFP application (Dkt. No. 2) is granted.

## II.    LEGAL STANDARD FOR INITIAL REVIEW

Having found that Plaintiffs meet the financial criteria for commencing this case IFP, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e).  Section § 1915(e) directs that when a plaintiff is allowed to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[1]

---

[1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and quotation marks omitted).

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiffs, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

"[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants

adequate notice of the claims against them" are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id.* (citation omitted).

## III.   PLAINTIFFS' COMPLAINT

Plaintiffs' complaint is brought pursuant to 42 U.S.C. § 1983 against HCDSS and case worker Sarah Riente.  (Dkt. No. 1 at ¶ 3.)  The complaint suggests the parties are involved in a proceeding in Herkimer County Family Court regarding allegations of child neglect and/or abuse.  (Dkt. No. 1 at ¶ 4; *see also* No. 1-1 at § VIII.)  Liberally construed, Plaintiffs allege violations of their constitutional rights under the First, Fourth, and Fourteenth Amendments.  (Dkt. No. 1 at ¶ 5; Dkt. No. 1-1 at § VI.)  Plaintiffs' civil cover sheet also references state law claims for assault, libel, and slander, and "criminal code § 242."[2]  (Dkt. No. 1-1 at §§ IV, VI.)  Plaintiffs claim:

> Ms. Riente fabricated lie's in her report, she states my wife and I have said things that are not true.  My daughter [M] has a drifting eye from birth, Ms. Riente stats in her report that I said I was the cause.  I have rocord's from the doctors office that shows our daughter was checked and never head any injuries, never was there neglect or abuse.

(Dkt. No. 1 at ¶ 4.)

---

[2]  All references to Plaintiffs' complaint and civil cover sheet are to the original, unaltered text.

Plaintiffs further allege Defendants have "made bias actions because of my race, Reared our children without due process, threatened us." (Dkt. No. 1-1 at § VI.)  The complaint lists three causes of action:

> First Cause of Action:  For violating our constitutional protected civil right, acting under the "color of law" we ask for no immunity in this case for this violation.  And for punishment for lying under oath.

> Second Cause of Action:  There are statutes that prohibit perjury, without due processing the case Preslie Hardwick V Maria Vreeken; shows exactly what this organization is doing to our family.  We ask that the court takes the necessary step to revoke Ms. Rietnes license.

> Third Cause of Action:  We ask the court for a pre injunctive relief, to take at the beginning to prevent CPS from anything further while this case is being decided.  The worker is discriminating against me and my family, also going against the (HiPPA Law) releasing information.

(Dkt. No. 1 at ¶ 5.)  Plaintiffs seek $800,000 "for the pain and suffering this department as caused, the fundamental liberty interest in the care, custody and control our children are infringed upon all of which without due processing."  *Id*. at ¶ 6; Dkt. No. 1-1 at § VII.

## IV.    DISCUSSION

### A.    Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Plaintiffs' federal claims in this action are brought under 42 U.S.C. § 1983 and are couched in terms of constitutional deprivations.  Ordinarily, the Court would possess subject matter jurisdiction over such claims.  28 U.S.C. §§ 1331, 1343.  Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S.

498, 508 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz*, No. 95-CV-0272

(TJM)(RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995)[3] (stating that "§ 1983 is the

vehicle by which individuals may seek redress for alleged violations of their constitutional

rights").

There are certain situations, however, in which a federal court must abstain from

interfering with pending state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).

Under *Younger* and its progeny, a federal court should abstain from exercising jurisdiction where

three factors are present: "(1) there is an ongoing state . . . proceeding; (2) the claim raises

important state interests; and (3) the state proceedings provide an adequate opportunity to raise

the constitutional claims." *Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999); *accord*

*Parent v. New York*, 485 F. App'x 500, 503 (2d Cir. 2012); see, e.g., *Bruce v. Tompkins Cty.*

*Dep't of Soc. Servs.*, No. 5:14-CV-0941 (GTS/DEP), 2015 WL 151029, at *1 (N.D.N.Y. Jan. 7,

2015) (abstaining from addressing any of the plaintiff's claims, which related directly to a

pending in Family Court pursuant to the *Younger* doctrine). *Younger* abstention is rooted in

principles of comity and was designed to recognize a "proper respect for state functions." *New*

*Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364 (1989) (quoting

*Younger*, 401 U.S. at 44.)

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court

revisited the analysis required to invoked abstention under *Younger*. 571 U.S. at 72-73. *Younger*

abstention is triggered only by three categories of state court proceedings: (1) state criminal

proceedings; (2) civil proceedings that are akin to criminal proceedings; and (3) civil

---

[3]  Plaintiffs will be provided with copies of unpublished decisions cited herein in accordance
with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Mir v. Shah*, 569 F. App'x 48, 51 (2d Cir. 2014) (summary order) (citing *Sprint*, 571 U.S. at 72-73). In *Sprint*, the Court used state-initiated custody proceedings in its analysis as an example of civil proceedings which are akin to criminal proceedings. 571 U.S. at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-20 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) (same).

Here, Plaintiffs state this action relates to a matter proceeding before Judge Brennan in Herkimer County Family Court. (Dkt. No. 1-1 at § VIII.) The Family Court proceeding is a state-initiated proceeding, involving an investigation and a formal petition. *See Sprint*, 571 U.S. at 79 (abstention applies to cases where investigations are involved, culminating in the filing of a formal complaint). Plaintiffs "ask the court for a pre injunctive relief, to take at the beginning to prevent CPS from anything further while this case is being decided." (Dkt. No. 1 at ¶ 5.) Plaintiff also "ask the court take the necessary step to revoke Ms. Rientes license." *Id*. Thus, this case is clearly a situation in which the *Younger* abstention is appropriate. *See, e.g.*, *Bruce*, 2015 WL 151029, at *1 (*sua sponte* dismissing claims seeking injunctive and declaratory relief without prejudice and without leave to amend pursuant to the *Younger* doctrine); *Roach v. Clark*, No. 5:15-0408 (LEK/ATB), 2015 WL 4067504, at *1 (N.D.N.Y. July 2, 2018) (same).

Therefore, the Court recommends *sua sponte* dismissing Plaintiffs' claims, if any, for injunctive and/or declaratory relief without prejudice and without leave to amend pursuant to the *Younger* doctrine. However, because the *Younger* abstention does not apply to claims for

monetary damages, *Kirschner v. Klemons*, 225 F.3d 227, 237-38 (2d Cir. 2000), the Court will

proceed to consider Plaintiffs' claims for damages under § 1983.[4]

### B.      Plaintiffs' § 1983 Claims for Damages

To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was

attributable at least in part to a person who was acting under color of state law and (2) the

conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.

*Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).  Liberally construed, Plaintiffs

allege violations of their constitutional rights under the First, Fourth, and Fourteenth

Amendments, along with violations of state and criminal laws against HCDSS[5] and case worker

Sarah Riente.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (quotation marks omitted).  Thus, "[a]llegations which are nothing more than broad,

---

[4]  "While it is true that the *Younger* doctrine does not apply to monetary damages, to the extent
that damages would be available, the court would have to stay the action, pending the state
court's decision."  *Roach v. Clark*, 2015 WL 4067504, at *6 n.18 (citing *Kirschner*, 225 F.3d at
238 (stay of damage proceeding may be appropriate when declaratory and injunctive relief are
dismissed due to abstention)).

[5]  HCDSS is not amendable to suit.  Under New York law, departments that are merely
administrative arms of a municipality have no separate legal identity apart from the municipality
and therefore cannot be sued."  *Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d
539, 552 (S.D.N.Y. 2009); *see, e.g.*, *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y.
2013) (sua sponte dismissing claims against county department of social services) *Pierce v.
Chautauqua Cty*, No. 06-CV-644, 2007 WL 2902954, at *3 (W.D.N.Y. Sept. 28, 2007) (same).
In deference to Plaintiffs' *pro se* status, the Court construes Plaintiff's § 1983 claims as against
Herkimer County, thus allowing consideration of Plaintiffs' allegations against HCDSS.
In the event any portion of Plaintiffs' complaint survives review by the District Court, it is
recommended that Herkimer County be substituted as Defendant in the place of HCDSS.

simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

A municipality or municipal entity cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91). Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability. *See Thomas v. City of New York*, No. 15-CV-3236 (JG)(CLP), 2015 WL 9412543, at *2 (E.D.N.Y. Dec. 22, 2015) ("A single incident is insufficient to raise an inference of the existence of a custom, policy, or practice, as is a mere recitation of a failure to train municipal employees.") (citing C*ity of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). The plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996); *see also Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

### 1.    Procedural Due Process

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (citation omitted).  Parents have a fundamental liberty interest in the "care, custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000); *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).  However, the government has a compelling interest in the welfare of children, and the relationship between parent and child may be investigated and terminated by the state provided constitutionally adequate procedures are followed.  *Santosky v. Kramer*, 455 U.S. 745, 766 (1982).  "Notwithstanding the existence of this constitutional right, the right to family integrity does not include a constitutional right to be free from child abuse investigations."  *Roach v. Clark*, 2015 4067504, at *10 (quotation marks and citation omitted).

Accordingly, as "a general rule . . . before parents may be deprived of the care, custody, or management of their children without their consent, due process –ordinarily a court proceeding resulting in an order permitting removal – must be accorded to them."  *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003) (quotation marks and citation omitted).  The failure to afford parents pre-removal due process may give rise to a Fourteenth Amendment procedural due process claim.  *See Tenenbaum*, 193 F.3d at 593.

Where a state actor has not removed a child from a parent's custody, however, there has been no deprivation entitling a parent to procedural due process.  *See Daniels v. Murphy*, No. 06-CV-5841 (JFB)(WDW), 2007 WL 1965303, at *4 (E.D.N.Y. July 2, 2007) ("[B]ecause plaintiff does not allege that a state actor removed a child from a parent's custody, the complaint fails to

present circumstances that would trigger plaintiff's entitlement to the procedures that must be afforded to a parent when the coercive power of the State seeks to separate them from their children.") (quotation marks and citation omitted); *see also Brennan v. Cty. of Broome*, No. 09-CV-677 (TJM), 2011 WL 2174503, at *8-9 (N.D.N.Y. June 2, 2011) ("Plaintiff also fails to present a viable procedural due process claim against Defendant based upon his liberty right to the custody of his son.  Again, the claim fails because Defendant did not remove the child from Plaintiff's custody.") (citation omitted); *cf. Bryant*, 692 F.3d at 218 (recognizing "deprivation" requirement of a procedural due process claim).

Here, Plaintiffs state in vague and conclusory fashion that Defendants have "infringed" upon their "fundamental liberty interest in the care, custody and control" of their children "without due processing."  (Dkt. No. 1 at ¶ 6.)  Plaintiffs allege case worker Sarah Riente fabricated lies in her report and lied under oath.  *Id*. at ¶¶ 4, 5.  Plaintiffs have not, however, alleged Defendants interrupted their parental custody in any way whatsoever.  Without suffering a deprivation of custody, Plaintiff cannot state a procedural due process claim.  *See Brennan*, 2011 WL 2174503, at *8-9; *Daniels*, 2007 WL 1965303, at *4.  Accordingly, the Court recommends dismissing Plaintiffs' Fourteenth Amendment procedural due process claim.

### 2.    Substantive Due Process

Parents also have a "substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (quotation marks, citation, and alterations omitted).  "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a

legitimate governmental objective." *Southerland*, 680 F.3d at 151 (quotation marks and citation omitted).

To state a claim for a violation of this substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him or her of custody was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Tenenbaum*, 193 F.3d at 600. It is not enough that the government act be "incorrect or ill-advised"; it must be "conscience-shocking." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." *Tenenbaum*, 193 F.3d at 600 (quotation marks omitted).

However, absent truly extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process custody claim. *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir.2003). Such temporary deprivations do "not result in the parents' wholesale relinquishment of their right to rear their children," so they are not constitutionally outrageous or conscience-shocking. *Id*. (alternations omitted). Thus, "while a procedural due process claim challenges the procedure by which removal is effected, a substantive due process claim challenges the fact of [the] removal itself." *Bruker v. City of New York*, 92 F. Supp. 2d 257, 266-67 (S.D.N.Y. 2000).

Like a procedural due process claim, a plaintiff must establish loss or an interruption of custody to state a substantive due process claim. *See Oglesby v. Eikszta*, 499 F. App'x 57, 60-61 (2d Cir. 2012) (finding no substantive due process violation where "plaintiffs admit that they never lost custody of any of their children"); *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d

267, 276 (2d Cir. 2011) ("Where there is no actual loss of custody, no substantive due process claim can lie.") (citations omitted).

Inasmuch as Plaintiffs have not alleged even a temporary loss of custody, let alone a "wholesale relinquishment of rights," Plaintiffs have failed to state a claim for a substantive due process violation. Therefore, the Court also recommends dismissing Plaintiffs' Fourteenth Amendment substantive due process claim.

### 3. First Amendment

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend I. Although referenced in their civil cover sheet (Dkt. No. 1-1 § VI), Plaintiffs have not alleged any facts that would support a First Amendment claim. Therefore, the Court recommends dismissing this claim for failure to state a claim.

### 4. Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." U.S. Const. amend. IV. When a child is taken into state custody, "his or her person is 'seized' for Fourth Amendment purposes," and the child "may therefore assert a claim under the Fourth Amendment that the seizure of his or her person was 'unreasonable.'" *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013). However, "[a] Fourth Amendment child-seizure claim belongs only to the child, not to the parent[.]" *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 94 (N.D.N.Y. 2013) (citing *Southerland*, 680 F.3d at 143).

Here, although Plaintiffs' civil cover sheet references the Fourth Amendment, such a claim is not available to the parents themselves.[6]  In any event, there is no allegation or indication a child was taken into state custody and, therefore, "seized" for purposes of the Fourth Amendment.  Accordingly, the Court recommends dismissing Plaintiffs' Fourth Amendment claim.

### 5.    Discrimination

Plaintiffs allege "the worker is discriminating against me and my family, also going against the (HiPPA Law)[7] releasing information."  (Dkt. No. at ¶ 5.)  Plaintiffs also allege Defendant "made bias action because of my race."  (Dkt. No. 1-1 at § VI.)

To state an equal protection claim, a plaintiff must show that a government actor intentionally discriminated against him or her on the basis of race, national origin, or gender. *Maher v. Roe*, 432 U.S. 464, 470 (1977); *see also Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class.").  Such a showing has not been made here.  "Conclusory allegations of racial discrimination are insufficient to maintain a § 1983 action."  *McMillan v. Togus Reg'l Office, Dep't of Veterans Affairs*, 120 F. App'x 849, 852 (2d Cir. 2005).

---

[6]  Because Plaintiffs are proceeding *pro se*, they may not represent the interest of minor child, whatever those interests are.  *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007) (holding a person who has not been admitted to practice law may not represent anyone other than himself or herself).  A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors.  *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).  The exception is not applicable to this case.

[7]  The Court assumes Plaintiffs are referring to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6.

Further, "[c]ourts have overwhelmingly concluded there is no private right of action under HIPAA." *Coon v. Burkly*, No. 1:13-CV-1306 (TJM), 2014 WL 1976669, at *8 (N.D.N.Y. May 15, 2014) (citations omitted); *see also Cassidy v. Nicolo*, No. 03 Civ. 6603(CJS), 2005 WL 3334523, at *5 (W.D.N.Y. Dec. 7, 2005) (collecting cases). "Enforcement of HIPAA is reserved exclusively to the Secretary of Health and Human Services." *Krowicki v. Sayemour*, No. 6:16-CV-1186 (DNH/ATB), 2016 WL 9227665, at *4 (N.D.N.Y. Oct. 5, 2016) (citation omitted).

In light of the foregoing, the Court recommends dismissing Plaintiffs' claims for discrimination and any claim purportedly brought under HIPAA.

### 6.     Verbal Threats

Plaintiffs allege Defendants "threatened us." (Dkt. No. 1-1 at § VI.) However, they have alleged no injury. The law is clear that verbal harassment and/or threats alone are not actionable under § 1983. *Hendricks v. Boltja*, 20 F. App'x 34, 36-37 (2d Cir. 2001); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not violate any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."). Therefore, the Court recommends dismissing Plaintiffs' claims based on verbal threats and/or harassment alone.

### 7.     Criminal Law Offenses

Liberally construed, Plaintiffs allege violation of 18 U.S.C. § 242 and claim Sarah Riente committed perjury. (Dkt. No. 1 at ¶ 5; Dkt. No. 1-1 at § VI). They "ask for no immunity in this case for this violation. And for punishment for lying under oath." (Dkt. No. 1 at ¶ 5.) However, there is no private right of action to enforce either state or federal criminal statutes. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (no private right of action under 18 U.S.C. § 242)

15

(citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)); *see also*

*Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing,

*inter alia*, *Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL

1560164, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because there is no

private right of action for perjury under New York Law)).

Furthermore, all witnesses at a judicial proceeding have an absolute immunity from

liability damages based on their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). This

immunity applies even to public officials who knowingly give false testimony. *Id*. at 345.

Based on the foregoing, the Court recommends dismissing Plaintiffs' claims based on

alleged criminal violations.

### 8.    Municipal Liability

As discussed above, HCDSS is not a proper Defendant. Plaintiffs do not allege, and

nothing in the complaint suggests, that any constitutional violation resulted from a custom,

policy, or practice of Herkimer County. *See Plair v. City of New York*, 789 F. Supp. 2d 459

(S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility

standard[.]"); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir. 2014) (summary

order) (holding claim against municipal entity was properly dismissed under 28 U.S.C. § 1915

for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or

practice of the municipality"). Therefore, the Court recommends dismissing Plaintiffs' *Monell*

claims for failure to state a claim.

In light of the foregoing, the Court recommends *sua sponte* dismissing Plaintiffs'

complaint in its entirety. Further, "[e]ven if the court found that an action for damages against

the caseworker [and county] could proceed, the case would not be able to proceed while the

Family Court action is pending.  Although abstention applies only to injunctive relief, any finding against [Defendants] would necessarily affect the validity of the case before Judge [Brennan]."  *Roach v. Clark*, 2015 WL 4067504, at *12.  Indeed, as was the case in *Roach v. Clark*, this Court "assumes that a defense to the neglect petition pending in Family Court would be that it was based upon insufficient or fraudulent information."  *Id*. at *12.  Furthermore, Plaintiffs would be unable to challenge that finding in this Court pursuant to the *Rooker Feldman* doctrine[8] if the Family Court decides the issues adversely to Plaintiffs.  *See id*. (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)).[9]

    **D.**    **Opportunity to Amend**

       Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it.  *Cuoco*, 222 F.3d at 112 (citation omitted).

---

[8]  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments.  *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT), 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination.  *Id*. (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

[9]  An exception applies if the Family Court decides in Plaintiffs' favor.  Then they are not considered to have "lost" in state court, and the *Rooker Feldman* doctrine would not apply.  *See Graham v. City of New York*, 869 F. Supp. 2d 337, 347-48 (E.D.N.Y. 2012).  If Plaintiffs had stated a claim, a stay of the action could have been appropriate.  *See Rosen v. Cty. of Suffolk*, 53 F. App'x 578, 579 (2d Cir. 2002) (citing *Kirschner*, 225 F.3d at 238).  However, for reasons discussed above and because Plaintiffs have not stated a claim, the Court recommends dismissal without prejudice.

At this time, better pleading will not cure the substantive problems identified above. Therefore, the Court recommends dismissing Plaintiffs' complaint in its entirety without prejudice and without leave to amend pursuant to the *Younger* doctrine and 28 U.S.C. § 1915(e)(2)(B)(ii).

## V.    SUPPLEMENTAL JURISDICTION

Inasmuch as the Court is recommending dismissal of Plaintiffs' § 1983 claims, the Court also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, if any.  *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (holding district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

## VI.    MOTION FOR APPOINTMENT OF COUNSEL

In light of the above recommendation, Plaintiffs' motion for appointment of counsel (Dkt. No. 6) is denied as moot without prejudice should the District Court not dismiss the complaint as recommended.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that Plaintiffs' IFP Application (Dkt. No. 2) is **GRANTED for purposes of filing only**, and it is further

**RECOMMENDED** that Plaintiffs' complaint (Dkt. No. 1) be *sua sponte* **DISMISSED without prejudice and without leave to amend** pursuant to the *Younger* doctrine and 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that Plaintiffs' motion for appointment of counsel (Dkt. No. 6) is **DENIED as moot without prejudice** should the District Court not dismiss the complaint as recommended; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiffs, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: August 17, 2018
          Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[10]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

Case 6:18-cv-00631-MAD-TWD   Document 12   Filed 08/17/18   Page 20 of 126

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, *3, 1994 U.S.Dist. LEXIS 17698, *8–9 (N.D.N.Y. Nov. 14, 1994)* (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3rd 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, *1, 1992 U.S.Dist. LEXIS 18864, *2–3 (S.D.N.Y. Dec. 10, 1992)* (same) (citations omitted).

Case 6:18-cv-00631-MAD-TWD    Document 12    Filed 08/17/18    Page 21 of 126

Myers v. Wollowitz, Not Reported in F.Supp. (1995)
1995 WL 236245

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**
© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:18-cv-00631-MAD-TWD   Document 12   Filed 08/17/18   Page 22 of 126

Bruce v. Tompkins County Dept. of Social Services ex rel...., Not Reported in...

2015 WL 151029

2015 WL 151029
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rudoph M. BRUCE, II, on behalf of
himself and his son, T.R.B., Plaintiff,
v.
TOMPKINS CNTY. DEP'T OF SOC. SERVS.,
through Kit KEPHART, Cmm'r; Jennifer M.
Donlan, Esq.; and Patricia A. Carey, Comm'r,
Tompkins Cnty. Dep't of Soc. Servs., Defendants.

No. 5:14–CV–0941 (GTS/DEP).
|
Signed Jan. 7, 2015.

**Attorneys and Law Firms**

Rudolph M. Bruce, II, Newfield, NY, pro se.

***DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Rudolph M. Bruce, II, on behalf of himself and his son T.R.B. ("Plaintiff") against the above-captioned county and two individuals ("Defendants") arising from a currently pending proceeding in Tompkins County Family Court, are (1) United States Magistrate Judge David E. Peebles' Report–Recommendation recommending that Plaintiff's Complaint be dismissed without leave to replead and without prejudice pursuant to the *Younger* doctrine, and (2) Plaintiff's two-page Objection, which fails to contain a specific challenge to the Report–Recommendation. (Dkt.Nos .4, 5.) After carefully reviewing the relevant filings in this action, the Court can find no clear error in the Report–Recommendation: Magistrate Judge Peebles employed the correct legal standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 4.) The Court would add only that Magistrate Judge Peebles' thorough Report–Recommendation would survive even a *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles' Report–Recommendation (Dkt. No. 4) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED*** without leave to replead and without prejudice.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

*REPORT, RECOMMENDATION, AND ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Rudolph M. Bruce, II., purporting to act on behalf of himself and his son, T.R.B., has commenced this action against Tompkins County Department of Social Services ("DSS") and two individuals, pursuant to 42 U.S.C. § 1983, alleging that the defendants have deprived him and his son of their civil rights. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for consideration. For the reasons set forth below, I recommend that plaintiff's complaint be dismissed without leave to replead.

I. *BACKGROUND*
This action was commenced on July 28, 2014. Dkt. No. 1. Plaintiff's complaint asserts claims on his behalf and on behalf of his son, T.R.B., and names Tompkins County DSS, Kit Kephart, Jennifer M. Donlan, Esq., and Patricia A. Carey as defendants. *Id* . at 1–2. Plaintiff's complaint is accompanied by an application for leave to proceed IFP. Dkt. No. 2.

In his complaint, plaintiff alleges that his son's First Amendment right of free speech was infringed by the defendants, who apparently took custody of T.R.B. and his siblings [1] on or about June 17, 2014, based upon T.R.B.'s statement that "he would rather be dead if he could not be with his family." [2] Dkt. No. 1 at 5. The complaint suggests that, prior to taking custody of T.R.B. and his siblings, Tompkins County DSS investigated

Bruce v. Tompkins County Dept. of Social Services ex rel...., Not Reported in...

2015 WL 151029

a complaint of alleged child neglect, and proceedings before Honorable Joseph R. Cassidy, a Tompkins County Family Court Judge, have commenced regarding the custody of the children. *Id.* at 6.

[1]   Plaintiff's complaint alludes to T.R.B.'s brother and sister, and plaintiff's IFP application indicates that plaintiff has three children. Dkt. No. 1 at 5; Dkt. No. 2 at 2.

[2]   Plaintiff's complaint does not disclose the age of T.R.B. Dkt. No. 1.

**\*2** Liberally construed, plaintiff's complaint alleges that defendants have deprived him of his right to custody of his children under the First, Fourth, Fifth, and Fourteenth Amendments, and have deprived T.R.B. of his First Amendment right to free speech. *See generally* Dkt. No. 1. As relief, plaintiff seeks (1) return of his children to his custody and (2) Judge Cassidy's recusal from the pending family court matter in Tompkins County or removal of the matter to Broome County. *Id.* at 4, 7.

## II. *DISCUSSION*

### A. *Application to Proceed IFP*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [3] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application is granted. [4]

[3]   The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of N.Y.,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

[4]   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

### B. *Sufficiency of Plaintiff's Claims*

#### 1. *Standard of Review*

Because I have granted plaintiff's motion to proceed *in forma pauperis,* I must review the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99–MC–0304, 99–MC–0408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

Case 6:18-cv-00631-MAD-TWD   Document 12   Filed 08/17/18   Page 24 of 126

Bruce v. Tompkins County Dept. of Social Services ex rel..., Not Reported in...

2015 WL 151029

**\*3** When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R .D. 15, 16 (N.D.N.Y.1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

### 2. *Analysis of Plaintiff's Claims*

It is clear from plaintiff's complaint that the claims asserted on his behalf and on behalf of T.R.B. directly relate to a pending proceeding before Judge Cassidy in Tompkins County Family Court regarding the custody of T.R.B. and his siblings. Dkt. No. 1 at 6. Pursuant to *Younger v. Harris,* 401 U.S. 37, 43–45 (1971), and its progeny, however, a federal district court does not have jurisdiction over an action seeking injunctive or declaratory relief "where '1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in state court.' " *Parent v. N.Y.,* 485 F. App'x 500, 503 (2d Cir.2012) (quoting *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 647 (2d Cir.2009)).

The *Younger* doctrine "applies with equal force to [both criminal and] civil proceedings," including proceedings pending in family courts. *Parent,* 485 F. A'ppx at 503; *Donkor v. City of N.Y. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224 (S.D.N.Y.1987).

**\*4** In this case, it is clear from plaintiff's complaint that the three conditions necessary to establish *Younger* abstention are satisfied. First, as discussed above, there is an ongoing proceeding in Tompkins County Family Court concerning plaintiff and the custody of his children. Dkt. No. 1 at 6. Second, "[a] state plainly has an interest in the outcome of a child custody dispute adjudicated in its courts." *Grieve v. Tamerin,* 269 F.3d 149, 152–53 (2d Cir.2001). Turning to the third condition, "the relevant question under *Younger* is whether the state's procedural remedies could provide the relief sought not whether the state will provide the constitutional ruling which the plaintiff seeks." *Spargo v. N.Y. State Comm'n of Judicial Conduct,* 351 F.3d 65, 79 (2d Cir.2003) (quotation marks, alterations, emphasis omitted). Courts in this circuit have frequently concluded that a pending proceeding in state family court "affords ... adequate opportunity for judicial review of [a plaintiff's] constitutional claims." *Best v. City of N.Y.,* No. 12–CV–7874, 2014 WL 163899, at *10 (S.D.N.Y. Jan. 15, 2014); *see also Hidalgo v. N.Y.,* 11–CV–5074, 2011 WL 5838494, at *3 (E.D.N.Y.21, 2011); *Reinhardt v. Mass. Dep't of Soc. Servs.,* 715 F.Supp. 1253, 1257 (S.D.N.Y.1989).

Based upon the foregoing, I recommend that the court abstain from addressing any of the claims asserted in the plaintiff's complaint, all of which relate directly to the proceeding pending in Tompkins County Family Court.

### C. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes

Bruce v. Tompkins County Dept. of Social Services ex rel...., Not Reported in...

2015 WL 151029

Case 6:18-cv-00631-MAD-TWD    Document 12    Filed 08/17/18    Page 25 of 126

of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*5** In this case, the court is precluded from adjudicating the claims asserted in plaintiff's complaint on his behalf and on behalf of T.R .B. due to the pending proceeding in Tompkins County Family Court, and no amendment to the complaint could cure this defect. Accordingly, I recommend that plaintiff not be granted leave to replead. [5]

[5]    It is worth noting that plaintiff is precluded from pursuing claims on behalf of his son, T.R.B., *pro se.* See *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see also Fauconier v. Comm. on Special Educ.,* No. 02–CV–1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003). In the event my recommendation that plaintiff's complaint be dismissed without leave to replead is not adopted by the district judge, and any of the claims asserted on behalf of T.R.B. survive, plaintiff must first obtain legal representation to pursue those claims.

In addition, because Tompkins County DSS is not amenable to suit, *Hoisington v. Cnty. of Sullivan,* 55 F.Supp.2d 212, 214 (S.D.N.Y.1999), in the event any portion of the plaintiff's complaint survives review

by the district judge, I recommend that Tompkins County be substituted as a defendant in the place of Tompkins County DSS.

### III. *SUMMARU AND RECOMMENDATION*

A review of plaintiff's application for leave to proceed IFP reflects that he is eligible for that status. Because all of plaintiff's claims asserted both on his behalf and on behalf of T.R.B. relate to an ongoing proceeding in Tompkins County Family Court, however, I recommend that the court abstain from adjudicating any of them. Based upon the foregoing, it is hereby

ORDERED that plaintiff's leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint be DISMISSED without leave to replead and without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed Sept. 4, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 151029

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4067504
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matthew J. ROACH, Plaintiff,
v.
Jennifer CLARK, et al., Defendants.

No. 5:15–CV–0408 (LEK/ATB).
|
Signed July 2, 2015.

**Attorneys and Law Firms**

Matthew J. Roach, pro se.

### ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on April 22, 2015, by the Honorable Andrew T. Baxter, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 7 ("Report–Recommendation"). *Pro se* Plaintiff Matthew J. Roach ("Plaintiff") timely filed Objections. Dkt. No. 9 ("Objections").

Within fourteen days after a party has been served with a copy of a magistrate judge's reportrecommendation, the party "may serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); L.R. 72.1(c). If a party objects to a reportrecommendation, "the Court subjects that portion of the report-recommendation to a *de novo* review." *Williams v. Roberts,* No. 11–CV–0029, 2012 WL 760777, at \*3 (N.D .N.Y. Mar. 7, 2012) (citing FED. R. CIV. P. 72(b)(2) and 28 U.S.C. § 636(b)(1)(C)); see also *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court should review that aspect of a report-recommendation for clear error. *Barnes v. Prack,* No. 11–CV–0857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); *Farid v. Bouey,* 554 F.Supp.2d 301, 306–07 & n. 2 (N.D.N.Y.2008); see also *Machicote v. Ercole,* No. 06 Civ. 13320, 2011 WL

3809920, at \*2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

Plaintiff objects to the portion of the Report–Recommendation explaining that Plaintiff may not represent his child as a *pro se* litigant. *See* Objs. at 2–5; Report–Rec. at 2. The ReportRecommendation states that Plaintiff "may not represent either Ms. Davendorf or A.R.," and therefore reviewed the Complaint only as it applied to Plaintiff. Report–Rec. 2–3. Therefore, A.R.'s Application to proceed *in forma pauperis* was not approved, because it was improperly filed by Plaintiff, who is not admitted to practice law. *See Lattanzio v. COMTA,* 481 F.3d 137, 139–40 (2d Cir.2007); see also 28 U.S.C, § 1654.

The remainder of Plaintiff's Objections merely reiterate allegations made in the Complaint, or are conclusory. *See* generally Objs. Accordingly, the Court has reviewed the remainder of the Report–Recommendation for clear error and has found none.

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 7) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's claims against Defendants Clark, Warren, Snyder, Gonzales, Woodfork, and Onondaga County are **DISMISSED without prejudice and with leave to replead** pursuant to 28 U.S.C, § 1915(e)(2)(B) (ii) for failure to state a claim; and it is further

**\*2 ORDERED,** that Plaintiff's claims against Defendants Pirro–Bailey, White, Jennifer "Doe," John "Doe," and Sutkowy are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) (i)-(iii); and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 1) for a temporary restraining order is **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

MATTHEW J. ROACH, and o/b/o, DARLENE DEVENDORF and our NATURAL CHILD, A.R. Plaintiffs,

v.

JENNIFER CLARK, et al., Defendants.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Matthew J. Roach. (Dkt. No. 1) Plaintiff Roach has also filed an application to proceed in forma pauperis ("IFP") and appears to ask for appointment of counsel in the complaint. (Dkt. Nos. 1 at 5, Dkt. No. 5). [1] For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

[1]    Plaintiff originally submitted an incomplete application to proceed IFP. (Dkt. No. 2). Based upon the defects in his application, the court ordered administrative closure of the action until plaintiff filed his properly completed form at Dkt. No. 5. The case was then reopened for initial review. (Dkt. No. 6).

**I. *IFP Application/Representation***

A review of plaintiff Roach's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees and finds that plaintiff Roach is financially eligible to proceed IFP. Plaintiff Roach appears to be attempting to bring this action on behalf of two other individuals: Darlene Devendorf and a minor child, A.R. Although the court may infer that the minor child cannot afford to pay the filing fee, Ms. Devendorf has not filed an IFP application, and this court cannot make such an assumption about her.

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [2] *Lattanzio v. COMTA,* 481 F.3d 137, 139–40 (2d

Cir.2007). *See also* 28 U.S.C. § 1654. Therefore, plaintiff Roach may not represent either Ms. Devendorf or A.R. While Ms. Devendorf could sign the complaint, apply for IFP, and represent herself if she chose to do so, a minor child may not, [3] and plaintiff Roach may not represent his minor child. *Armatas v. Maroulleti,* 484 F. App'x 576, 577 (2d Cir.2012); *Tindall v. Poultney High School Dist.,* 414 F.3d 281, 284 (2d Cir.2005). The court will proceed to consider the complaint as it applies to plaintiff Roach and will consider plaintiff Roach's request for appointment of counsel below.

[2]    An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen,* 603 F.3d 15, 20 (2d Cir.2010). The exception is not applicable to this case.

[3]    *See Cheung v. Youth Orchestra Found. of Buffalo,* 906 F.2d 59, 61 (2d Cir.1990) (a nonattorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed.R.Civ.P. 17(b)). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.*

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

**\*3**   In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an

opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. *Complaint*

The complaint is very rambling, and the court will attempt to summarize the claims that plaintiff may be making, keeping in mind that great liberality must be shown to pro se plaintiffs. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (pro se papers are interpreted liberally to take the strongest arguments suggested therein). Plaintiff names eleven defendants. Most of the defendants are either caseworkers or supervisors in the Onondaga County Department of Children and Family Services. ("CFS"): Jennifer Clark (Caseworker); Mary Woodfork (Supervisor); Christopher Warren (Supervisor); Virginia Snyder (Supervisor); Mararita Gonzalez (Supervisor); Jennifer "Doe" (Top Investigator 2006); John or Jane "Doe" (Top Investigator Supervisors 2006); David Sutkowy (Commissioner of CFS); CFS ("Municipality")[4]; Ronnie White, Jr. (Deputy County Attorney); and Michelle Pirro Bailey (Family Court Judge).

[4]    The court notes that plaintiff cannot sue the CFS as an entity itself. Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau,* 904 F.Supp.2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) (dismissing claim against the police department); *Umhey v. County of Orange,* 957 F.Supp. 525, 530 31 (S.D.N.Y.1997) (dismissing case against the County Board of Ethics).

Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id. See also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)). In this case, plaintiff has written "municipality" under CFS, thus, the court will assume that plaintiff is attempting to sue Onondaga County, the proper defendant.

The court has interpreted plaintiff's complaint as a challenge to what appears to be the termination of parental rights. The first two pages of plaintiff's factual statement are simply a criticism of the CPS system, including plaintiff's statement that the Department of Justice is an "allied party with this department in the endeavor to clean up New York and fix the 'Broken System.' " (Complaint "Compl." at 5–6). Plaintiff alleges that defendant Jennifer Clark "has failed and neglected her duties to strengthen the parental child relationship" between plaintiff, Ms Devendorf, and their child A.R.[5] (*Id.* at 6–7). Plaintiff alleges that defendant Jennifer Clark has maliciously interfered with the family relationship by committing "fraudulent acts," based on her own personal problems. (Compl. at 7). Plaintiff then alleges that supervisors, Mary Woodfork, Victoria Snyder, and Margarita Gonzalez have failed to adequately train Jennifer Clark. (*Id.*) Plaintiff alleges that defendant Jennifer Clark has "conspired" with these supervisors "to provide only a minimal insufficient service to plaintiff's family."[6] (*Id.* at 8).

[5]    Plaintiff may be referring to N.Y. Fam. Ct. Act § 614(1)(c), which is entitled "Originating proceeding for the commitment of the guardianship and custody of a permanently neglected child." This section is contained in Part 1 (Permanent Termination of Parental Custody by Reason of Permanent Neglect) of Article 6 (Permanent Termination of Parental Rights, Adoption, Guardianship and Custody). Section 614 provides that CPS may initiate a proceeding for guardianship and custody under certain circumstances. The agency must allege in its petition, inter alia, that it made "diligent efforts" to encourage and strengthen the parental relationship. *Id.* § 614(1)(c).

[6]    Plaintiff then digresses into a discussion of an alleged "policy" to provide minimal services. Plaintiff claims

that this "policy" is an attempt to obtain federal funds to keep CPS operating, for paychecks and bonuses and to provide the employees of CPS with "expense accounts for their personal benefit" instead of the clients' benefit. (Compl. at 8–9).

**\*4** Plaintiff alleges that "the Commissioner"[7] of CPS signed a petition to terminate plaintiff's parental rights that was "brought" by defendant Assistant County Attorney Ronnie White, Jr. (Compl. at 10). Plaintiff claims that the petition was brought "fraudulently" in violation of plaintiff's due process rights; his right to effective assistance of counsel; and his right to be free from cruel and unusual punishment. (Compl. at 10–11). Plaintiff claims that these allegedly fraudulent proceedings began in December of 2005 or January of 2006, after a false report of child abuse was filed with the New York State Abuse/Neglect Registry. (Compl. at 11). Plaintiff claims that the report was filed by a jealous neighbor[8] who wanted plaintiff's remodeled apartment.[9] (Compl. at 11–12). Plaintiff claims that this neighbor has also made more recent complaints against her own step-daughter and has "used" defendant Jennifer Clark, who is A.R.'s "current" caseworker. (Compl. at 14).

[7]   The court assumes that plaintiff is referring to defendant Commissioner Sutkowy because plaintiff does not mention his name or the date that he allegedly signed this "petition." (Compl. at 10).

[8]   Plaintiff later appears to state that Ms. Devendorf told him that the false report was made by this neighbor. The neighbor made the complaint to the Abuse/Neglect Registry and to a friend who worked at CPS. (Compl. at 13).

[9]   It is unclear how the remodeled apartment would relate to plaintiff's claims, however, plaintiff spends almost an entire page of his complaint detailing the renovations he made to his apartment which made it attractive to his jealous neighbor. (Compl. at 12). Plaintiff also describes all the things that he did for his son, A.R. to "nurture" the child. (Compl. at 12–13).

As a result of this false report in December of 2005 or January of 2006, defendant Jennifer "Doe" ("Top Investigator") came to plaintiff's apartment, accompanied by the Syracuse Police. (Compl. at 14). Plaintiff alleges that defendant Jennifer Doe then asked Darlene Devendorf, if defendant Doe could perform a body search of A .R.[10] Plaintiff alleges that defendant Doe began to

conduct an inappropriate search of the child and would not allow Ms. Devendorf to be present.[11] Plaintiff states that ultimately defendant Doe found no signs of abuse on A.R., and the complaint to the Abuse/Neglect Registry was declared "unfounded." (Compl. at 15).

[10]   It is unclear whether plaintiff Roach was present during any of this incident.

[11]   Although it is not relevant to this court's decision, it is unclear how plaintiff or Ms. Devendorf were aware that the search was inappropriate or how either of them could describe how defendant Doe was conducting the search, when plaintiff stated that Ms. Devendorf was not allowed to be present for the search.

However, plaintiff speculates that as a result of this incident, a conspiracy against him began. This speculation is based upon a subsequent proceeding to terminate plaintiff's parental rights brought by CPS, "collaterally based upon fraudulent grounds," because they had no basis for bringing such a proceeding. (Compl. at 15–16). Plaintiff alleges that "effective" counsel was appointed, who told plaintiff that counsel would be able to get the neglect petition dismissed because it was based upon grounds that had been declared "unfounded." (Compl. at 16). However, plaintiff states that this assigned attorney was "removed" shortly thereafter. Plaintiff claims that "ever since," counsel has refused to look at the fact that the "original petition" for neglect was brought based on an "unfounded" report.[12] (Id.)

[12]   The complaint gets more confusing at ths point because plaintiff states that the "original petition" for neglect was brought "on grounds not raised by the New York State Abuse/Neglect Register" which were "unfounded 'Abuse Report' ...." (Compl. at 16). Plaintiff did not mention an "original petition." He only cites to a report which was determined to be "unfounded."

It also appears that the "current" neglect/termination of rights proceeding was recently and is still pending because plaintiff alleges that defendant Ronnie White, Jr. brought this "current petition" improperly, and plaintiff later refers to the February, 2015 proceeding before Judge Pirro–Bailey. (Compl. at 17, 19). Plaintiff claims the current petition is one to terminate parental rights, and it is procedurally improper because it was signed by Commissioner David Sutkowy and "brought" by

Ronnie White, Jr. (*Id.*) Plaintiff seems to claim that CPS should have "brought" the petition, because it was the "authorized" agency, and that such action was "outside the jurisdiction of the Onondaga County Attorney's Office." (*Id.*) Plaintiff claims that defendant Sutkowy signed the petition without knowing the "full facts and circumstances" and "without fully investigating and leaving no stone unturned." Plaintiff also alleges that defendant White failed to properly investigate the facts. (Compl at 17–18).

**\*5** Plaintiff states that "these coordinating officials" have allowed violations of plaintiff's due process rights, his right to the effective assistance of counsel, and his right to be free from cruel and unusual punishment. (Compl. at 18). Plaintiff claims that defendant Family Court Judge Michelle Pirro Bailey "unbeknownst to her," lacked jurisdiction to hear a permanent neglect proceeding in her court on February 4, 2015. (Compl. at 19). Plaintiff states that fraud and trickery were used against Ms. Devendorf, who apparently signed a "judicial surrender instrument in October of 2014," which also violated her rights under the Fifth, Sixth, and Eighth Amendments .... "[13]

[13]    As stated above, plaintiff Roach may not represent Ms. Devendorf or their child. Thus, these claims are not being considered.

The complaint contains three causes of action. (Compl. at 20–21). Plaintiff alleges that he was denied due process because of the "fraudulent" neglect proceeding which had no foundation or basis because the "original 'abuse' " complaint was determined to be unfounded (First Cause of Action); plaintiff was denied the effective assistance of counsel, which should be equal to that required in a criminal proceeding (Second Cause of Action); and plaintiff was denied his right to be free from cruel and unusual punishment because the effect of defendants' actions caused him years of unnecessary pain due to the mismanagement of A.R.'s case, which should have been closed in the first instance because the original complaint was based on "fraud" (Third Cause of Action). (Compl. at 20).

Plaintiff moves for a Temporary Restraining Order ("TRO") to prevent Family Court Judge Pirro–Bailey from terminating plaintiff's parental rights and requests monetary relief. (Compl. at 19–19–A, 21). Plaintiff claims that if the family court terminates his parental rights, he will suffer mental and emotional damage due to

the "separation of this Father–Son Loving–Bonding–Nurturing Relationship which will damage [plaintiff's] family unit." (Compl. at 19–A).

### III. *Subject Matter Jurisdiction*

#### A. Legal Standards

There are certain situations in which a federal court must abstain from interfering with pending state court proceedings. *Younger v. Harris,* 401 U.S. 37, 43–45 (1971). In *Younger,* the Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions [14] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts .[15] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.,* 457 U.S. 423, 432 (1982); *Parent v. New York,* 485 F. App'x 500, 503 (2d Cir.2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 647 (2d Cir.1997)).

[14]    *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975).

[15]    *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1 (1987).

**\*6** In *Sprint Communications, Inc. v. Jacobs,* —— U.S. ——, 134 S.Ct. 584, 588 (2013), the Court revisited the analysis required to invoke abstention under *Younger.* In *Sprint,* the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah,* 569 F. App'x 48, 51 (2d Cir.2014) (citing *Sprint,* 134 S.Ct. at 591–94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts ." *Id.* (quoting *Sprint,* 134 S.Ct. at 588). In *Sprint,* the Court used state-initiated custody proceedings in its analysis [16] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct. at 592 (citing *Moore v. Sims,* 442 U.S. 415, 419–120 (1979) (state-initiated proceeding to gain custody of children allegedly abused by

their parents)). *See also Davis v. Baldwin,* 594 F. App'x 49, 51 (2d Cir.2015) (same).

16    *Sprint* did not involve custody proceedings.

**B. Application**

In this case, plaintiff is requesting that this court interfere with a pending Family Court proceeding in which he alleges that the court is about to determine whether to terminate plaintiff's parental rights. The Family Court proceeding is a state-initiated proceeding to decide whether to permanently terminate parental rights, involving an investigation and a formal petition. *See Sprint,* 134 S.Ct. at 592 (abstention applies to cases where investigations are involved, culminating in the filing of a formal complaint). This case is clearly a situation in which abstention is appropriate under *Sprint.* [17] Because this court has no jurisdiction to issue any kind of an injunction, interfering with the Family Court proceeding, this court need not analyze the separate factors required for preliminary injunctive relief pursuant to Fed.R.Civ.P. 65.

17    Abstention would have been appropriate under the former standard as well.

*Younger* abstention does not apply to claims for monetary damages, thus, this court will proceed to consider plaintiff's claims for damages. [18] The court will also consider separate bases for dismissal of plaintiff's claims.

18    While it is true that *Younger* does not apply to monetary damages, to the extent that damages would be available, the court would have to stay the action, pending the state court's decision. *See Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir.2008) (stay of damage proceeding may be appropriate when declaratory and injunctive relief are dismissed due to abstention).

**IV. *Judicial/Prosecutorial Immunity***

**A. Legal Standards**

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco,* 502 U.S. 9, 9–10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without

fear of consequences." *Huminski v. Corsones,* 396 F.3d 53, 74 (2d Cir.2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 12 (1976) (citing *Pierson v. Ray,* 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 11–12.

**\*7** Prosecutors also enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk,* 356 F.3d 495 (2d Cir.2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk,* 356 F.3d at 502–503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello,* 470 F.3d 65, 67–68 (2d Cir.2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse,* 876 F.2d 287, 292 (2d Cir.1989).

County attorneys who initiate and prosecute child protective orders or litigate family court petitions, are also entitled to absolute immunity. *Cornejo v. Bell,* 592 F.3d 121, 127–28 (2d Cir.2010) (citing *Walden v. Wishengrad,* 745 F.2d 149, 152 (2d Cir.1984)). *See also Baumgarten v. Suffolk County,* No. 12–CV–171, 2013 WL 3973089, at \*4 (E.D.N.Y. July 31, 2013) (citing inter alia *Cetenich v. Alden,* 11 F.Supp.2d 238, 241 (N.D.N.Y.1998) (extending absolute immunity to municipal attorneys who initiate civil actions to enforce municipal housing codes)).

## B. Application

Plaintiff names Judge Pirro–Bailey of the Onondaga Family Court. Plaintiff states that Judge Pirro–Bailey "lacked jurisdiction" to hear the permanent neglect proceeding in February of 2015. However, Family Court has jurisdiction to hear neglect proceedings, [19] and plaintiff does not explain why Family Court Judge PirroBailey would have lacked jurisdiction to hear the case. Thus, plaintiff's claims for damages against Judge Pirro–Bailey must be dismissed with prejudice based upon absolute immunity.

[19]    The section governing proceedings for the commitment of the guardianship and custody of a permanently neglected child is part of the "Family Court Act." N.Y. Fam. Ct. Act, Art. 6, Pt. 1 § 614. In fact, Family Court has "exclusive original jurisdiction over proceedings ... alleging ... the neglect of a child." N.Y. Fam. Ct. Act § 1013(a). *See Ogimbao v. City of New York,* No. 12–CV–428, 12–CV–6188, 2014 WL 60009, at *5 (E.D.N.Y. Jan. 7, 2014) (citing N.Y. Fam. Ct. Act. § 1013(a) and N.Y. Const. Art. 6, § 13(b)). It is unclear how plaintiff alleges that Judge Pirro–Bailey was without jurisdiction. If plaintiff is attempting to claim that the petition before Judge Pirro–Bailey was brought improperly or fraudulently, this does not affect her "jurisdiction."

Plaintiff's claims against Deputy County Attorney Ronnie White, Jr. must also be dismissed based upon absolute immunity. Plaintiff claims only that defendant White brought the petition to terminate plaintiff's parental rights. (Compl. at 10, 17). Plaintiff does not claim that defendant White engaged in, or is liable for, any investigatory activities. Plaintiff only alleges that "such petition is outside the scope of the Onondaga County Attorney's Office." (*Id.* at 17). Plaintiff cites no basis for this allegation. However, even if the allegation is true, the only action alleged against defendant White is that he improperly brought a petition before the court. [20] As stated above, the initiation of cases before the court, improperly or otherwise, is protected by absolute immunity. *Cornejo v. Bell,* 592 F.3d at 127–28. Thus, the action for damages must be dismissed with prejudice as against defendant White.

[20]    In fact, plaintiff alleges that defendant White failed to investigate the facts. (Compl. at 18).

## V. *Ineffective Assistance of Counsel*

**\*8**    Although plaintiff mentions the term "ineffective assistance of counsel," [21] plaintiff does not name as a defendant any attorney who represented him. Plaintiff cannot sue the other defendants for actions or omissions by his court-appointed attorney. Even if plaintiff had named an attorney, the law is clear that generally, attorneys, whether with a legal services organization, court-appointed, or privately retained, do not act under color of state law for purposes of section 1983. [22] *See Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Krug v. McNally,* 368 F. App'x 269 (2d Cir.2010).

[21]    Under New York law, the Family Court affords protections equivalent to the constitutional standard for effective assistance of counsel afforded to criminal defendants because the potential consequences of the Family Court decisions "are so drastic." *See Brown v. Gandy,* 125 A.D.3d 1389, 3 N.Y.S.3d 486, 487–88 (4th Dep't 2015).

[22]    In order to state a claim under 42 U.S.C. § 1983, the defendant must act under color of state law in violating the plaintiffs constitutional rights. *Rae v. City of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010).

It is also completely unclear to what plaintiff is referring when he states that the defendants denied him the ineffective assistance of counsel. (Compl. at 18). Two pages prior to this conclusory assertion, plaintiff stated that "subsequently effective counsel was provided to plaintiff's by the first name of Eric (last name unknown)." (Compl. at 16). Plaintiff appears to allege that counsel told plaintiff he would be able to get the neglect petition dismissed, but then was "removed." Plaintiff states that ever since that time, attorneys have refused to look at particular facts that plaintiff wanted counsel to address. (*Id.* at 16–17). In addition to not naming an attorney-defendant and the lack of state action, plaintiff has asserted only conclusory allegations regarding the assistance of counsel. [23] Conclusory allegations are insufficient to state a claim under the civil rights statutes. *Krug,* 368 F. App'x at 270 (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002)). Thus, plaintiff's second cause of action, alleging "ineffective assistance of counsel" must be dismissed with prejudice.

**23**    If plaintiff is attempting to allege that the Judge Pirro–Bailey failed to appoint effective counsel, any such claim against the Judge would be barred by absolute immunity.

## VI. *Cruel and Unusual Punishment*

### A. Legal Standards

The Eighth Amendment was designed to protect those convicted of crimes, and consequently, applies ' "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.' " *Jackson v. Johnson,* 118 F.Supp.2d 278, 286–87 (N.D.N.Y.2000) (citing *Whitley v. Albers,* 475 U .S. 312, 318 (1986)). Thus, the Eighth Amendment protects only convicted prisoners. *Robinson v. Bratton,* No. 14–CV–2642, 2014 WL 3496460, at *5 (E.D.N.Y. July 8, 2014) (citing *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999)).

### B. Application

Plaintiff states that he (and his family) were denied their right to be free from cruel and unusual punishment because the defendants' acts caused them "years of unnecessary wanton infliction of pain and anguish and emotional damage ...." (Compl. at 20). Plaintiff is not complaining about conditions of confinement or of anything related to the punishment for the crime for which he is incarcerated.[24] Thus, plaintiff does not state an Eighth Amendment claim as against any of the defendants. In any event, it is completely unclear to what punishment or harm plaintiff is referring. If the caseworker defendants did not "close" A.R.'s file in 2005 or 2006, it is unclear how this omission caused pain and anguish for ten years. Plaintiff does not include the date of the most recent petition, but the court notes that the Family Court proceeding is alleged to have been filed in February of 2015. There is no indication that an Eighth Amendment analysis is available or appropriate.

**24**    Plaintiff was convicted for criminal possession of a weapon and is currently incarcerated on those charges. www.nysdoccslookup.doccs.ny.gov

**\*9** To the extent that plaintiff argues that the termination of parental rights violates the Eighth Amendment, it has been held that such proceedings are not punitive in nature, but rather are designed to address the needs and welfare of children. *See In re Imani, J.,* 29 A.D.3d 467, 468, 817 N.Y.S.2d 6, 7 (1st Dep't), *lv. to appeal den.,* 7 N.Y.3d 842, 824 N.Y.S.2d 208 (2006), *cert. denied sub nom. Monique J. v. Children's Aid Soc.,* 549 U.S. 1228 (2007). *See also Skalaban v. Dep't of Children and Families,* 314 F.Supp.2d 101, 109 (D.Conn.2004) (dismissing an Eighth Amendment claim based on a "false" report by the Connecticut Department of Children and Families). Thus, plaintiff's third cause of action, based upon the Eighth Amendment may be dismissed with prejudice.

## VII. *Statute of Limitations*

### A. Legal Standards

The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure,* 488 U.S. 235, 249–50 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato,* 549 U.S. 384, 388 (2007).

### B. Application

In his complaint, plaintiff claims that his problems began in December of 2005 or January of 2006, when Ms. Devendorf told plaintiff that their jealous neighbor made a false report to the Statewide Central Register of Child Abuse and Maltreatment ("SCR") .[25] (Compl. at 13). Defendant "Jennifer Doe," who plaintiff claims was a "Top Investigator" arrived at plaintiff's home with the Syracuse Police to investigate the allegedly "false" report. (*Id.*) Plaintiff claims that defendant Jennifer Doe began to perform an inappropriate search of A.R., without allowing his mother to be present. (Compl. at 15). However, plaintiff claims that defendant Jennifer Doe did not find any signs of abuse, and the neighbor's alleged report was determined to be "unfounded."

**25**    Plaintiff refers to this as the New York State Abuse/ Neglect Registry, but it is appropriately known as the SCR. www.http:// acts.ny.gov/main/cps.asp# top.

Plaintiff does not make any specific claims against defendant Jennifer Doe, other than she started to perform an inappropriate search which she stopped when the

police officer pointed out that she may have been acting inappropriately. (Compl. at 15). She did not find any signs of abuse, and plaintiff alleges that the neighbor's report was determined to be unfounded. Plaintiff has stated no claim against defendant Jennifer Doe, and whatever actions were taken by defendant Jennifer Doe, they would have been taken at the latest in January of 2006, and she took no action against plaintiff Roach. Plaintiff brought this action in April of 2015. The statute of limitations for section 1983 claims ran in January of 2009.

**\*10** The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir.1996) (citation omitted). Equitable tolling principles have applied when plaintiff "actively" pursued his judicial remedies, but filed a defective pleading within the appropriate time period. *Brown v. Parkchester S. Condominiums,* 287 F.3d 58, 60 (2d Cir.2002) (citations omitted). Equitable tolling has also been applied where plaintiff was prevented in some "extraordinary" way from asserting his rights, or where he asserted his rights in the wrong forum. *Johnson,* 86 F.3d at 12. In determining whether equitable tolling applies, the court must find that plaintiff acted reasonably diligently throughout the period that he seeks to toll. *Id.*

In this case, plaintiff appears to allege that he has suffered for ten years due to this conduct, but apparently has done nothing to raise any claims against defendant Jennifer Doe until now. Thus, defendant Jennifer Doe may be dismissed from this action based upon the statute of limitations. [26] Plaintiff also names a "John Doe," who is Jennifer Doe's "supervisor." There are no claims made against John Doe, and the statute of limitations has run against him for the same reasons as apply to Jennifer Doe.

[26]     The court would point out that plaintiff does not claim that he was even present during the incident that he describes. In any event, as stated above, defendant Jennifer Doe only responded to the allegedly false report, which was filed someone else. Plaintiff does not claim that she knew the report was false, and clearly, according to plaintiff she found no signs of abuse, and the report was declared to be unfounded. No constitutional violation is stated by these facts, even assuming that they are true.

## VIII. *Due Process*

### A. Legal Standards

A parent's interest in the custody of his or her child is a constitutionally protected liberty interest, subject to due process protection. *Wilkinson ex rel Wilkinson v. Russell,* 182 F.3d 89, 103–104 (2d Cir.1999) (citing inter alia *Cecere v. City of New York,* 967 F.2d 826, 829 (2d Cir.1992)). The "integrity" of the family has also received protection under the Equal Protection Clause [27] and the Ninth Amendment. [28] *Id.* (citing *Stanley v. Illinois,* 405 U.S. 645, 651 (1972); *Santosky v. Kramer,* 455 U.S. 745, 753 (1982)). Notwithstanding the existence of this constitutional right, ' "the right to family integrity does not include a constitutional right to be free from child abuse investigations." ' *Waterson v. Page,* 987 F.2d 1, 8 (1st Cir.1993). In addition, the failure of defendants to meet local or professional standards, without more, should not generally be elevated to the level of a constitutional violation. *Wilkinson,* 182 F.3d at 106 (citing *Young v. County of Fulton,* 160 F.3d 899, 902 (2d Cir.1998) (the fact that DSS employees violated New York law does not necessarily give rise to a federal civil rights claim). Even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation. *Id.* (citing van *Emerik v. Chemung County Dep't of Soc. Svcs.,* 911 F.3d 863, 866 (2d Cir.1990)).

[27]     Plaintiff does not raise any Equal Protection claim in this case.

[28]     Plaintiff does not assert the Ninth Amendment as a basis for his action, and it would not be applicable in this case. The Ninth Amendment does not independently secure any constitutional rights that could support a section 1983 claim. *Barnett v. Carbeny,* 420 F. App'x 67, 69 (2d Cir.), *cert. denied,* —— U.S. ——, 132 S.Ct. 248 (2011). The Ninth Amendment refers only to "unenumerated" rights, while claims under section 1983 must be based on specific constitutional guarantees. *Bussey v. Phillips,* 419 F.Supp.2d 569, 586 (S.D.N.Y.2006). The Ninth Amendment does not apply in plaintiff's case.

### B. Application

Plaintiff leaps to the assumption that "the conspiracy" began subsequent to the 2005 or 2006 incident because the Onondaga County Child Protective Unit brought, what appears to be the current proceeding against him and Ms. Devendorf. (Compl. at 15–16). Plaintiff assumes that the current proceeding is based on the 2005 or 2006

incident because he claims that "they" had no basis to bring the current neglect proceeding. (Compl. at 16). The current proceeding was brought by Deputy County Attorney Ronnie White, Jr., and the petition was "signed" by Commissioner David Sutkowy. As stated above, both of these defendants are entitled to immunity because they were involved presenting the petition before the court.

**\*11** Plaintiff has also named case worker Jennifer Clark and four of her superiors, claiming that they "conspired" to provide only minimal and insufficient service by CPS. Plaintiff states that defendant Clark failed in her duties to strengthen the relationship between A.R. and his parents; she "maliciously" interfered with the relationship between A.R. and his parents; she "intentionally" committed "fraudulent acts" due to her own personal problems; and she "influenced" her supervisors. Other than these general statements, plaintiff makes absolutely no specific factual statements that explain how her conduct "interfered" with the relationship between plaintiff and his son or how she "influenced" her supervisors.

Plaintiff alleges that CFS had "no grounds" to bring the current abuse proceeding because the 2005 "report" by plaintiff's jealous neighbor was determined to be unfounded, but the "file" was never closed. Plaintiff then complains that although he was provided counsel for the current neglect proceeding, "effective" counsel was "removed," and no other attorney would "look at" the fact that the previous abuse report was "unfounded." (Compl. at 16). The court is left only to speculate about what plaintiff might be attempting to allege against defendant Clark or her four supervisors, defendants Woodfork, Warren, Snyder, and Gonzalez. It is also unclear how defendant Clark "conspired" with any of her supervisors because defendant Sutkowy signed the petition that was brought before the family court and which is currently pending.

Plaintiff seems to claim that defendant Clark violated state law by failing to provide sufficient services as required by state law and by failing to attempt to strengthen the relationship between A.R. and his parents. The court can interpret the claim as a failure to properly investigate the case or a failure to properly train caseworkers under N.Y. Soc. Svc. Law § 419. A violation of state law, by itself, cannot support a claim under section 1983. *Treistman v. Wacks,* No. 1:12–CV–1897, 2014 WL 6685473, at \*7

(N.D.N.Y. Nov. 26, 2014) (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002)).

To the extent that plaintiff's claim could be interpreted as a "substantive due process claim," he would have to demonstrate that the caseworker's action was "so egregious" and "so outrageous" as to "shock the contemporary conscious," regardless of the fairness of the procedures used. *Southerland v. City of New York,* 680 F.3d 127, 151–52 (2d Cir.2012); *Callahan v. City of New York,* No. 13–CV2726, 2015 WL 1119728, at \*8 (E.D.N.Y. Mar. 1, 2015). Other than allegedly using a report that was ultimately determined to be "unfounded," plaintiff makes no other allegations against defendant Clark or her supervisors. In any event, as stated above, plaintiff has been incarcerated since 2013. Defendant Clark is not responsible for separating plaintiff from his child. Thus, plaintiff has not stated a substantive due process claim against defendant Clark or any of her supervisors.

**\*12** Even if the court found that an action for damages against the caseworkers could proceed, the case would not be able to proceed while the Family Court action is pending. Although abstention applies only to injunctive relief, any finding against the caseworkers would necessarily affect the validity of the case before Judge Pirro–Bailey. The court assumes that a defense to the neglect petition would be that it was based upon insufficient or fraudulent information. Furthermore, plaintiff would be unable to challenge that finding in this court pursuant to the *Rooker Feldman* doctrine [29] if the Family Court decides the issue *adversely* to plaintiff. [30] *See Phifer v. City of New York,* 289 F.3d 49, 57 (2d Cir.2002).

---

[29]   *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). A challenge under the *Rooker– Feldman* doctrine is for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance,* 507 F. App'x 16, 18 (2d Cir.2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky,* No. 12–CV–4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from

considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999)).

30    An exception applies if the Family Court decides in plaintiff's favor. Then he is not considered to have "lost" in state court, and the *Rooker–Feldman* doctrine would not apply. *Graham v. City of New York,* 869 F.Supp.2d 337, 347–48 (E.D.N.Y.2012). If plaintiff had stated a claim against the caseworkers, a stay of the action could have been appropriate. *See Rosen v. County of Suffolk,* 53 Fed. App'x 578, 579 (2d Cir.2002) (citing *Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir.2000)). However, because plaintiff has not stated a claim, the court will recommend dismissing without prejudice.

## IX. *Municipal Liability*

### A. Legal Standards
It is well-settled that in order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (citing *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 689 (1978)) (other citations omitted). Generally speaking, a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, will not suffice to raise an inference of the existence of a custom or policy. *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993). A municipality may not be held liable on the basis of respondeat superior alone. *Id.*

### B. Application
As stated above, plaintiff sued CPS, but may not name the department itself as a defendant. To the extent that this court has interpreted plaintiff's claim against CPS as one against Onondaga County (the municipality), plaintiff has failed to state a claim. Plaintiff uses the word "policy," but cites no policy that would render the municipality liable for any of the actions described by plaintiff. He states that CPS has a policy of providing minimal services to keep the agency operating, "for paychecks to be paid and bonuses to be supplemented." [31] (Compl. at 8). Plaintiff cites

absolutely no basis for his conclusory allegations. Thus, any claim against Onondaga County may be dismissed.

31    He also refers to "excess expense accounts" used for employees "personal benefit." (Compl. at 8). None of these allegations are even remotely related to plaintiff's claims.

## X. *Appointment of Counsel*

### A. Legal Standards
There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*13** *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). Each case must be decided on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D .N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

### B. Application
Based upon a thorough review of the complaint, this court finds that plaintiff's complaint does not have substance, and thus, does not meet the first requirement for appointment of counsel. Therefore, plaintiff's request for counsel is denied.

## XI. *Opportunity to Amend*

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte,* the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation omitted).

### B. Application

This court has found that defendants Pirro–Bailey; White; and Sutkowy are entitled to absolute immunity. This court will not recommend giving plaintiff the opportunity to amend with respect to these three defendants. Defendants Jennifer Doe and John Doe have not been identified, and the statute of limitations has run against them. Thus, the court will not recommend allowing plaintiff to amend with respect to either one of these unidentified defendants.[32] Although the court is recommending dismissal without prejudice as to any damage claims against the remaining defendants, plaintiff would not be able to bring such an action until he succeeded in challenging the Family Court proceeding in state court as discussed above.

[32]    Plaintiff would have had to identify them. But, it would be futile at this time.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motion to proceed IFP (Dkt. No. 5) is **GRANTED** for purposes of filing only, and it is

**ORDERED,** that to the extent the complaint can be read as a motion for appointment of counsel (Dkt. No. 1 at CM/ECF p. 5), that motion is **DENIED,** and it is

**ORDERED,** that the Clerk substitute **Onondaga County** as a defendant in place of **Onondaga County Children and Family Services,** and it is

**RECOMMENDED,** that plaintiff's motion for a temporary restraining order (Dkt. No. 1 at CM/ECF pp. 4, 22) be **DENIED,** and it is

**RECOMMENDED,** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as against defendants Pirro–Bailey; White; Jennifer "Doe"; John "Doe"; and Sutkowy pursuant to 28 U.S.C. § 1915(e) (2)(B)(i)-(iii), and it is

**RECOMMENDED,** that plaintiff's complaint be dismissed **WITHOUT PREJUDICE** as to defendants Clark, Warren, Snyder, Gonzalez, Woodfork; and Onondaga County pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**\*14** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Filed April 22, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4067504

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 9412543
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Dermont Thomas, Plaintiff,
v.
The City of New York, The Department of Education,
Gina Digglio, The Administration for Children
Services, Cathy Chiou, Charmaine Cort, V.
Grant, Kier McAuly, Esq., Micheal D. Cardozo,
Esq., New York City Police Department, John
DOE P.O., and John DOE P.O., Defendants.

15-CV-3236 (JG)(CLP)
|
Signed 12/22/2015

**Attorneys and Law Firms**

Dermont Thomas, Brooklyn, NY, pro se.

MEMORANDUM AND ORDER

**\*1**  JOHN GLEESON, United States District Judge:

On June 3, 2015, Dermont Thomas, appearing *pro se*, filed this action challenging the removal of his children from his custody. He claims that the removal violated his civil rights. On August 17, 2015, I granted Thomas's request to proceed *in forma pauperis* and directed him to file an amended complaint. On September 18, 2015, Thomas filed an amended complaint.

BACKGROUND

Thomas alleges that on November 12, 2010, Gina Digglio, a guidance counselor at P.S. 196, filed a neglect complaint against Thomas with the Administration for Children's Services ("ACS"). Am. Compl., ECF No. 5, at 1; *id.* at Ex. A. Later that evening, Charmaine Cort and V. Grant of ACS "illegally entered" Thomas's home in response to the neglect report and called the police. *Id.* at 2. Two identified police officers arrived ten minutes later and removed five children from the home. *Id.* Thomas alleges

that the children were taken to Bellevue Hospital, strip-searched, and then placed in foster care. *Id.*

On December 10, 2010, three of the children were returned to Thomas and their mother pursuant to a Family Court order. *Id.* On December 15, 2010, the Family Court directed that the three children again be removed from the home. *Id.* A year later, ACS agents removed Thomas's newborn infant from Woodhull Hospital pursuant to a Family Court order. *Id.* at 3. On July 26, 2012, the Family Court ordered the three older children to be returned to Thomas and their mother. *Id.* at 4. On June 20, 2013, the Family Court ordered the three younger children to be returned to their parents. *Id.* On March 20, 2014, the Family Court dismissed the ACS petitions against Thomas and the children's mother. *Id.* at 4; *see also id.* at Ex. I.[1]

[1]    Thomas states the Family Court dismissed the neglect petition on March 20, 2015, but this appears to be a typographical error. The court documents reflect March 20, 2014 as the correct date. *See* Am. Compl. at Ex. I.

DISCUSSION

A. *Standard of Review*
In reviewing the amended complaint, I am mindful that Thomas is proceeding *pro se* and that his pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation marks omitted); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At the pleading stage of the proceeding, I must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* Furthermore, I am required to dismiss a complaint filed *in forma pauperis* if it

"(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Finally, a court should not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B. *Amended Complaint*

**\*2** I directed Thomas to file an amended complaint in an effort to make an early determination of whether the statute of limitations bars this action from proceeding. I liberally construed plaintiff's complaint as arising under 42 U.S.C. § 1983, and the statute of limitations for a § 1983 action in New York is three years. *See Owens v. Okure*, 488 U.S. 235, 249-51 (1989); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). In most cases, a cause of action under § 1983 accrues "when the plaintiff knows of or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quotation marks omitted). Here, Thomas was aware that his children were removed on November 12, 2010 and December 15, 2010. Therefore, the statute of limitations began to run on Thomas's claims based on the removal of his children on those dates. *See Pearl*, 296 F.3d at 89.

In his amended complaint, Thomas argues that equitable tolling applies to his claims because the Family Court case was pending in 2010, and the statute of limitations restarted once it was dismissed on March 20, 2014. In support, he includes a copy of the order issued in the state court lawsuit he filed in 2011, which dismissed the case because the Family Court proceeding was still pending. *See* Am. Compl. at 10; *id.* at Ex. K; *see also Roach v. Clark*, No. 15-CV-0408, 2015 WL 4067504, at \*12 (N.D.N.Y. July 2, 2015) ("Even if the court found that the action for damages against the caseworkers could proceed, the case would not be able to proceed while the Family Court action is pending.").

Accordingly, I will allow Thomas's complaint against Digglio, Chiou, Cort, Grant, and the unidentified police officers based on the allegedly unlawful removal of his children to proceed. However, the claims against the remaining defendants are dismissed as set forth below.

### C. *City of New York and Agencies*

In order to state a claim for relief under § 1983 against a municipal defendant, a plaintiff must allege the existence of an officially-adopted policy or custom that caused injury *as well as* a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 692 (1978); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law"); *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011); *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard ...."); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir. 2014) (summary order) (claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom policy of practice of the municipality."). A single incident is insufficient to raise an inference of the existence of a custom, policy, or practice, as is a mere recitation of a failure to train municipal employees. *See, e.g.*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Hartnagel v. City of New York*, No. 10-CV-5637, 2012 WL 1514769, at \*4 (E.D.N.Y. Apr. 30, 2012). Here, Thomas does not allege, and nothing in his amended complaint suggests, that the allegedly wrongful acts or omissions on the part of any City of New York ("City") employee are attributable to a municipal policy or custom. Rather, he relies on conclusory allegations in order to establish the City's liability. *See* Am. Compl. at 12-13, 16-17, 19-21, 35. For this reason, the claims against the City are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B).

**\*3** Furthermore, § 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Admin. Code & Charter Ch. 17 § 396. That provision "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximenes v. George Wingate High Sch.*, 516 F.3d 156, 159-160 (2d Cir. 2008) (*per curiam*); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (NYPD is not a suable entity); *Worrell v. City of New York*, No. 12-CV-6151 (MKB), 2014 WL

1224257, at *3 (E.D.N.Y. Mar. 24, 2014) (ACS is not a suable entity). For this reason, the claims against the Department of Education, ACS, and the New York City Police Department are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B).

### D. Attorneys

Thomas also alleges claims against Kier McAuly, an attorney employed by ACS, and Micheal D. Cardozo, who served as Corporation Counsel for the City of New York at the time of the events giving rise to Thomas's claims.

Defendant McAuly is entitled to absolute immunity for his conduct in prosecuting the child abuse allegations on behalf of ACS. See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). A plaintiff may not seek monetary relief from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B).

As for Cardozo, the United States Supreme Court has held that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and it has rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Iqbal, 556 U.S. at 676. Since the claim against this supervisor defendant, as presently stated, can be supported only on the basis of the respondeat superior or vicarious liability doctrines, which are not applicable to § 1983 actions, the claims against Cardozo are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B).

In addition, Thomas does not provide any facts to show that Cardozo was personally involved in the alleged events. A § 1983 plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation. "It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)). Thomas fails to make any allegations against Cardozo that could suggest he had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of plaintiff's civil rights. Farrell, 449 F.3d at 484. A § 1983 complaint that does not allege the personal involvement of a defendant fails as a matter of

law. See Johnson v. Barney, 360 F.App'x 199, 201 (2d Cir. 2010) (summary order).

### CONCLUSION

For the reasons set forth above, I hereby dismiss the claims, filed in forma pauperis, as to the City, the Department of Education, ACS, the New York City Police Department, McAuly, and Cardozo pursuant to 28 U.S.C. § 1915(e)(2)(B). No summons shall issue against these defendants and the Clerk of Court is directed to amend the caption to reflect the dismissal of these defendants.

However, the amended complaint shall proceed against Digglio, Chiou, Cort, Grant, and two Doe police officers. The Clerk of Court is respectfully directed to issue a summons against those defendants, and the United States Marshal Service is directed to effect service of process without prepayment of fees. The Clerk of Court shall mail a courtesy copy of the same papers to the Corporation Counsel for the City of New York, Special Federal Litigation Division.

*4 As to the unidentified police officers allegedly involved in the removal of Thomas's children, the United States Marshals Service will not be able to serve the Doe defendants without further identifying information. In Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Second Circuit made clear that a pro se litigant is entitled to assistance from the district court in identifying a defendant. Accordingly, the Court hereby requests the Corporation Counsel for the City of New York to ascertain the full name of the individuals whom Thomas has identified as two John Doe police officers and to provide the addresses where these defendants can be served within 45 days from the date of this order. Corporation Counsel need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which Thomas may name and properly serve the defendants as instructed by the Second Circuit in Valentin. Once this information is provided, Thomas's complaint shall be deemed amended to reflect the full name and badge number of these officers, an amended summons shall be issued, and the Court shall direct service on these defendants.

2015 WL 9412543

The case is referred to the Honorable Cheryl L. Pollak, United States Magistrate Judge, for pretrial supervision, including the identification of the Doe defendants. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

So ordered.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 9412543

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1965303
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Susan DANIELS, Plaintiff,

v.

Ken MURPHY, individually and in his official
capacity as an employee of the Suffolk County
Department of Social Services Child Protective
Services, and John Does 1 through 10 and Jane
Does 1 through 10, the individual defendants being
sued in their respective individual and official
capacities, and Child & Family Psychological
Services, P.C. and Thomas Hickey, Defendants.

No. 06-CV-5841 (JFB)(WDW).
|
July 2, 2007.

**Attorneys and Law Firms**

Susan Daniels, pro se.

Thomas Hickey, pro se.

Brian C. Mitchell, Esq., and Susan A. Flynn, Esq., Suffolk
County Attorney's Office, Hauppauge, NY, for the CPS
defendants.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff Susan Daniels brings this *pro se* action
alleging that defendants violated her constitutional rights
pursuant to 42 U.S.C. § 1983 and under state law. Plaintiff
seeks damages, injunctive and declaratory relief from
each defendant. Defendant Ken Murphy, an employee
of Suffolk County Child Protective Services, moves to
dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure. Defendant Thomas
Hickey joins in defendant Ken Murphy's motion.[1]
Defendant Child & Family Psychological Services, P.C.,
has not appeared in this action, and, according to the
docket, has not been served with process.

[1]  For convenience purposes, the Court refers to
arguments made by defendant Murphy as made on
behalf of all defendants, unless otherwise indicated.

For the reasons that follow, defendants' motion to dismiss
is granted. However, the Court will allow plaintiff an
opportunity to file an amended complaint to address the
pleading defects discussed *infra*.

I. BACKGROUND

The following facts are taken from the complaint and are
not findings of fact by the Court, but rather are assumed
to be true for purposes of deciding this motion and are
construed in a light most favorable to plaintiff, the non-
moving party.

On October 27, 2006, plaintiff commenced this action
alleging that defendants violated her rights as a mother
to Thomas Daniels ("Thomas"), a minor child.[2]
Plaintiff alleges that her son's father, defendant Thomas
Hickey ("Hickey"), has "intimidated" their son and
engaged in "brainwashing and Parental Alienation
Syndrome" with regard to their son, and made
"fraudulent representations" to various employees of
Suffolk County Child Protective Services (hereinafter
"CPS") that somehow relate to a custody proceeding
in state court. (Compl.¶¶ 2, 7, 13.) Plaintiff also
alleges that CPS employees, including Ken Murphy
("Murphy") and twenty unnamed employees (collectively,
"the CPS defendants"), "negligently rel[ied]" on the
findings of prior CPS employees and breached their
"professional responsibilities" by accepting or believing
certain information imparted to them by Hickey.
(Compl.¶¶ 13, 18, 23, 33.) Plaintiff further alleges
that defendant Murphy "failed to ascertain ... and/or
disregarded and condoned" the "violent nature[ ] and
history" of Hickey while performing duties related in some
unspecified way to the custody dispute underlying this
action, and thereby violated plaintiff's due process rights.
(Compl.¶¶ 16, 33.)

[2]  In the caption of the complaint, plaintiff indicates
that she is also seeking relief "as next friend and
Mother, and natural Guardian of Thomas Daniels."
However, because *pro se* plaintiff is not an attorney,
she may not represent her son in this proceeding. *See,
e.g., Tindall v. Poultney High Sch. Dist.,* 414 F.3d
281, 284 (2d Cir.2005) ("It is thus a well-established

general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child.") (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."). Accordingly, the Court construes the complaint as seeking relief solely on behalf of Susan Daniels.

As to defendant Child & Family Psychological Services, P.C. ("FPS"), plaintiff's complaint identifies FPS in the caption, and, in one paragraph, asserts that they "practiced unprofessionally and negligently" in some unspecificied manner in relation to plaintiff and/or her son. (Compl.¶ 4.) FPS appears nowhere else in the complaint.

Defendant Murphy moved to dismiss the complaint pursuant to Rule 12(b)(6) on February 16, 2007. By letter dated February 14, 2007, defendant Hickey indicated his desire to join in defendant Murphy's motion. Oral argument was held on defendants' motion on June 27, 2007. [3]

[3]    Previously, on January 26, 2007, this Court remanded a child-custody petition that was originally filed by Hickey, and removed to this Court by Daniels, to New York State Supreme Court, Suffolk County. In that action, Hickey sought sole custody of the couple's son. In an order remanding the action, the Court found that (1) no federal statutory or constitutional issues appeared on the face of the child custody petition at issue, and (2) pursuant to the "domestic relations" exception to federal jurisdiction, it lacked subject matter jurisdiction over the action. (*See Hickey v.. Daniels,* No. 06 Civ. 6838, Jan. 26, 2007 Order.)

## II. STANDARD OF REVIEW

**\*2** Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (May 21, 2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Thereafter, in order to withstand a Rule 12(b)(6) motion, the complaint must satisfy "a flexible 'plausibility standard.' " " *Iqbal v. Hasty,* ---F.3d ----, 2007

WL 1717803, at *11 (2d Cir. June 14, 2007). That is, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl.,* 127 S.Ct. at 1974. A claim "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.,* 127 S.Ct. at 1968.

### III. Discussion

#### A. Section 1983 Claims

For the following reasons, the Court finds that plaintiff's claims pursuant to Section 1983 must fail as a matter of law. [4]

[4]    In the complaint, plaintiff also cites to the Uniform Grandparent Visitation Act, the Child Abuse Prevention and Treatment Act of 1974 ("CAPTA"), the Federal Child Support Act of 1974 (which appears to refer to the Child Support Recovery Act, "CSRA"), the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), and the Parental Kidnapping Prevention Act of 1980 ("PKPA"). (Compl.¶ 19.) The Court notes that the Uniform Grandparent Visitation Act is not a federal law, and, assuming *arguendo* that it presents a state law cause of action, the Court declines to exercise supplemental jurisdiction over any such claim because, as set forth below, plaintiff has failed to adequately plead a federal claim. In addition, plaintiff has failed to identify any provisions of the remaining federal statutes cited above that provide a private right of action to plaintiff. *See e.g., Thompson v. Thompson,* 484 U.S. 174, 187 (1988) (finding no private right of action under the PKPA); *Alaji Salahuddin v. Alaji,* 232 F.3d 305, 311-12 (2d Cir.2000) (finding that CSRA "does not create a federal right but merely criminalizes conduct that infringes the state-created rights"); *LaShawn A. by Moore v. Barry,* 144 F.3d 847, 850 n. 2 (D.C.Cir.1998) (finding no private right of action under the AACWA); *Doe v. District of Columbia,* 93 F.3d 861, 865 (D.C.Cir.1996) (finding that CAPTA does not create a federally enforceable right); *Tony L. By and Through Simpson v. Childers,* 71 F.3d 1182 (6th Cir.1995); *Daniel H. v. City of New York,* 115 F.Supp.2d 423, 428 (S.D.N.Y.2000) (finding no private right of action under AACWA). Accordingly, to the extent that plaintiff seeks relief under these statutes, such claims are dismissed for

want of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### 1. Thomas Hickey

The Court finds that, to the extent that plaintiff asserts a Section 1983 claim against defendant Hickey, such a claim must fail as a matter of law because it does not allege that Hickey was a state actor, or offer factual assertions from which it could be inferred that there was a sufficiently close nexus between Hickey and the State. See *Tancredi v. Metro. Life Ins. Co.,* 378 F.3d 220, 229 (2d Cir.2004) ("It is settled that conduct by a private entity constitutes state action [for purposes of Section 1983] only when 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.' ") (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)); *Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) (dismissing Section 1983 claims where defendants, including plaintiff's ex-wife, "acted purely as private individuals in connection with the state court [divorce and child custody] proceedings"); *see also Harley v. Oliver,* 539 F.2d 1143, 1146 (8th Cir.1976) (dismissing Section 1983 claims brought by mother against her ex-husband arising from the ex-husband taking custody of the couple's son where "[t]here is not a scintilla of state action as to him"); *McCord v. City of Columbus,* 225 F.Supp.2d 804, 810 (S.D.Ohio 2002) (dismissing Section 1983 claim against mother due to lack of state action where mother filed "custody interference papers" resulting in plaintiff/ex-husband's arrest).

### 2. Child & Family Psychological Services, P.C.

Plaintiff's Section 1983 claims against FPS also fail as a matter of law pursuant to Rule 8(a). As noted, Rule 8(a) provides, in part, that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). [5] The purpose of this requirement is to give "fair notice of the basis" for the plaintiff's claims and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002); *see Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("[F]air notice [is] that which will enable

the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial.") (quotations and citation omitted). Here, plaintiff's allegation regarding FPS-stating, in its entirety, that FPS "practiced unprofessionally and negligently"-"is so ... ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised,' " and, thus, must fail as a matter of law. *Id.* at 80 (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

5      Rule 8(a) provides:

A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed.R.Civ.P. 8(a).

**\*3** In addition, the Court notes that defendant FPS has failed to appear in this action. Based upon a review of the docket sheet, it is unclear whether defendant FPS was served with the summons and complaint in this action. Federal Rule of Civil Procedure 4(m) provides that, "if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specific time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for an appropriate period." Fed.R.Civ.P. 4(m). In the absence of an explanation or reasonable excuse for failure to serve, dismissal of the complaint without prejudice as to the defendant is warranted. *See Mahadi v. Johnson Controls, Inc.,* No. 02-CV1256 (ILG), 2003 U.S. Dist. LEXIS 8234, at \*6-\*7 (E .D.N.Y. April 25, 2003) (finding that an "action may be dismissed without prejudice" where over 230 days passed between filing of complaint and service on defendant, and plaintiff "made no effort to show why the failure of timely service should be excused"); *Astarita v. Urgo Butts & Co.,* No. 96-CV-6991 (PKL), 1997 U.S. Dist. LEXIS 8112, at \*14 (S.D.N.Y. June 10, 1997) (dismissing complaint where plaintiff failed to serve defendants within 120 days of filing complaint and offered

2007 WL 1965303

no explanation). Pursuant to Rule 4(m), the Court now directs plaintiff to explain, within thirty days of the date of this Order, her failure to serve defendant FPS within the appropriate period. Plaintiff's failure to show good cause therefor, or to respond to the Court's direction, shall result in the dismissal with prejudice of her claims against FPS.

### 3. The CPS Defendants

The Court finds plaintiff's Section 1983 claims against the CPS defendants must fail as a matter of law pursuant to Rule 12(b)(6). As noted, plaintiff alleges that Murphy, and other CPS employees, while performing some unspecified duty relating to the child custody determination at issue here, engaged in "negligent reliance" on the "finding of prior employees" of CPS and on certain unidentified allegations by Hickey, and "failed to ascertain ... and/ or disregarded and condoned" the "violent nature[ ] and history" of Hickey while performing duties related in some unspecified way to the custody dispute underlying this action, and thereby violated plaintiff's due process rights. (Compl.¶¶ 7, 13-14, 16, 33, 34.)

Section 1983 "allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' " Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir.2006) (quoting 42 U.S.C. § 1983). Here, plaintiff's complaint is defective because it fails to identify, even in the most general terms, how the CPS defendants' alleged conduct resulted in a deprivation of plaintiff's substantive or procedural due process rights. [6]

[6]    The Court recognizes that, in her submission opposing defendants' motion, plaintiff offers additional facts relating to her due process claims, as well as factual allegations regarding a conspiracy between the CPS defendants and Hickey. However, even according plaintiff the consideration afforded to a *pro se* litigant, the Court declines to consider the additional, unsworn factual allegations contained in plaintiff's submission, as they constitute matters outside the pleadings. See, e.g., Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir.2000) ("[A] district court errs when it ... relies on factual allegations

contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal citations omitted); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint."); Langhorne v. Port Auth. of N.Y. and N.J., No. 03 Civ. 4610(RMB) (GWG), 2005 WL 3018265, at *5 (S.D.N.Y. Nov. 10, 2005); Southwick Clothing LLC v. GFT (USA) Corp., No. 99 Civ. 10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers."); Wagnoon v. Gatson, 2001 WL 709276, at *5 n. 5 (S.D.N.Y. June 25, 2001); Scholastic v. Stouffer, 124 F.Supp.2d 836, 851 & n. 16 (S.D.N.Y.2001) ("[P]arties are not entitled to assert new facts in submissions on a motion to dismiss."); Mann by Parent v. Meachem, 929 F.Supp. 622, 630 (N .D.N.Y.1996). O'Brien v. Nat'l Prop. Analysts Partners, 719 F.Supp. 222, 229 (S.D.N.Y.1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss").

### a. Substantive Due Process Claim

**\*4** It is well-settled that the Due Process clause guarantees "the interest of a parent in the custody of his or her children as "a fundamental, constitutionally protected liberty interest.' " Kia P. McIntyre, 235 F.3d 749, 758 (2d Cir.2000) (quoting Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir.1996)); see also Wilkinson v. Russell, 182 F.3d 89, 103 (2d Cir.1999) ("It has long been settled in this Circuit 'that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection.' ") (quoting Cecere v. City of New York, 967 F.2d 826, 829 (2d Cir.1992)) (alteration in original). Thus, if protective services caseworkers " 'err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights.' " Kia P., 235 F.3d at 758 (quoting van Emrik v. Chemung County Dept. of Soc. Serv., 911 F.2d 863, 866 (2d Cir.1990)).

However, plaintiff's complaint fails to allege that the CPS defendants interrupted plaintiff's parental custody, and thereby implicated plaintiff's due process rights. Indeed, at oral argument, plaintiff asserted that she has *never* lost custody of her son Thomas, and, thus, that the instant complaint is unrelated to any custody proceedings that have occurred in state court. [7] Therefore, because plaintiff has failed to allege any conduct by the CPS defendants

that threatened plaintiff's interest in the custody of her child, the complaint fails to state a claim under Section 1983 for violation of plaintiff's substantive due process rights. [8]

[7]  The Court notes that plaintiff's complaint alleges that, at some point, Thomas was in "residential custody with" plaintiff's husband. (Compl.¶ 2.) However, plaintiff does not allege that any state actor caused Thomas to be removed from plaintiff's custody or to be placed in Hickey's custody.

[8]  The Court also notes that plaintiff has failed to allege any facts from which it could be inferred that she is alleging that a state actor failed to protect her child while he was in the custody of the state. *See Phifer v. City of New York,* 289 F.3d 49, 62 (2d Cir.2002). Furthermore, plaintiff has failed to allege any facts that, even as liberally construed, would bring her claims within the "subset" of due process cases "addressing circumstances where the government, although not physically taking the child away from a parent, gains custody of the child by refusing to release him or her after the parent has voluntarily granted temporary custody to the government or a third party." *See Kia P .,* 235 F.3d at 760.

### b. Procedural Due Process Claim

Similarly, because plaintiff does not allege that a state actor "remove[d] a child from a parent's custody," the complaint fails to present circumstances that would trigger plaintiff's entitlement to the "procedures [that] must be afforded to a parent when the coercive power of the State seeks to separate them" from their children. *Kia P.,* 235 F.3d at 759; *see, e.g., Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999) ("As a general rule ..., before parents may be deprived of the care, custody or management of their children without their consent, due process-ordinarily a court proceeding resulting in an order permitting removal-must be accorded to them."); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (due process "would generally require a predeprivation hearing"); *Porter v. City of New York,* No. 03 Civ. 6463(ENV), 2007 WL 1791149, at *4 (E.D.N.Y. June 19, 2007). Accordingly, plaintiff's complaint fails to state a procedural due process claim under Section 1983. [9]

[9]  Plaintiff argues that an unpublished Second Circuit decision, *Southerland v. Giuliani,* No. 00-7410, 2001

WL 127293 (2d Cir. Feb. 14, 2001), indicates that she has stated a Section 1983 due process claim against the CPS defendants. However, notwithstanding that an unpublished decision has no precedential effect, *see* Second Circuit Rule § 0.23 ("Citation to summary orders filed prior to January 1, 2007, is not permitted in this or any other court, except in a subsequent stage of a case in which the summary order has been entered, in a related case, or in any case for purposes of estoppel or *res judicata."* ), the Court notes that *Southerland* is inapposite to the claims asserted in the instant case. In *Southerland,* the court held that a father had sufficiently pled Section 1983 procedural and substantive due process claims where he alleged that a New York City agency had seized his children without providing a proper hearing and without a reasonable basis for the seizure. *Id.* at *1 ("We have never required-as the district court apparently did-that parental rights be completely or permanently terminated in order for constitutional protections to apply."). By contrast, in this case, as discussed *supra,* plaintiff does not allege that the state seized custody of her child or that she was denied an adequate proceeding prior to or following a determination regarding custody of her child.

### c. Qualified Immunity

Defendant Murphy argues that he is shielded from liability for plaintiff's federal claims under the doctrines of qualified immunity and, alternatively, quasi-judicial immunity. Qualified immunity applies to suits against state officials for acts in the course of their duties that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir.1992) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). It applies when either: (i) the state official did not violate a clearly established right; or (ii) it was objectively reasonable for the state official to believe that he was not violating a clearly established right. *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir .2003). "The objective reasonableness test is met-and the defendant is entitled to immunity-if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). With regard to qualified immunity for the discretionary functions performed by child protective services officers, the Second Circuit has observed that:

**\*5**   [P]rotective services caseworkers [must] choose between difficult alternatives.... If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights. It is precisely the function of qualified immunity to protect state officials in choosing between such alternatives, provided that there is an objectively reasonable basis for their decision, whichever way they make it.

*Tenenbaum v. Williams,* 193 F.3d 581, 596 (2d Cir.1999) (quoting *van Emrik,* 911 F.2d at 866) (alterations in original).

Here, because the Court found *supra* that plaintiff's complaint fails to sufficiently allege a federal claim, the Court need not address the issue of qualified immunity or quasi-judicial immunity. If plaintiff files an amended pleading, and corrects the pleading defects discussed *supra,* the Court will allow defendant to renew his motion to dismiss on such grounds.

### B. State Law Claims

Plaintiff's complaint, as liberally construed, also asserts state law claims of intentional infliction of emotional distress and libel against Hickey. The Court "decline[s] to exercise supplemental jurisdiction over [plaintiff's] state law claims [because] it has dismissed all claims over which it has original jurisdiction." *Kolari v. New York Presbyterian Hosp.,* 455 F.3d 118, 121-22 (2d Cir.2006) (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial ... the state claims should be dismissed as well."); *Karmel v. Liz Claiborne, Inc.,* No. 99 Civ. 3608(WK), 2002 U.S. Dist. LEXIS 12842, at \*10-\*11 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

### IV. CONCLUSION

For the foregoing reasons, plaintiff's Section 1983 claims are DISMISSED without prejudice pursuant to Rule 12(b)(6). The Court declines to exercise jurisdiction over plaintiff's state law claims. Plaintiff's request to file an amended complaint is GRANTED. Plaintiff may file and serve an amended complaint within thirty days of the date of this Order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1965303

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   6

2011 WL 2174503
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kevin Joseph Gabriel BRENNAN, Plaintiff,

v.

COUNTY OF BROOME in the
State of New York, Defendant.

No. 3:09–CV–677.
|
June 2, 2011.

**Attorneys and Law Firms**

Kevin Joseph Gabriel Brennan, Johnson City, NY, pro se.

Robert G. Behnke, Binghamton, NY, for Defendant.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

 *1 Plaintiff commenced this action *pro se* asserting that Defendant deprived him of his right to constitutional due process in connection with a child neglect or abuse investigation, and violated his rights under the Americans with Disabilities Act by failing to provide adequate handicap parking near the Broome County Family and County Court building in Binghamton, New York. *See* Am. Compl., dkt. # 15. Presently before the Court are: (1) Plaintiff's appeal of Magistrate Judge David E. Peebles's January 11, 2011 Order, dkt. # 38; (2) Defendant's motion for summary judgment, dkt. # 39; (3) Plaintiff's cross-motion for a finding of contempt of court against two non-party Broome County employees, dkt. # 41; and (4) Plaintiff's application for the appointment of counsel, dkt. # 48. The Court will address the motions *seriatim.*

**II. APPEAL OF MAGISTRATE JUDGE DECISION**
On January 11, 2011, after reviewing the parties' papers and hearing oral argument, Magistrate Judge Peebles denied Plaintiff's discovery motions and Plaintiff's request for the designation of a private attorney general in this matter. *See* Jan. 11, 2011 Order, dkt. # 36. Plaintiff appeals this decision, essentially re-arguing the merits of

his motions before Magistrate Judge Peebles. *See* dkt. # 38. Defendant has filed opposition, arguing that Plaintiff's positions are without merit. *See* dkt. # 40.

A district court judge reviewing a magistrate judge's non-dispositive pretrial order, as is in issue here, *see Labarge v. Chase Manhattan Bank, N.A.,* 1997 WL 583122, at * 1 (N.D.N.Y. Sept.3, 1997) (Pooler, D.J.) ("Pretrial disputes concerning discovery generally are non-dispositive matters because they do not resolve parties' substantive claims for relief as set forth in the pleadings.") (citation omitted), may not modify or set aside any part of that order unless it is clearly erroneous or contrary to law. *Id.* (citing 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); N.D.N.Y. LOCAL RULE 72.1(b)); *Mathias v. Jacobs,* 167 F.Supp.2d 606, 621–23 (S.D.N.Y.2001). Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. *Lanzo v. City of New York,* 1999 WL 1007346, *2–3 (E.D.N.Y. Sept.21, 1999). This standard imposes a heavy burden on the objecting party, and only permits reversal where the district court determines that the magistrate judge "abused his broad discretion over resolution of discovery matters." *Labarge,* 1997 WL 583122, at *1; *see Mathias,* 167 F.Supp.2d at 621–23; *Lanzo,* 1999 WL 1007346, *3.

The Court finds no error or abuse of discretion by Magistrate Judge Peebles in issuing the January 11, 2011 Order. Plaintiff's mere supposition that Broome County computers might hold information different from that which was produced in discovery despite sworn representations to the contrary, or that the room in which he was interviewed by Broome County officials was equipped with audio and video surveillance equipment despite sworn representations to the contrary, is insufficient to demonstrate error or abuse of discretion by Magistrate Judge Peebles. There was also no abuse of discretion in failing to require Defendant to produce (1) documents which are created or maintained by a different entity over which Defendant has no control, or (2) documents that Plaintiff already possesses. As to the case worker's handwritten notes, Defendant supplied an affidavit from the case worker asserting that the handwritten notes were shredded once the information from the notes was entered into the state-maintained Connections system, [1] as was the case worker's practice to do; that Plaintiff has been provided a complete copy of the computer generated notes; and that the last entry into the

system (with the concomitant shredding of handwritten notes) occurred three months before the commencement of this action. It was not error or abuse of discretion for Magistrate Judge Peebles to deny Plaintiff's motion to compel this discovery "without prejudice to plaintiff's right to request from the trial court the issuance of a spoliation jury instruction" relative to these handwritten notes. *See* Jan. 11, 2011 Order. [2]

[1]     The Connections System is a state wide database used for documenting abuse and neglect investigations resulting from reports made to the New York State Office of Family and Children's Services' Child Abuse and Neglect Hotline.

[2]     Magistrate Judge Peebles wrote: "Plaintiff's motion to compel the defendant to produce further discovery materials is DENIED, without prejudice to plaintiff's right to request from the trial court the issuance of a spoliation jury instruction with respect to handwritten notes of caseworker, Kathleen Bednar. This denial is based upon the defendant's assertion that all documents within its possession, custody or control concerning an investigation of the plaintiff by the Broome County Department of Social Services have been produced, other than three specified letters which cannot be retrieved, and the court's finding that plaintiff has copies of those letters and that he has not provided the court with any evidence that would undermine the credibility of defendant's sworn assertions in that regard."

 **\*2**  The Court also finds no error or abuse of discretion in Magistrate Judge Peebles's denial of Plaintiff's motion for the appointment of a private attorney general in this matter. Plaintiff's newly minted argument that he should be afforded "private attorney general status" because he seeks to protect the rights of disabled government employees or "similarly situated" individuals who access the Broome County Family and County Court Building is without merit because Plaintiff has not instituted a representational-capacity suit.

For these reasons, Magistrate Judge Peebles January 11, 2011 Order is **affirmed.**

## III. SUMMARY JUDGMENT MOTION

The Court next turns to Defendant's motion for summary judgment.

### a. Standard Of Review

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, *see Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor, *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir.2002), a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994); Fed.R.Civ.P. 56(e).

The Local Rules of the Northern District provide a procedure for the efficient resolution of summary judgment motions. *See* N.D.N.Y.L.R. 7.1(a)(3). This places the onus on the parties to present the evidence that either supports or defeats the motion. A movant must set forth the undisputed facts that, it contends, entitles it to summary judgment in a Statement Of Material Facts. *See* N.D.N.Y.L.R. 7.1(a)(3). "Each fact listed shall set forth a specific citation to the record where the fact is established." *Id.*

 **\*3**  Once a properly supported Local Rule 7.1(a)(3) Statement of Material Facts is submitted, the non-moving

party must "file a response to the [movant's] Statement of Material Facts." *Id.* This requires a statement that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." *Id.* "Each denial shall set forth a specific citation to the record where the factual issue arises." *Id.* Conclusory denials unsupported by specific citations to the record are insufficient. *See N. Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.,* 426 F.3d 640, 648–49 (2d Cir.2005). [3] The Court deems as admitted properly facts in a movant's Statement of Material Facts that the opposing party has not specifically or properly controverted. N.D.N.Y.L.R. 7.1(a)(3).

[3]     (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations.")

While the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, *Govan,* 289 F.Supp.2d at 295; [4] *Veloz v. New York,* 339 F.Supp.2d 505, 513 (S.D.N.Y.2004), the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3). *Govan,* 289 F.Supp.2d at 295; *see also Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Edwards v. INS,* 59 F.3d 5, 8 (2d Cir.1995) ("While a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."); *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993)) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

[4]     To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan,* 289 F.Supp.2d at 295.

Simply stated, on a motion for summary judgment it is the duty of the parties, not the Court, to sift through the record and bring to the Court's attention the pertinent information that may create or defeat a triable issue of fact. *See Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002); *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 291 (2d Cir.2000). Summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking. FED. R. CIV. P. 56(c); *Celotex Corp.,* 477 U.S. at 322.

### *b. Background*[5]

[5]     Unless indicated otherwise, the following facts are taken primarily from Defendants' Statement of Material Facts [dkt. # 39–11] containing facts that are either admitted by Plaintiff or which are not properly controverted. *See* Resp. 7.1(a)(3) Stat. [dkt. # 43].

Plaintiff brings causes of action sounding in the denial of constitutional due process related to a Department of Social Services child abuse or neglect investigation, and sounding in a violation of the Americans With Disabilities Act related to the availability of handicap parking near the Broome County Family and County Court Building in Binghamton, New York. The Court will address the factual background pertinent to these claims separately.

### 1. Department of Social Services Investigation

**\*4** In December 2008, Rachel Anesi, the mother of Plaintiff's then–15 year old son filed a visitation modification petition in Broome County Family Court. The petition alleged that the son feared Plaintiff because of the verbal abuse directed at the child, and that Petitioner's conduct was causing deleterious effects on the child's well-being, including gastrointestinal distress. *See* April 8, 2010 Modified Decision and Order by Hon. John F. Lambert, Broome County Family Court Judge, dkt. # 44–2. [6] On December 18, 2008 Family Court Judge Spiro Pines ordered the Broome County Department of Social Services to conduct an investigation pursuant to Family Court Act § 1034 to determine whether Plaintiff had abused or neglected the child. The Broome County Department of Social Services ("DSS") received the Order on January 6, 2009. Also on January 6, 2009, the Child Protective Services ("CPS") Unit of the Broome County

DSS received notice of an abuse or neglect complaint filed against Plaintiff with the New York State Office of Family and Children's Services' Child Abuse and Neglect Hotline ("Hotline"). The investigation into the Hotline allegation and the FCA § 1034 Order was assigned to Barbara Barry, a supervisor in the Broome County CPS Unit. The investigation was also assigned to Kathleen Bednar, one of the case workers under Ms. Barry's supervision.

6     The petition by Ms. Anesi, who was granted legal and physical custody of the son on June 23, 2000, was in the midst of fifteen Family Court petitions filed by Plaintiff. *See* 4/8/10 Mod. Dec. Ord. of Judge Lambert.

From January 6, 2009 through March 6, 2009, Ms. Bednar conducted an investigation that included: two home visits to Ms. Anesi's house; several discussions with the 15 year old son; an interview with Ms. Anesi and her husband; an interview and home visit with Plaintiff; a call to the son's school to check on his attendance, grades and whether the school had any concerns about the child; and an interview with the mother of Plaintiff's daughter.

The son advised Ms. Bednar, *inter alia,* that: Plaintiff would regularly scream at him using vulgarity; Plaintiff appeared to be smoking illegal drugs while the son was visiting;[7] Plaintiff would punch the walls, cabinets, and car windows when he was screaming and that his mood was getting worse; on two occasions Plaintiff took the son with him when Plaintiff appeared to enter a building to purchase illegal drugs; and when the son was at Plaintiff's residence for visitation he spent most of his time in his room.

7     The son stated that he has observed Mr. Brennan on occasion blowing into a bowl and metallic pipe and then blowing the smoke into a pillow Mr. Brennan had on his face. The son stated that Mr. Brennan's house always had a "bland/funky" weird smell to it. The son also observed a muddy looking, "black tar" substance in Mr. Brennan's ash tray which did not appear to be cigarette ashes.

Ms. Anesi advised Ms. Bednar that Plaintiff had been known to use illegal drugs in the past and that, in her opinion, the son was negatively affected by Plaintiff's screaming. Ms. Anesi also advised Ms. Bednar that Plaintiff had previously been court-ordered to attend anger management therapy. Am. Compl. ¶ 22.

Plaintiff told Ms. Bednar that: the son always "cries wolf;" he does not yell at the son until the fourth or firth time he has to tell the son to do something; he smoke cigars but not when the children are in the house; and he had no prior Child Protective Services history. Plaintiff's apartment appeared clean to Ms. Bednar. Plaintiff's daughter was also present at the time of the visit. The daughter appeared to Ms. Bednar to be clean and adequately cared for. On two occasion (February 17, 2009 & March 5, 2009), after Plaintiff consented to submit to drug screening tests, Plaintiff failed to appear for the tests.

**\*5** A social worker at the son's school advised Ms. Bednar that the son's attendance and grades were excellent and he had no disciplinary issues. Ms. Bednar was advised that the school had no concerns about the son.[8] The mother of Plaintiff's daughter told Ms. Bednar that she did not have any concerns with the daughter visiting Plaintiff and that she had not heard about problems between Plaintiff and his son.

8     On March 16, 2009, Ms. Bednar spoke with a social worker who was seeing Plaintiff's son. She advised Ms. Bednar that when the son was having visitation with Mr. Brennan he appeared to regress socially and emotionally. It is not clear in the record whether this discussion occurred after the FCA § 1034 report was prepared and presented to the Family Court, and whether it occurred after DSS personnel submitted the "indicated" report of child abuse or maltreatment against Plaintiff to New York's Central Register (*see* text, *infra* ).

On March 6, 2009, Ms. Bednar determined that the case should be "indicated" for inadequate guardianship and drug/alcohol use.[9] Ms. Bednar had the "Connections" computer system generate "Notice of Indication" letters and forwarded the file to her supervisor Barbara Barry for review. On March 16, 2009, Ms. Bednar met with Ms. Barry. They discussed the case and the Family Court Act § 1034 report was prepared and submitted to the Family Court. It was also determined that the case would be "indicated" against Plaintiff for inadequate guardianship and drug/alcohol use, and the Notice of Indication was sent to Plaintiff.

9     *See* N.Y. Soc. Servs. Law § 412 ("An 'indicated report' means a report made pursuant to this title if an investigation determines that some credible evidence of the alleged abuse or maltreatment exists."); *Kenific*

*v. Oswego County,* 2010 WL 2977267, at * 11 (N.D.N.Y. July 23, 2010) ("Such credible evidence may consist, in part or whole, of hearsay.") (citing cases).

On April 13, 2009, Plaintiff filed a request with the New York State Office of Family and Children's Services for an expungement hearing on the indicated report. The initial appearance on the expungement hearing, which was held before an Administrative Law Judge ("ALJ") employed by the New York State Office of Family and Children's Services, was held on September 29, 2009. Another hearing was held on December 30, 2009 at which Plaintiff testified. Prior to the start of the December 30, 2009 hearing, Ms. Anesi's Family Court attorney appeared and requested from the ALJ permissions to sit in on the hearing, which was denied based upon Plaintiff's objection. A further hearing date was scheduled for May 4, 2010 and was adjourned. The hearing was rescheduled for August 4, 2010 and was adjourned at Mr. Brennan's request. The hearing was rescheduled for March 1, 2011.

On June 26, 2009, the Broome County Family Court held a hearing on the various petitions involving Plaintiff including Ms. Anesi's petition to modify Plaintiff's visitation with his son. Plaintiff did not attend the hearing. Broome County Family Court Judge John F. Lambert determined to proceed in Plaintiff's absence. After hearing evidence, Judge Lambert made findings that Plaintiff hurled curses and invectives at his son amounting to verbal abuse that struck fear in the child, and that Plaintiff's actions were detrimental to the health and well being of the son. *See* April 8, 2010 Modified Decision and Order of Judge John F. Lambert, Family Court Judge (attached as Plt. Ex. 2, dkt. # 44–2). Plaintiff's visitation with his son was suspended and made contingent upon further application to the Court. *Id.* Plaintiff asserts in his memorandum of law that he has not visited with his son in two years.

### 2. Americans With Disabilities Claim

According to the allegations in the Amended Complaint, Plaintiff suffers from certain physical impairments caused by a 1995 work-related injury that requires Plaintiff to utilize crutches when he walks.

**\*6** The Broome County Family and County Court Building was designed in 1997 and was constructed on Hawley Street in the City of Binghamton next to

the George Harvey Justice Building and across the street from the Governmental Plaza. [10] The building was opened to the public in August 1999. The property is bordered by Collier Street on the west and Exchange Street on the east. Behind the Family and County Court building is the Broome County Courthouse. Hawley Street, Collier Street and Exchange Street are streets under the jurisdiction of the City of Binghamton and Broome County does not set parking regulations for these streets. There is no on-site public parking for the Family and County Court Building.

[10]    The Governmental Plaza consists of the Broome County Office Building, the State Office Building and Binghamton City Hall.

The City of Binghamton provides on-street metered public parking on Exchange Street next to the Family and County Court Building. There is a metered handicapped parking spot on Exchange Street in front of the former Broome County Library. The City of Binghamton provides metered parking with a designated metered handicapped parking spot on Isabella Street which abuts the Broome County Office Building and runs perpendicular to Hawley Street across from the Family and County Court Building. The City provides metered handicapped parking spaces on Hawley Street in front of Binghamton City Hall. The City provides public parking in a parking garage on Collier Street which is across the street from the George Harvey Justice Building. There are handicapped parking spaces in this garage. The garage is approximately three hundred yards to the entrance of the Family and County Court Building.

Plaintiff contends that while there are handicap parking spots (a) across the street from the Broome County Family and County Court Building, Am. Compl. ¶ 55, (b) public paid parking on Isabella Street on the side of the Broome County Family and County Court Building, Am. Compl. ¶ 51, and (c) two handicap parking spaces in front of the George Harvey Justice Building next door to the Broome County Family and County Court Building (these spots being purportedly installed based upon Plaintiff's request, Am. Compl. ¶¶ 52, 67), "one more [spot] is authorized [in front of the George Harvey Justice Building] and there is still no spot in front of the Family Court Building." Am. Compl. ¶ 68 (First Cause of Action). Although Plaintiff has been able to attend Broome County Family Court proceedings, *see* Am. Compl. ¶¶ 28, 55, and was aware of the existing handicap parking spots at the time of his

Family Court proceedings, *see* Am. Compl. ¶¶ 60–67, he asserts that he "refused to attend" his Family Court proceeding on November 13, 2009 "due to the fact that there is no handicapped parking in front of the Family Court Building." Am. Compl. ¶ 62.

### c. Discussion

Plaintiff asserts both substantive and procedural due process claims related to the Department of Social Services's investigation.

### 1. Substantive Due Process

**\*7** It is well-settled that the Due Process clause guarantees "the interest of a parent in the custody of his or her children as 'a fundamental, constitutionally protected liberty interest.' " *Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir.2000) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996)). Here, however, Defendant did not interrupt Plaintiff's protected liberty interest in the custody of his child. Rather, any interruption of Plaintiff's custody rights to his son was effectuated by the independent determination of Family Court Judge Lambert based on Ms. Anesi's visitation modification petition instituted before DSS became involved.[11] Thus, Plaintiff has no substantive due process deprivation claim against Defendant based on the liberty interest in the custody of his son. *See Daniels v. Murphy,* 2007 WL 1965303, at \* 4 (E.D.N.Y. July 2, 2007).[12] Moreover, Plaintiff fails to make sufficient allegations of a municipal "policy" for imposition of § 1983 liability on Defendant. *See Tenenbaum v. Williams,* 193 F.3d 581, 597 (2d Cir.1999) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *see also Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 122 (2d Cir.1991) (In order to establish municipal liability, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

[11]    The facts indicate that DSS became involved after Family Court Judge Pines ordered a FCA Section 1034 investigation based on Ms. Anesi's allegations, and after a Hotline report was generated to the CPS Unit.

[12]    ("However, plaintiff's complaint fails to allege that the CPS defendants interrupted plaintiff's parental custody, and thereby implicated plaintiff's due

process rights. Indeed, at oral argument, plaintiff asserted that she has never lost custody of her son Thomas, and, thus, that the instant complaint is unrelated to any custody proceedings that have occurred in state court. Therefore, because plaintiff has failed to allege any conduct by the CPS defendants that threatened plaintiff's interest in the custody of her child, the complaint fails to state a claim under Section 1983 for violation of plaintiff's substantive due process rights.").

Even assuming, *arguendo,* that a fact finder could conclude that Defendant facilitated the deprivation of Plaintiff's interest, perhaps by the failure to properly train or supervise its case workers, the facts fail to support a viable substantive dues process claim. As Judge Suddaby wrote,

> It has long been settled in this Circuit that "a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection." *Wilkinson ex rel. Wilkinson v. Russell,* 182 F.3d 89, 104 (2d Cir.1999) (internal quotation marks and citation omitted). "To prevail on a claim that this right has been violated, plaintiffs must demonstrate that the government action was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Sutton v. Tompkins County,* 617 F.Supp.2d 84, 93 (N.D.N.Y.2007) (Mordue, C.J.) (internal quotation marks and citation omitted).

\* \* \*

> "This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context." *Id.* "An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." *Id.* (citation omitted). "In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information." *Id.* at 105 (citation omitted). "[A] mere failure to meet local or professional standards, without more, should not generally be elevated to the status of constitutional violation." *Id.* at 106 [citation omitted]. "As a result,

even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation." *Id.*

**\*8** This conscious-shocking requirement constitutes one of the elements necessary to state a claim for a violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Among the other elements (which include the fact that the defendants were acting under the color of state law and the fact that defendants' conduct caused an injury to the plaintiff) is the requirement that, when they acted, defendants possessed a state of mind more blameworthy than carelessness or negligence. Specifically, Defendants must have possessed a state of mind that rose to the level of intent or deliberate indifference-a state of mind akin to criminal recklessness.

*Kenific v. Oswego County,* 2010 WL 2977267, at * 13 (N.D.N.Y. July 23, 2010).

Nothing the DSS case workers did in this case arose to the conscious-shocking level and, as evidenced by the independent finding of Family Court Judge Lambert, the case workers' conclusions that there was some credible evidence to believe that Plaintiff engaged in maltreatment of his son was amply supported by the evidence existing at the time. Thus, the case worker's conclusions were reasonable under the circumstances, and Plaintiff's complaints of inadequacies in the investigation fail to bring the claim into the conscious-shocking realm. Similarly, the fact that Ms. Anesi's Family Court attorney showed up at the expungement hearing asking, unsuccessfully, to sit in, even if told of the proceeding by the DSS attorney, does not arise to the level of conscious-shocking conduct such to make out a substantive due process violation.[13]

[13]    Defendant asserts that Ms. Anesi's Family Court attorney attended the expungement hearing at Ms. Anesi's request because Plaintiff subpoenaed Ms. Anesi to testify at the hearing.

Plaintiff's speculation that DSS case workers conspired with Ms. Anesi to deprive Plaintiff of his custodial rights to his child is not only unsupported by the evidence, but contrary to the undisputed facts that DSS became involved after Family Court Judge Pines ordered DSS to investigate Plaintiff's conduct and after a Hotline report was generated regarding Plaintiff's conduct. Accordingly, the facts demonstrate that Defendant acted in accordance

with its public function and obligation relative to the underlying matter. Moreover, the underlying facts, as demonstrated by Family Court Judge Lambert's findings, supported the case workers' conclusions regarding Plaintiff's conduct. No reasonable fact finder could conclude that the case workers acted with the intent to improperly deprive Plaintiff of his constitutional right to custody or son, or acted with deliberate indifference to that right. Accordingly, Plaintiff's substantive due process claims are **dismissed.**

### 2. Procedural Due Process

Plaintiff also fails to present a viable procedural due process claim against Defendant based upon his liberty right to the custody of his son. Again, the claim fails because Defendant did not remove the child from Plaintiff's custody. *Daniels,* 2007 WL 1965303, at * 4 ("Similarly, because plaintiff does not allege that a state actor 'remove[d] a child from a parent's custody,' the complaint fails to present circumstances that would trigger plaintiff's entitlement to the 'procedures [that] must be afforded to a parent when the coercive power of the State seeks to separate them' from their children.") (quoting *Kia P.,* 235 F.3d at 759). Also like the substantive due process claim, Plaintiff fails to make sufficient allegations of a municipal "policy" causing the alleged procedural due process violations. *See Tenenbaum,* 193 F.3d at 597.

**\*9** Even assuming, *arguendo,* that a fact finder could conclude that Defendant played some role in depriving Plaintiff of his constitutional right to custody, the procedural due process claim fails because Plaintiff was afforded adequate due process by the Family Court proceeding. *See Tenenbaum,* 193 F.3d at 593 ("As a general rule ..., before parents may be deprived of the care, custody or management of their children without their consent, due process-ordinarily a court proceeding resulting in an order permitting removal-must be accorded to them."); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (due process "would generally require a predeprivation hearing"). The record indicates that Plaintiff's custody rights to his son, in the form of a visitation modification order suspending his visitation, was effectuated after a hearing on then-pending Family Court petitions including Ms. Anesi's petition to modify Plaintiff's visitation rights. That Plaintiff elected not to attend the hearing does not change the fact that the pre-deprivation hearing was available to him. Further, there is no indication

in the record that Plaintiff sought a rehearing of the Family Court matter because of his absence, or that he appealed the Family Court's determination to the Appellate Division the New York State Supreme Court.

To the extent that Plaintiff asserts that his liberty interest in his good name and reputation was impaired by the "indicated" report of maltreatment, and assuming without deciding that Plaintiff satisfies the "stigma-plus" requirement of such a claim, *see Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); [14] *Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994), [15] the claim fails because Plaintiff was afforded a name-clearing expungement hearing before the New York State Office of Family and Children's Services ALJ. This hearing allowed Plaintiff to challenge the basis of the case worker's determination to "indicate" the report against Plaintiff from the Hotline. To the extent that Plaintiff asserts that his liberty interest in his good name and reputation was violated by the content in the FCA § 1034 report provided to the Family Court, Plaintiff was afforded a name clearing hearing in the Family Court wherein Plaintiff could challenge the results of the FCA § 1034 investigation.

[14]   (Damage to a person's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." Rather, loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest.)

[15]   (The Second Circuit has interpreted *Paul v. Davis*' s holding to mean that "stigma plus" is required to establish such a constitutional deprivation).

Plaintiff has failed to establish that he has a constitutional protected property or liberty interest in any of the state regulations or procedures which, he contends, he was deprived. *See Young v. County of Fulton,* 160 F.3d 899, 902 (2d Cir.1998) ("Without more, the fact that defendants violated New York State procedural requirements does not support liability under § 1983."). For these reasons, Plaintiff's procedural due process claims are **dismissed.**

### 3. Americans with Disabilities Act

Plaintiff also alleges that Defendant violated the Americans with Disabilities Act because it did not provide adequate handicapped parking at the Broome County Family and County Court Building. *See* Am.

Compl. ¶ 68. It is undisputed, however, that Defendant does not provide public on-site parking at the Broome County Family and County Court Building; that the City of Binghamton controls the parking on the streets adjacent to the Broome County Family and County Court Building; and that there were handicapped parking spaces on the streets and in the parking garage in close proximity to the Broome County Family and County Court Building that Plaintiff was aware of and which he utilized to attend some Family Court proceedings. Plaintiff's claim that the handicapped spots were inadequate because they were not "in front of the Family Court Building," Am. Compl. ¶ 68, fails to state a viable claim under Title II of the Americans with Disabilities Act. *See* 42 U.S.C. § 12132. [16]

[16]   (Title II of the ADA prohibits discrimination in public services and specifically provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.")

**\*10** To make out a *prima facie* case under Title II, Plaintiff must allege facts sufficient to establish that (1) he is a 'qualified individual' with a disability; (2) that Defendant is subject to the ADA; and (3) that Plaintiff was denied the opportunity to participate in or benefit from Defendant's services, programs, or activities, or was otherwise discriminated against by Defendant, by reason of Plaintiff's disability. *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003). Assuming, *arguendo,* that Plaintiff satisfies the first element, he fails to satisfy the third element inasmuch as he was able to attend Broome County Family Court proceedings at the Broome County Family and County Court Building by parking in available handicap parking spots located in close proximity to the building. Moreover, according to Plaintiff's allegations, Broome County officials acted upon Plaintiff's request for additional and closer handicap parking spots near the Broome County Family and County Court Building by requesting of City of Binghamton officials to instal additional handicap parking spots. This purportedly resulted in two spots being installed next door to the Broome County Family and County Court Building and which prompted Plaintiff to contact Broome County officials to thank them for their efforts. *See* Am. Compl. 67. In light of the fact that Defendant did not have authority over the streets surrounding the Broome County Family

and County Court Building, these efforts constituted a reasonable accommodation under the circumstances and no reasonable fact finder could conclude otherwise. *See* *Meekins v. City of New York,* 524 F.Supp.2d 402, 407 (S.D.N.Y.2007) (In determining what constitutes "reasonable accommodations," the Court looks to federal regulations implementing both Title II); 28 C.F.R. Pt. 35, App. A. ("[A] public entity should provide an adequate number of accessible parking spaces in existing parking lots or garages *over which it has jurisdiction.* ") (emphasis added); *Ehrlich v. Gatta,* 2009 WL 3213715, *3 (S.D.N.Y. Oct.05, 2009) ("More significantly, nothing in Ehrlich's Complaint demonstrates that nine handicapped spaces is not "reasonable accommodation" and therefore sufficient under the ADA.") *see also* *Henrietta D.,* 331 F.3d at 271 (To establish a reasonable accommodation claim under the ADA, "the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled."). Accordingly, Plaintiff's Americans with Disabilities Act claim is **dismissed.**

## IV. CROSS–MOTION FOR FINDING OF CONTEMPT

Plaintiff has filed a Notice of Motion seeking, in additional to denial of Defendant's summary judgment motion, a finding of contempt of court against Kathleen Bednar and Defendant's attorney, Robert Behnke, Esq. *See* dkt. # 41. Other than this mention of contempt in the Notice of Motion, Plaintiff does not address this issue in his affidavit or memorandum of law. Inasmuch as Plaintiff has provided no factual or legal basis for his cross-motion, the motion for a finding of contempt of court is **denied.**

## V. APPLICATION FOR APPOINTMENT OF COUNSEL

*11 Plaintiff's application for the appointment of counsel to aid in the drafting of a second complaint is **denied** for the reasons stated in Magistrate Judge Peebles's April 16, 2010 Decision and Order denying the appointment of counsel, dkt. # 14, and because Plaintiff has failed to timely moved to amend his complaint for a second time. *See* Uniform Pretrial Scheduling Order, ¶ 5, dkt. # 12 ("Any application to amend any pleading in this action shall be made on or before *APRIL 30, 2010.* ") (emphasis in original).

## VI. CONCLUSION

For the reasons discussed above,

(1) Plaintiff's appeal of Magistrate Judge David E. Peebles's January 11, 2011 Order, dkt. # 38, is **DENIED** and Magistrate Judge Peebles's January 11, 2011 Order is **AFFIRMED;**

(2) Defendant's motion for summary judgment, dkt. # 39, is **GRANTED** and all claims in Plaintiff's Amended Complaint are **DISMISSED;**

(3) Plaintiff's cross-motion for a finding of contempt of court against Ms. Bednar and Attorney Behnke, dkt. # 41, is **DENIED;**

and

(4) Plaintiff's application for the appointment of counsel, dkt. # 48, is **DENIED.**

The Clerk of the Court is directed to close the file in this matter.

**IT IS SO ORDERED.**

## All Citations

Not Reported in F.Supp.2d, 2011 WL 2174503

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1976669
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

D. James COON, Plaintiff,
v.
Catherine A. BURKLY, Town of Whitecreek,
Assessor, Tax Collector, Justice Court Clerk,
Marvin Day, Amber Marriott, Valerie Reagan,
Town of Cambridge Mayor, Washington
County Real Property Tax Services, Defendants.

No. 1:13–CV–1306.
|
Signed May 15, 2014.

**Attorneys and Law Firms**

D. James Coon, Cambridge, NY, pro se.

### DECISION and ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* action was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the April 21, 2014 Report–Recommendation have been raised. After examining the record, this Court has determined that the Report–Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report–Recommendation for the reasons stated therein.

After finding that the plaintiff should be permitted to proceed *in forma pauperis,* the Report–Recommendation recommended that the Court dismiss Plaintiff's Amended Complaint with prejudice as to the plaintiff's claims that Defendants violated his rights under the Health Insurance Portability and Privacy Act ("HIPPA"), 42 U.S.C. § 1320, *et seq.,* and the Americans with Disabilities Act ("ADA"). Magistrate Judge Dancks also recommended that the Court dismiss Plaintiff's Fourteenth Amendment due process claims against the Town of Whitecreek and its tax assessor and tax collector, brought pursuant to 42 U.S.C.

§ 1983, with prejudice. While she found that Plaintiff had also failed to state a claim with respect to Plaintiff's allegations that Defendants violated his privacy in violation of the Fourteenth Amendment, the Magistrate Judge recommend that Plaintiff be granted leave to amend his Complaint with respect to these allegations. Plaintiff was permitted to allege facts plausibly showing that Defendants acted under color of state law. Magistrate Judge Dancks also recommended that the Court refuse to exercise its supplemental jurisdiction to hear Plaintiff's state-law claims. Such claims should be re-filed in state court or reconsidered should Plaintiff file an amended complaint that stated a federal claim.

Rather than objecting to the Magistrate Judge's findings, Plaintiff filed a Second Amended Complaint, naming several new Defendants.[1] *See* dkt. # 9. Plaintiff is proceeding *in forma pauperis. See* dkt. # 2. In the interest of efficiency, this Court will review the Plaintiff's Amended pleading to determine whether Plaintiff properly pled state action on his claim. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (granting the Court permission to dismiss an *in forma pauperis* complaint if the Court finds the action "(i) frivolous or malicious; (ii) fails to state to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."); *Livingston v. Adirondack Bev. Co.,* 141 F.3d 434, 437 (2d Cir.1998) (courts may dismiss such claims "when either (1) 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy;' or (2) 'the claim is based on an indisputably meritless legal theory.' ") (quoting *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990)).

[1]    The Defendants named are Washington County Treasurer, Washington County Tax Office, Glens Falls Hospital, Granville Family Health Center, and W. Marvin Day.

The Second Amended Complaint must be dismissed with prejudice with respect to all of Plaintiff's federal claims. None of the claims raised in that action can be sustained and amendment would be futile. First, The allegations in Count Three of the Second Amended Complaint do not sufficiently allege that Defendant Day acted under color of state law. The Complaint alleges that Glens Falls Hospital, Granville Family Health, and Marvin Day breached Plaintiff's right to privacy, allegations made against Day and other defendants in the First Amended Complaint. Even though Plaintiff alleges that these

medical providers received federal money, such claims do not sufficiently contend that Defendants acted under color of law. For the reasons stated by the Magistrate Judge in her April 21, 2014 opinion, the Court finds that Plaintiff fails to state a Fourteenth Amendment Claim with these allegations. Similarly, Count One of Plaintiff's Second Amended Complaint alleges that he was injured by Defendants' property tax assessment. The Court adopts the reasoning of the Magistrate Judge in determining that such disputes over assessments must be dismissed with prejudice.

**\*2** Finally, the Court reads Count Two of the Second Amended Complaint to allege that although Defendant Glens Falls Hospital has always provided him with medical treatment, including life-saving care three times in recent years, he has received a letter that the hospital will no longer accept him for care. Plaintiff alleges that a hospital that receives federal funds must provide any treatment to any person with health insurance. The Emergency Medical Treatment and Active Labor Act does require hospitals to insure "the availability of emergency health care services to the poor and uninsured." *Brecord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc.,* 133 F.Supp.2d 179, 184 (E.D.N.Y.2001); see 42 U.S.C. § 1395dd. Federal law mandating the provision of such services was a response "to 'a growing concern that hospitals were 'dumping' patients unable to pay, by either refusing medical treatment or transferring patients before their emergency conditions were stabilized.' " *Id.* (quoting *Brooks v. Maryland General Hospital, Inc.,* 996 F.2d 708, 710 (4th Cir.1992)). The Act permits "[a]ny individual who suffers person harm as a direct result of a participating hospital's violation of a requirement" of the statute to bring a civil action "against the participating hospital [and] obtain those damages available for person injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d) (2)(A).

Plaintiff alleges that he received treatment from the hospital and was actually cured, and thus could not prevail on any claim under this statute for injuries as result of being denied treatment. Any claim that he may in the future be denied service and suffer injury is purely speculative and cannot be a basis for a claim, since Plaintiff would actually have to need emergency services and face denial of those services to bring a claim under the statute. *See, e.g., Simon v. E. Ky. Welfare*

*Rights Org.,* 426 U.S. 26, 38 (1976) (to have Article III standing, a Plaintiff must have "shown an injury to himself that is likely to be addressed by a favorable decision"); *Green Island Power Auth. v. FERC,* 577 F.3d 148, 161 (2d Cir.2009) (party's injury must demonstrate that "it actually will suffer a concrete injury" and such claims are not established if injury "is purely speculative"). Plaintiff cannot claim any actual injury until he actually needs emergency treatment and faces being denied, and he can obtain neither damages nor injunctive relief from this Court under these circumstances. *See Baur v. Veneman,* 352 F.3d 625, 632 (2d Cir.2003) ("[T]o support standing, the plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur.").

The Court will therefore adopt the Report–Recommendation. In addition, after reviewing the Second Amended Complaint, the Court determines that the claims raised therein are indisputably meritless. The Second Amended Complaint will therefore be dismissed. As such:

**\*3** 1. All federal claims in the Plaintiff's Second Amended Complaint are hereby DISMISSED with prejudice; and

2. To the extent that the plaintiff presents any state-law claims, those claims are dismissed without prejudice to Plaintiff seeking relief in the appropriate state court.

IT IS SO ORDERED.

D. JAMES COON,

Plaintiff,

v.

WASHINGTON COUNTY REAL PROPERTY TAX SERVICES; TOWN OF WHITECREEK { Assessor, Tax Collector, Justice Court Clerk}; TOWN OF CAMBRIDGE JUSTICE COURT; CATHERINE A. BURKLY; MARVIN DAY {RPA GRANVILLE FAMILY HEALTH, GLENS FALLS HOSPITAL}; AMBER MARRIOT {GLENS FALLS NATIONAL BANK CORP}; TOWN OF CAMBRIDGE MAYOR VALERIE REAGAN; TOWN OF WHITECREEK SUPERVISOR BOB SHEA,

Defendants.

*REPORT–RECOMMENDATION AND ORDER*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Clerk has sent this *pro se* Amended Complaint together with an application to proceed *in forma pauperis* to the Court for review. (Dkt. Nos. 2 and 3.) Plaintiff appears to have named as Defendants Washington County Real Property Tax Services ("WCRPTS"); Town of Whitecreek (its Assessor, Tax Collector, Justice Court, and Court Clerk); Town of Cambridge Justice Court; Catherine A. Burkly ("Burkly"); Marvin Day, RPA (Granville Family Health, Glens Falls Hospital); Amber Marriot, Glens Falls National Bank Corp.; Town of Cambridge Mayor Valerie Reagan; and Town of Whitecreek Supervisor, Bob Shea.

Plaintiff asserts subject matter jurisdiction based upon his alleged claims for violation of his civil rights; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.;* the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320, *et seq.;* invasion of privacy; tortious interference with Plaintiff's right to do his own business; negligence; incompetence; and medical malpractice. (Dkt. No. 3 at 1–2). For the reasons discussed below, I grant Plaintiff's application to proceed *in forma pauperis* and recommend that the District Court *sua sponte* dismiss his Amended Complaint pursuant to 28 U.S.C. § 1915(e), with leave to amend as to only certain defendants and one of the claims asserted in the Amended Complaint.

## I. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). A review of Plaintiff's *in forma pauperis* application reveals that he meets this standard. [1] Therefore, Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is granted.

---

[1]    In his application, Plaintiff has indicated that he owns no real estate or anything else of value. (Dkt. No. 2 at 2.) However, the majority of his claims involve real property and a trailer located at 103 CR 71, Cambridge, New York, which Plaintiff inherited

from his mother and owned at the time he filed his application in this matter. (*See* Dkt. No. 3.) Plaintiff also makes reference to having gone to court to seek the eviction of a tenant from property owned by him, and it is not clear from the Amended Complaint if the eviction proceedings involved the same property as Plaintiff inherited from his mother or he owns additional property. *Id.* at 9–11. It is obvious from Plaintiff's Amended Complaint that he made no attempt to hide his ownership of the real property and trailer from the Court. Therefore, I will give Plaintiff the benefit of the doubt and assume for the present that the omission from his application was an oversight on his part. My determination that Plaintiff is entitled to proceed *in forma pauperis* includes consideration of the real property and trailer which, according to the Amended Complaint, have a value of between $29,000 and $59,000. (Dkt. No. 3 at 7.) However, in the event Plaintiff files a second amended complaint, he will be required to file with it an amended application to proceed *in forma pauperis* that includes complete disclosure with regard to each request for information. If the amended application shows Plaintiff does not qualify, the Court will revoke the grant of *in forma pauperis* status.

## II. ALLEGATIONS OF THE COMPLAINT

### A. The Trailer Sale Litigation and Alleged Violation of Plaintiff's Privacy Rights

Plaintiff, who is disabled and with his family of three lives on $730.00 per month in social security, inherited real property and a trailer at 103 CR 71 Cambridge, New York in January of 2010. *Id.* at 2, 6. Plaintiff has, on his own, paid all upkeep, taxes, insurance, and done all repairs necessitated by multiple acts of vandalism. *Id.* Some, but not all, of Plaintiff's claims relate to the Cambridge property.

**\*4** On or about June 12, 2013, Plaintiff placed ads in a number of newspapers for the purpose of selling the trailer on the Cambridge property. *Id.* at 2, 6. After looking at the trailer, Ray Harrington made an $18,000 purchase offer which was accepted by Plaintiff. *Id.* at 2–3. A $1,500 down payment was made, but there were no further payments, and after a few month of "fooling around," the Harrington's "stiffed" Plaintiff on the trailer *Id* . at 3. The Harringtons commenced a small claims court action for $3,000 against Plaintiff in connection with the trailer purchase agreement. *Id.* Plaintiff responded with a lawsuit against the Harringtons before Justice

Patrick J. McGrath in Rensselaer County Supreme Court. *Id.* Burkly represented the Harringtons in the lawsuit commenced by Plaintiff. *Id.* at 4. According to Plaintiff, Burkly, whom he has never met, has been running a smear campaign against him. *Id.* at 3.

Plaintiff asked his long time medical care provider, Defendant Marvin Day, RPA ("Day"), to prepare an update on his medical condition. *Id.* The updated information was filed with Judge McGrath in connection with the litigation. *Id.* Plaintiff claims that Burkly and Day got together and went through Plaintiff's private and confidential medical history in four letters from Day to Plaintiff that were covered by the physician-patient privilege, HIPAA, the ADA, other federal and state laws, and the Glens Falls Hospital patient rights. [2] *Id.* at 4. Plaintiff contends that he had asked Day for a letter for the state court only to show Judge McGrath why he might miss court from time to time and "never hired Burkly or W. Marvin Day RPA to represent or consult on my medical conditions," and "never signed any release or discussed the situation with Burkly or Day." [3] *Id.*

[2]      It is unclear from the Plaintiff's Amended Complaint whether the allegedly confidential medical information reviewed by Burkly and discussed with Day was material given to Judge McGrath and obtained by Burkly in connection with the litigation in Rensselaer County Supreme Court, or was information obtained directly from Day with or without Plaintiff's authorization. Inasmuch as Plaintiff identifies the first letter allegedly disclosed to Burkly as "Exhibit A," presumably in the state court proceeding, at least some of the medical information was likely disclosed in the litigation. *Id.* at 4.

[3]      According to Plaintiff, when Day had provided him medical updates to attorneys or judges on at least six prior occasions, Day had required a signed medical release but required no release in this case. *Id.* at 4.

Plaintiff claims that as a part of her smear campaign, Burkly, using Day, submitted an affidavit in the state court litigation accusing Plaintiff of having forged Day's signature on the first letter. *Id.* Day claimed that although the information in the letter was accurate, the signature was not his. *Id.* Burkly also asserted that in the state court proceeding Plaintiff had filed a falsified document containing a chronological list of ten medically needed hospitalizations over a ten month period. *Id.* Plaintiff contends that none of the medical information used by

Burkly was valid for use in defending the Harringtons on Plaintiff's breach of contract claim. *Id.* Plaintiff fired Day after the disclosure having decided he was not trustworthy. *Id.*

Plaintiff has also alleged that Burkly filed an affidavit asking the court to dismiss his case because an affidavit submitted by Plaintiff had an outdated notary stamp. *Id.* at 12. Plaintiff has named the notary, Amber Marriott as a Defendant for using the outdated stamp. *Id.*

### B. Plaintiff's Property Tax Dispute with the Town of Whitecreek

**\*5**   Plaintiff's property at 103 CR 71 Cambridge, New York is located in the Town of Whitecreek. *Id.* at 6. Plaintiff has alleged that the Town of Whitecreek tax collector and tax assessor, improperly and with the intent to steal Plaintiff's property for non-payment of real property taxes, have mistakenly denied him his STAR and disability exemptions on his real estate taxes and have relied upon mistaken information regarding where Plaintiff and his family have been living and where his son has been attending school. [4] *Id.* at 6–7.

[4]      The New York State School Tax Relief Program (STAR), provides homeowners with partial exemptions from school property taxes on qualified real property. *See* New York Real Property Tax Law § 425.

According to Plaintiff, during the years 2009 and 2010, his annual real property taxes on the property were $456.00. *Id.* at 6. Initially Plaintiff received a tax bill in the same amount for 2011. *Id.* at 7. However, following denial of his STAR and disability exemptions, Plaintiff was sent a superseding bill in the amount of $1178.90. Plaintiff appears to suggest that he was wrongfully denied his STAR and disability exemptions in 2011 as a result of Burkly's submission of documents she had concocted and submitted indicating that Plaintiff was committing tax fraud with respect to his Whitecreek property and school taxes. *Id.* at 6–7. Plaintiff denies committing fraud. *Id.*

Plaintiff has alleged that his initial tax bill for 2012, which he paid, was $456.00 *Id.* at 7. However, that bill was superseded by a bill for $1,285.00 after his STAR and disability exemptions were taken away because Plaintiff's property had been so badly vandalized on two occasions,

2014 WL 1976669

it became uninhabitable in June of 2010 and again from May through October 2012. *Id.* at 7.

Plaintiff's STAR and disability exemptions were restored in 2013, and according to the Amended Complaint, he received a school tax bill for $2.23, which he paid. *Id.* However, he did not receive a property tax bill. *Id.* It turned out that the property tax bill had been sent to his old address, and when he received the bill, it was $2,996.00 plus fees for a total of $3,189.00. *Id.* Plaintiff was subsequently told by the Town of Whitecreek that if he did not pay his property taxes by November of 2013, his property would be sold for non-payment of taxes. *Id.* at 8.

Plaintiff also complains that the Town of Whitecreek tax assessor failed to reduce his tax assessment after being informed by Plaintiff that the value of his property had decreased by $20,000 as a result of vandalism. *Id.* at 7. According to Plaintiff, the value of the property decreased from $59,000 to $29,000. *Id.*

### C. Town of Whitecreek's Failure to Replace the Town Justice and Claims Against the Town Justice Challenging Judicial Determinations

Plaintiff claims that the Whitecreek Town Justice, who is about eighty years old, suffers from memory loss, dementia, or early Alzheimers, and that the Town has a duty to its citizens to watch when a person gets too old to handle a job that entails people's lives and their freedom. *Id.* at 8. The Whitecreek Town Justice, who is also the Cambridge Town Justice, has run unopposed for both positions. *Id.*

**\*6** Plaintiff has alleged that he appeared before the Whitecreek Town Justice eleven times in 2011–2013 to evict a non-paying tenant. The Town Justice kept forgetting what documents had been filed in the case, what had transpired in court, and the rulings he had made, resulting in the tenant continuing to reside in Plaintiff's property from June 6, 2011 through May 30, 2012, without paying any of the $8,050.00 rent due, and causing $5,867.90 in property damage. *Id.* at 9. According to Plaintiff, in one instance the Whitecreek Town Justice told Plaintiff's wife that she had to obtain service documents from the Clerk of the Cambridge Justice Court and after she had done so, the Whitecreek Town Justice forgot about it and dismissed the case when the tenant told the court that Plaintiff rather than his wife had done the service documents. *Id.*

Plaintiff also complains about the Town Justice's handling of the Harrington's small claims action commenced for recovery of the down payment. *Id.* at 11. The allegations in the Amended Complaint regarding the Harrington action are largely incomprehensible but may reasonably be construed as requesting that the district court invalidate the Justice Court's finding in the Harrington's favor in the amount of $1,515.00. *See id.* at 11.

### D. Medical Malpractice

Plaintiff claims that Day and Defendant Granville Family Health Center committed gross negligence and medical malpractice by failing to provide the medications, minerals and vitamins he needs because of severe medical issues resulting from seven surgeries and complications over the past year. *Id.* at 5. Plaintiff contends that he is supposed to take approximately twenty-six medications two or three times a day, including muscle relaxants and two narcotics for chronic pain, and that the staff at the clinic routinely makes mistakes in calling in prescriptions so that Plaintiff runs out of needed medication. *Id.* Plaintiff also claims to be having an ongoing fight with Medicare Part D and Medicaid because they have stopped paying for the vitamins and minerals he needs to survive having had his stomach and intestines removed. *Id.*

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in

ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*7** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

In addition, "[i]t is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000.00 (28 U.S.C. § 1332). Federal courts have an independent obligation to resolve any doubt over whether they have subject matter jurisdiction over a case. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278 (2004). Determining the existence of subject matter jurisdiction is a threshold inquiry. *See* Federal Rule of Civil Procedure Rule 12(h)(3) ("if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *see also United Republic Ins. Co., in Receivership v. Chase Manhattan Bank,* 315 F.3d 163, 170–71 (2d Cir.2003) ("We have ... urged counsel and district courts to treat subject matter jurisdiction as a threshold issue for resolution."). Therefore, the Court's initial review under 28 U.S.C. § 1915(e) must include consideration of whether the court has subject matter jurisdiction over Plaintiff's claims. *See, e.g., Smith ex. rel. Bey v. Kelly,* No. 12–CV–2319, 2012 WL 1898944, at \*2, 2012 U.S. Dist. LEXIS 72884, at \*4–5 (E.D.N.Y. May 24, 2012) (court is obligated to analyze whether subject matter jurisdiction exists as a part of § 1915(e) initial review and to dismiss the complaint when subject matter jurisdiction is found lacking). [5]

---

[5]    Copies of unpublished decisions cited herein will be provided to Plaintiff in accordance with *Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009) (*per curiam* ).

## III. ANALYSIS

### A. Federal Claims Regarding Disclosure of Confidential Medical Information

**\*8** Plaintiff claims that Day's disclosure to Burkly of Plaintiff's confidential medical information contained in four letters Day had written on Plaintiff's behalf violated HIPAA, the ADA and Plaintiff's federal privacy rights. [6]

---

[6]    Plaintiff has not referenced the civil rights statute at 42 U.S .C. § 1983 in his Amended Complaint. (*See* Dkt. No. 3.) However, he has alleged the violation of his civil rights, *id.* at 1, and in light of Plaintiff's *pro se* status, I have construed his Amended Complaint as intending to assert claims under § 1983.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

### 1. *HIPAA*

Court have overwhelmingly concluded that there is no private right of action under HIPAA. *See, e.g., Wilkerson v. Shinseki,* 606 F.3d 1256, 1267 n. 4 (10th Cir.2010); *Miller v. Nichols,* 586 F.3d 53, 59 (1st Cir.2009); *Acara v. Banks,* 470 F.3d 569, 572 (5th Cir.2006); *Rosado v. Herard,* No. 12 Civ. 8943(PGG) (FM), 2013 WL 6170631, at *3, 2013 U.S. Dist. LEXIS 169068, at *8–9 (S.D.N.Y. Nov. 25, 2013), *Report and Recommendation adopted in part and modified in part on other grounds,* 2014 WL 1303513, 2014 U.S. Dist. LEXIS 40172 (S.D.N.Y. Mar. 24, 2014); *Mascetti v. Zozulin,* No. 3:09 Civ. 963(PCD), 2010 WL 1644572, at *4, 2010 U.S. Dist. LEXIS 39003, at *13 (D.Conn. Apr. 20, 2010); *Cassidy v. Nicolo,* No. 03 Civ. 6603(CJS), 2005 WL 3334523, at *5, 2005 U.S. Dist. LEXIS 34160, at *17–18 (W.D.N.Y. Dec. 7, 2005) (collecting cases). Accordingly, I recommend that Plaintiff's HIPAA claim against Defendants Day and Burkly be dismissed with prejudice. [7]

[7]  Plaintiff may have intended to name the Glens Falls Hospital as a defendant in this action. However, there are no allegations in the Amended Complaint suggesting any involvement by the hospital in either Plaintiff's medical records or medical malpractice claims, and I recommend that the Amended Complaint be dismissed without prejudice as against the hospital.

### 2. *ADA*

Title I of the ADA provides protection from discriminatory adverse employment actions to persons with physical or mental impairments who are qualified to perform the essential functions of their positions, with or without reasonable accommodations. *See Ryan v. Grae & Rybicki,* 135 F.3d 867, 869–70 (2d Cir.1998). Plaintiff has alleged no facts stating a claim against Day or Burkly under Title I of the ADA. [8]

[8]  42 U.S.C. § 12112(d) restricts an employer's disclosure of confidential medical information gained by an employer as a result of a medical examination or inquiry made in connection with employment. *See Medlin v. Rome Strip Steel Co., Inc.,* 294 F.Supp.2d 279, 293 (N.D.N.Y.2003). Since no employment situation is alleged in Plaintiff's Amended Complaint, the provision has no application to Day's alleged

disclosure of confidential medical information to Burkly.

Title II of the ADA applies to public services and provides in relevant part at 42 U.S.C. § 12132 that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." *See Lincoln Cercpac v. Health and Hospitals Corp.,* 920 F.Supp. 488, 497 (S.D.N.Y.1996) ("To establish a violation of Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability, (2) he or she is being excluded from participation in or being denied the benefits of some service, program or activity by reason of his or her disability, and (3) the entity which provides the service, program or activity is a public entity.") (citations and internal quotation marks omitted). Plaintiff has alleged no facts in his Amended Complaint that state a claim under Title II of the ADA.

Title III of the ADA applies to public accommodations and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, a plaintiff must allege that he is disabled as defined by the ADA and that the defendant owns or operates a public accommodation and has discriminated against the plaintiff within the meaning of the ADA. *See Roberts v. Royal Atlantic Corp.,* 542 F.3d 363, 368 (2d Cir.2008). Plaintiff has alleged no facts in his Amended Complaint that state a claim under Title II of the ADA.

**\*9** Given Plaintiff's failure to include any factual allegations whatsoever in his Amended Complaint suggesting that he may have a claim under the ADA, or that Day or Burkly would have any liability under the Act, I recommend that his claim that his ADA claim against Day and Burkly be dismissed with prejudice. [9]

[9]  Although ordinarily I would recommend allowing Plaintiff the opportunity to amend his claim under the ADA, I am recommending that the claim be dismissed with prejudice because the allegations in his Amended Complaint establish that his claims are not

even remotely related to the ADA, and amendment would be futile.

### 3. *Constitutional Right to Privacy*

Although Plaintiff has not specifically alleged a violation of his constitutional rights in connection with the alleged disclosure of his confidential medical information, given his *pro se* status and general claim that his civil rights have been violated, I have considered whether Plaintiff has stated a § 1983 claim against Day and Burkly with regard to the disclosure and concluded that he has not.

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 158 (2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." [10] *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau,* 292 F .3d 307, 323 (2d Cir.2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 941 F .2d 1292, 1295–96 (2d Cir.1991) ("Because the United States Constitution regulates only

the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." [11] *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970) (citing *United States v. Price,* 383 U.S. 787, 794 (1966)).

[10]   A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee,* No. 5:09–CV–1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist. LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

[11]   The Supreme Court has identified other instances where a private party's actions may be fairly attributed to state action, including: (1) where the challenged action results from the State's exercise of coercive power; (2) when the State provides significant encouragement, either overt or covert; (3) when a nominally private entity is controlled by an agency of the State; (4) when a private entity has been delegated a public function by the State; and (5) when the private entity is entwined with governmental policies, or the government is entwined in its management or control. *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295 (2001). The allegations in the Amended Complaint do not fall within any of these other instances.

**\*10** The Supreme Court has recognized a constitutional privacy right under the Fourteenth Amendment protecting "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599 (1977). The Second Circuit has held that the right to privacy encompasses a right to confidentiality regarding "information about the state of one's health." *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) ("there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over."). Whether or not a medical condition is sufficiently serious for the constitutional right to attach is decided on a case-by-case basis. *See Matson v. Bd. of Educ. of City Sch. Dist. of New York,* 631 F.3d 57, 66 (2d Cir.2011) (medical condition both serious in nature and of a type that is "excruciatingly private and intimate in nature such as those likely to

provoke ... an intense desire to preserve one's medical confidentiality merits constitutional protection.").

The allegations in Plaintiff's Amended Complaint regarding his medical condition do not appear to be of the type that would be found to be "excruciatingly private and intimate in nature" for purposes of stating a § 1983 claim for violation of his Fourteenth Amendment right to privacy. [12] *Matson,* 631 F.3d at 66. Even if the allegations were deemed sufficient, there are no facts alleged in Plaintiff's Amended Complaint that plausibly suggest that either Day or Burkly was engaged in anything other than private conduct with regard to the alleged disclosure of Plaintiff's confidential medical information. Therefore, no matter how wrongful their conduct with regard to Plaintiff's confidential medical records, if it was indeed wrong at all, their private conduct is not within the reach of § 1983, *see Sullivan,* 526 U.S. at 50, and I recommend that the claim be dismissed.

[12]    Plaintiff alleges that he had seven surgeries over the course of a year, that he has had his stomach and intestines removed, and that he is required to take numerous medications. (Dkt. No. 3 at 5.)

Although it appears extremely unlikely that Plaintiff will be able to state a § 1983 claim against Defendants Day and Barkly with regard to his medical records, [13] giving due deference to his *pro se* status, I recommend that the § 1983 Fourteenth Amendment claim be dismissed without prejudice.

[13]    Even in the unlikely event Plaintiff is able to show that Day and Burly were acting under color of state law, his Amended Complaint suggests the possibility that Plaintiff himself may have disclosed the information and placed it in issue in the litigation, in which case they may have become public records not covered by the right to privacy, or he may have waived his right to keep the information confidential. (Dkt. No. 3 at 3–5.) *See Pelosi v. Spota,* 607 F.Supp.2d 366, 373–74 (E.D.N.Y.2009) (right to privacy does not extend to matters of public record and judicial records may be a matter of public record); *Giaccio v. City of New York,* 502 F.Supp.2d 380, 388 (S.D.N.Y.2007) (plaintiff's own disclosure of his positive drug test eliminates any expectation of privacy), *aff'd,* 308 F. Appx.2009 (2d Cir.2009).

### B. Federal Claim Regarding Property Tax Dispute with the Town of Whitecreek

Plaintiff claims that the Town of Whitecreek tax assessor and tax collector have been attempting to steal his property by improperly denying him STAR and disability exemptions to which he is entitled, relying upon misinformation as to where he and his family were living, failing to reduce his assessment when informed by him of the decrease in value caused by vandalism, and informing him that his property would be sold in November of 2013 for failure to pay property taxes. (Dkt. No. 3 at 6–8.) Plaintiff has failed to allege a specific violation of his constitutional rights with respect to the alleged wrongdoing by the Defendant Town of Whitecreek and its tax assessor and tax collector. (*See generally* Dkt. No. 3.) Construing his Amended Complaint liberally, I have concluded that Plaintiff may be attempting to assert a § 1983 claim for deprivation of property without due process under the Fourteenth Amendment. I have also concluded, however, that the district court is deprived of subject matter jurisdiction over Plaintiff's § 1983 due process claim by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and principles of comity. [14]

[14]    Where it is applicable, the Tax Injunction Act bars federal subject matter jurisdiction. *See Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 470 (1976).

**\*11** The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA applies to state, local, and municipal taxes. *See Rosewell v. LaSalle Nat. Bank,* 450 U.S. 503, 522 (1981) (the TIA "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."); *Bernard v. Village of Spring Valley, N.Y.,* 30 F.3d 294, 297 (2d Cir.1994) (TIA "is rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations, and was written primarily to limit federal court interference with local tax matters"). The TIA deprives district courts of jurisdiction even when a plaintiff's claim rests upon constitutional grounds. *Heimbach v. Chu,* 744 F.2d 11, 15 (2d Cir.1984) (citing *California v. Grace Brethren Church,* 457 U.S. 393, 411 (1982)).

Plaintiff's Amended Complaint can be read as seeking injunctive relief to the extent he wants the district court to prevent the sale of his property for failure to pay property taxes levied by the Town of Whitecreek; declaratory relief to the extent he may be asking the district court to rule that the Town and its tax assessor and tax collector have violated his Fourteenth Amendment due process rights by denying him exemptions to which he is entitled and failing to reduce the assessment of his property; and money damages. (Dkt. No. 3 at 6–8, 13–14.) Federal courts are precluded from exercising jurisdiction over state and local tax assessments regardless of the type of relief sought. *Id.* As explained by the Second Circuit, "[w]hile it is the Tax Injunction Act that prevents federal courts from giving injunctive relief, or declaratory relief, as long as there is a plain, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court." *Long Island Lighting Co. v. Brookhaven ("LILCO"),* 889 F.2d 428, 431 (2d Cir.1989); *see also Fair Assessment in Real Estate Ass'n. v. McNary,* 454 U.S. 100, 113–14 (1981) (prohibition of § 1341 applies to actions for damages under § 1983 because an action for damages would be as intrusive as an equitable action, and for a plaintiff to recover damages, the court would have to find that the tax system violated some constitutional right, which would amount to an effective declaratory judgment regarding constitutionality of the tax).

Furthermore, it is well-settled that "the remedies available in New York state courts are sufficient to protect [a] plaintiff's rights." *Moore v. Trippe,* 743 F.Supp. 201, 210 (S.D.N.Y.1990). As explained in *Greenberg v. Town of Scarsdale,* No. 09 Civ. 2281(SCR)(PED), 2009 WL 7765836, at *4, 2009 U.S. Dist. LEXIS 130775, at *12 (S.D.N.Y. Oct. 16, 2009), *Report and Recommendation adopted at* 2011 WL 1118709, 2011 U.S. Dist. LEXIS 30776 (S.D.N.Y. Mar. 24, 2011), *aff'd,* 477 F. Appx. 849 (2d Cir.2012):

> **\*12** Under New York law, the normal method for challenging the validity of real property assessments is through the procedures in Article 7 of the Real Property Tax Law. New York law also provides a declaratory judgment procedure, as well as expedited review of official action through a [Civil Practice Laws and Rules] Article 78 proceeding. A claim alleging improper, selective treatment in the assessment of property taxes can also be raised in a § 1983 action in state court. (citations and internal quotation marks omitted).

*See also Sanzotta v. Williams,* No. 5:98–CV–0730 (RSP/DNH), 1998 WL 274848, at *2, 1998 U.S. Dist. LEXIS 7907, at *6 (N.D.N.Y. May 27, 1998) ("The Second Circuit has determined that New York provides taxpayers with several remedies affording them the opportunity to raise all constitutional challenges thereto, and that access to the federal courts [to raise these constitutional challenges] is therefore barred by the [Tax Injunction] Act and the principles of comity.") (citing *LILCO,* 889 F.2d at 431).

Because I find that the TIA deprives the District Court of subject matter jurisdiction over Plaintiff's property tax claims against the Town of Whitecreek and its tax assessor and tax collector—a problem that cannot be corrected by a better pleading—I recommend that the claims be dismissed with prejudice. [15]

[15]     Plaintiff has named the WCRPTS as a defendant, presumably with regard to his property tax claim. However, the Amended Complaint is devoid of factual allegations of wrongdoing by that defendant, and I therefore recommend dismissal of the Amended Complaint as against it without prejudice.

### C. Federal Claims Regarding the Town of Whitecreek and its Town Justice

Plaintiff claims that the Town Justice in the Town of Whitecreek is not able to perform his job any longer and, as a result, has prevented Plaintiff from evicting a non-paying tenant on a number of occasions, and has not handled the Harrington small claims court matter against Plaintiff properly, resulting in a finding in the Harrington's favor in the amount of $1,515.00. Plaintiff has not identified a constitutional claim with regard to the Town Justice matter but may intend to assert a claim under § 1983 for denial of due process under the Fourteenth Amendment.

With regard to the Town of Whitecreek, in order to establish municipal liability under § 1983, the plaintiff

must demonstrate that the alleged constitutional violation was caused by a municipal "policy or custom." *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 694 (1978). Plaintiff has not alleged facts plausibly showing that the Town Justice's continued presence on the bench resulted from a Town of Whitecreek policy or custom. In fact, under the N.Y. Constitution, art. 6, § 22, the State Commission on Judicial Conduct is the body empowered to "receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any judge or justice of the unified court system, in the manner provided by law; and ... [to] determine that a judge or justice be admonished, censured or removed from office for cause ... or that a judge or justice be retired for mental or physical disability preventing the proper performance of his judicial duties." N.Y. Const., art. 6, § 22(a); *see also* New York Judiciary Law § 44(1).

**\*13** In *Quinn v. State Commission on Judicial Conduct,* 446 N.Y.S.2d 3, 7 (1981), the New York Court of Appeals recognized that:

> ... the [New York State] Constitution expressly states that "the court of appeals may impose a less or more severe sanction prescribed by this section than the one determined by the commission, or impose no sanction" (N.Y. Const., art. VI, § 22, subd. d). *The implementing legislation of subdivision 7 of section 44 of the Judiciary Law then carefully reposes in this court alone the extraordinary power and sanction to remove or retire a judicial officer.* (emphasis added).

The Town of Whitecreek, having no authority to remove the Town Justice from the bench or compel his retirement, cannot be found liable for failing to do so. Moreover, "[i]t is well settled that judges are absolutely immune from suit for any judicial actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40 (W.D.N.Y.2004) (citing *Mireles v. Waco,* 502 U.S. 9, 10 (1991)); *see also Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994). Immunity extends only to actions performed by the judge in his or her official capacity. *DuQuin,* 320 F.Supp.2d at 41. Immunity applies no matter how erroneous an action might be and no matter how injurious the consequences taken to plaintiff. *Young,* 41 F.3d at 51.

There are no allegations suggesting that the Whitecreek Town Justice was acting outside the scope of his judicial responsibilities with respect to Plaintiff's eviction proceedings or the Harrington small claims matter. Therefore, the Town Justice is absolutely immune from the Plaintiff's claims against him.

Even if the Town Justice did not enjoy immunity, if he did enter judgment in the Harrington's favor in the small claims action, Plaintiff's claim would likely be barred under the *Rooker–Feldman* doctrine, which provides that "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature." [16] *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir.1995). Under the doctrine, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments" are barred from federal court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005).

[16]   *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) (United States Supreme Court alone can hear a direct appeal from a state court decision); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) (district court is without jurisdiction over a challenge to a state court judgment arising out of judicial proceedings even of the state court is alleged to have acted unconstitutionally).

Given the foregoing, and because the problems with Plaintiff's claims cannot be corrected by a better pleading, I recommend that Plaintiff's claims against the Town of Whitecreek and the Town Justice be dismissed with prejudice. [17]

[17]   Plaintiff has named as defendants the Town of Whitecreek Justice Court Clerk, Town of Whitecreek Supervisor Bob Shea, Town of Cambridge Justice Court, and Town of Cambridge Mayor, Valerie Reagan. Presumably Bob Shea has been named with respect to the Town of Whitecreek's failure to remove the Town Justice from the bench. The Town of Cambridge defendants have presumably been named because the Town of Whitecreek Justice is also the Town of Cambridge Justice and sent Plaintiff's wife to the Town of Cambridge to deal with paperwork for a Town of Whitecreek matter. However, the Amended Complaint is devoid of allegations suggesting wrongdoing of any kind against any of those defendants, and I recommend

2014 WL 1976669

dismissal of the Amended Complaint as against them without prejudice.

### D. Plaintiff's State Court Claims

Plaintiff has asserted numerous state law claims against various of the defendants. On his claim that his right to confidentiality of his medical records was violated in connection with the trailer litigation before Judge McGrath, Plaintiff claims Day and Burkly tortiously interfered with his right to do his own private personal business, violated state confidentiality/privacy laws, and libeled, slandered, and defamed him. (Dkt. No. 3 at 5.)

**\*14** Plaintiff has also alleged gross negligence and medical malpractice claims against Defendants Day and Granville Family Health for failure to provide sufficient medicines, minerals, and vitamins for his severe medical condition arising out of having his stomach and intestines removed. *Id.* at 5. On his property tax dispute claim, Plaintiff has asserted state claims for invasion of privacy, filing false affidavits, and libel, slander and defamation against Burkly. *Id.* at 8. He has also alleged negligence claims against the Town of Whitecreek for incompetence, improper computation of taxes, and failure to deduct damage depreciation from taxes in connection with his property tax claim. *Id.* at 8.

On his Town of Whitecreek Town Justice claim, Plaintiff claims that the Town has negligently failed in its responsibility to remove the Town Justice from office on the grounds that he is no longer capable of properly performing his duties. *Id.* at 8, 12. Plaintiff has also asserted a negligence claim against Amber Marriot for using an expired notary stamp, and a general claim against Burkly for running a smear campaign against him.[18] *Id.* at 13.

[18]   It is unclear whether Plaintiff intended to name the Glens Fall National Bank Corp. as a defendant independent of Amber Marriot. It is clear, however, that the Amended Complaint (Dkt. No. 3) is devoid of allegations of wrongdoing by the Bank, and I recommend that if Plaintiff did intend to name the Bank, the Amended Complaint be dismissed as against it.

Inasmuch as I have recommended that all of Plaintiff's federal claims be dismissed, with leave to amend as to certain defendants and only one of the claims asserted in the Amended Complaint, I also recommend that the district court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to re-filing in state court and subject to reconsideration in the event Plaintiff files a second amended complaint. *See* *Kolari v. New York Presbyterian Hosp.,* 455 F.3d 118, 120 (2d Cir.2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**ACCORDINGLY,** it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** and it is

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 3) be dismissed in its entirety as follows:

1. Plaintiff's federal claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as follows:

   a.  Plaintiff's HIPAA and ADA claims against Defendants Day and Burkly be dismissed with prejudice;

   b.  Plaintiff's § 1983 claim for violation of his right to privacy with regard to his medical records under the Fourteenth Amendment against Defendants Day and Burkly be dismissed without prejudice and with leave to amend in the event Plaintiff is able to allege facts plausibly showing that Day and Burkly were acting under color of state law;

   c. Plaintiff's § 1983 claim for violation of his Fourteenth Amendment right to due process with regard to his Town of Whitecreek real property tax claim against the Town of Whitecreek and its tax assessor and tax collector be dismissed with prejudice as barred under the Tax Injunction Act, 28 U.S.C. § 134;

   **\*15**  d. Plaintiff's § 1983 claim for violation of his Fourteenth Amendment right to due process with respect to the Town of Whitecreek's failure to remove the Town Justice from office and the Town Justice's errors in handling matters before him involving Plaintiff be dismissed with prejudice;

2. The Amended Complaint be dismissed for failure to state a claim as against Defendants Washington County Real Property Tax Services, Town of Whitecreek

Justice Court Clerk, Town of Whitecreek Supervisor Bob Shea, Town of Cambridge Justice Court, and Town of Cambridge Mayor Valerie Reagan, Glens Falls Hospital, and Glens Falls National Bank Corp, without prejudice and with leave to amend; and

3. The Court exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to re-filing in state court and subject to reconsideration in the event Plaintiff files a second amended complaint; and it is hereby

**ORDERED** that in the event Plaintiff files a second amended complaint, that he file with it an amended application to proceed *in forma pauperis* that includes complete disclosure with regard to each request for information; and it is further

**ORDERED** that any amended complaint filed in this action include factual allegations describing the role of each named defendant sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and the amended complaint should be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon or incorporate by reference pleadings previously filed in this action; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. *Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.*

Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve on Plaintiff a copy of this Order and ReportRecommendation, along with a copy of the unpublished decisions in *Smith ex. rel. Bey v. Kelly,* No. 12–CV–2319, 2012 WL 1898944 (E.D.N.Y. May 24, 2012), *Rosado v. Herard,* No. 12 Civ. 8943(PGG)(FM), 2013 WL 6170631 S.D.N.Y. Nov. 25, 2013); *Mascetti v. Zozulin,* No. 3:09 Civ. 963(PCD), 2010 WL 1644572 (D.Conn. Apr. 20, 2010); *Cassidy v. Nicolo,* No. 03 Civ. 6603(CJS), 2005 WL 3334523 (W.D.N.Y. Dec. 7, 2005); *O'Neil v. Bebee,* No. 5:09–CV–1133 (GTS/DEP), 2010 WL 502948 (N.D.N.Y. Feb. 10, 2010); *Greenberg v. Town of Scarsdale,* No. 09 Civ. 2282(SCR)(PED), 2009 WL 7765836 (S.D.N.Y. Oct. 16, 2009); and *Sanzotta v. Williams,* No. 5:98–CV–0730 (RSP/DNH), 1998 WL 274848 (N.D.N.Y. May 27, 1998).

**\*16** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Filed April 21, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1976669

---

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 3334523
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

John P. CASSIDY, Plaintiff,
v.
Mark NICOLO, Larry Baker,
Dr. Gonzalez, Defendants.

No. 03-CV-6603-CJS.
|
Dec. 7, 2005.

**Attorneys and Law Firms**

John P. Cassidy, Elmira, NY, for plaintiff, pro se.

Robert T. DiGuilio, Karen M. Modzel, Osborn, Reed &
Burke, L.L.P., Rochester, NY, for defendant Larry Baker.

Bryan J. Maggs, Davidson & O'Mara, P.C., Elmira, NY,
for defendant Mark Nicolo.

Thomas B. Cronmiller, Hiscock & Barclay LLP,
Rochester, NY, for defendant Dr. Gonzalez.

DECISION AND ORDER

SIRAGUSA, J.

INTRODUCTION

**\*1** This is a civil rights case brought by John P. Cassidy,
*pro se,* a former inmate at the Chemung County Jail,
in Elmira, New York. Plaintiff alleges that defendants
violated his civil rights when they disclosed confidential
medical information by marking his meal trays. Each
defendant has brought a separate motion for summary
judgment, and, despite having been provided with two
*Irby* [1] notices, and a motion scheduling order setting
November 14, 2005, as the response date, plaintiff has
failed to file any responsive papers. He also failed to
appear on the date scheduled for oral argument. For the
reasons stated below, each defendant's motion is granted
and this case is dismissed.

[1]     See *Irby v. New York City Transit Authority,* 262 F.3d
        412 (2d Cir.2001).

BACKGROUND

Plaintiff filed an amended complaint alleging essentially
two distinct causes of action. In a Decision and Order
(# 7) entered on October 7, 2004, plaintiff's cause of
action sounding in medical malpractice was dismissed by
the Court pursuant to 28 U.S.C. § 1915A and *Estelle v.
Gamble,* 429 U.S. 97, 105-06 (1976). His remaining cause
of action, alleging that his medical condition was revealed
when someone at the jail wrote the condition on the meal
trays, was allowed to go forward.

Plaintiff was sent two *Irby* notices. Each notice stated as
follows:

  RULE 56 MOTIONS FOR SUMMARY
  JUDGMENT *IRBY* NOTICE (See *Irby v. New York
  City Transit Authority,* 262 F.3d 412 (2d Cir.2001))

  A party in your lawsuit has filed a motion for summary
  judgment pursuant to Rule 56 of the Federal Rules of
  Civil Procedure, which means that summary judgment
  will be granted if the Court finds that there is no genuine
  issue as to any material fact and that the moving party
  is entitled to judgment as a matter of law. Fed.R.Civ.P.
  56(c).

  Failure to Respond to A Motion For Summary
  Judgment May Result in The Grant of Judgment in
  Favor of The Party Seeking Summary Judgment and
  The Dismissal of All or Part of The Case.

  *Opposing Affidavits and Exhibits*

  Therefore, if the motion seeks summary judgment
  against you, you MUST submit opposing papers in the
  form of one or more affidavits (or affirmations) made
  upon the personal knowledge of the person signing each
  affidavit. Each affidavit must set forth admissible facts
  and must show that the person submitting that affidavit
  is competent to testify as to the matters stated therein
  (because he or she has personal knowledge of the facts
  set forth in the affidavit). If you wish to submit exhibits
  in opposition to the motion, you may attach to the
  affidavit (or submit separately) sworn or certified copies

or all papers or parts thereof which are referred to in an affidavit.

### Statement of Material Facts Requiring a Trial

If the motion seeks summary judgment against you, you MUST also submit a *separate,* short, and concise statement of the material facts as to which you contend there exists a genuine issue which must be tried. See Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). Note that all of the material facts which have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is no genuine issue to be tried) *will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue presenting a genuine issue requiring a trial.*

### Memorandum of Law

**\*2** If the motion seeks summary judgment against you, you MUST also submit a *separate* answering memorandum of law, Local Rule 7.1(e), which may not exceed 25 pages in length without prior approval of the Court, Local Rule 7.1(f). Failure to comply may result in the motion being decided against the noncomplying party.

NOTE: If you are the party bringing the summary judgment motion, you may file reply papers ONLY if you state on the notice of motion that you wish to do so and/or if the court order scheduling the motion gives you the opportunity for doing so. See Local Rules of Civil Procedure Rule 7.1(c).

(*Irby* Notice (48 & 51) (emphasis in original).) As previously indicated, plaintiff has not submitted any responsive papers for any of the three motions, or statements of fact, filed by defendants. "When a party has moved for summary judgment on the basis of asserted facts supported as required by Fed.R.Civ.P. 56(e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2nd Cir.1992).

Such is the case here, and the facts asserted by all three defendants are deemed admitted.

Plaintiff was an inmate at the Chemung County Jail in Elmira, New York, from August 28, 2003 until November 14, 2003. On October 2, 2003, he filed a jail grievance alleging that he received a foam [2] food container marked "Hepatic" which should have been marked "Hi-Pro." (Cassidy EBT at 41.) The jail denied the grievance on the basis that the term "Hepatic" did not disclose any private medical information. Plaintiff's appeal was denied by the New York State Commission of Corrections.

[2]    Defendants use the term "Styrofoam" in their submissions. The Court is familiar with that term from a previous case, and its research indicates that "Styrofoam" is a trademarked name owned by the Dow Chemical Company. Further, according to Dow, Styrofoam "includes a variety of building materials (including insulated sheathing and housewrap), pipe insulation and floral and craft products. But there isn't a coffee cup, cooler or packaging material in the world made from STYROFOAM. These common disposable items are typically white in color and are made of expanded polystyrene beads....In order to protect the Dow trademarked name 'STYROFOAM.' such other material should be referred to by the generic term 'foam.' ' The Dow Chemical Comnpany, *What Is Styrofoam?* (2005) http:// www.dow.com/styrofoam/what.htm.

Defendant Larry Baker ("Baker") is the Food Service Director for Aladdin Food and Management Services, LLC ("Aladdin"). Aladdin contracted with the County of Chemung to provide meals and food service supplies to the Chemung County Jail. Aladdin labels the food containers it sends to the jail in accordance with a list of special meals it receives from the jail. Aladdin does not know the names of those receiving any special meals, or the inmates' underlying health conditions, or the contents of their medical records. Previously, when Aladdin received a request to provide a hepatic meal, it labeled the container in which that meal was delivered, "Hepatic." After being contacted by Chemung County Jail staff and alerted that a prisoner was bothered with the label "Hepatic," Aladdin changed the label to "High Protein" or "Hi-Pro."

Defendant Mark Nicolo ("Nicolo") is a Licensed Practical Nurse ("LPN") and was employed by the Chemung County Jail as a jail nurse from October 1998 until December 2003. Upon entering the jail, plaintiff disclosed

2005 WL 3334523

he suffered from two specific liver ailments, so Dr. Schenone [3] ordered that plaintiff receive, *inter alia,* a special hepatic diet. The term "hepatic" means "of the liver," but does not in itself connote any specific medical condition. To carry out this order, Nicolo added this diet to a list of special diets, which included diabetic, low sodium, low carbohydrate, vegetarian, and others, along with hepatic. Nicolo gave the list of special diets to defendant Baker, but did not include any personally-identifiable information on the special meal list. Further, Nicolo provided to corrections officers on each cell block a list of inmates who were to receive special meals to ensure that the right meal got to the right inmate. That list did not contain any private medical information.

[3]   Defendant Nicolo's Statement of Facts does not further identify the doctor by a first name or explain his relationship, if any, to the Chemung County Jail. Defendant Gonzalez's Statement of Facts reveals that Dr. Schenone is a jail employee.

**\*3** Defendant Adrian M. Gonzalez ("Gonzalez") is a Physician's Assistant, not a medical doctor, who worked part-time at the Chemung County Jail. He never held a supervisory position at the jail. Moreover, Gonzalez did not order plaintiff to be placed on a hepatic diet. That was ordered by Dr. Schenone.

Plaintiff alleges that he suffered psychological harm from embarrassment, ridicule, and "looks" from other inmates. However, he acknowledges that the alleged disclosure of his medical condition did not cause him to suffer any physical injury, nor did it cause him to suffer any diagnosed psychological condition.

## STANDARDS OF LAW

*Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing

that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56 .11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir.2001); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3d Cir.1987) (*en banc* ). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U .S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993); *Anderson,* 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir.2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946 (3d Cir.1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."

*Hayes v. New York City, Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996). The Court is also aware of the Second Circuit's admonishment that "the pleadings of a pro se plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they could suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

### Civil Rights Claims Under 42 U.S.C. § 1983

**\*4** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993). "Before § 1983 damages are awarded, a plaintiff must show by a preponderance of the evidence that the defendant was personally involved-that is, he directly participated-in the alleged constitutional deprivations." *Gronowski v. Spencer,* 424 F.3d 285, 293 (2d Cir.2005).

### Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982)). "Government actors performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 420 (quoting *Harlow,* 457 U.S. at 818). The Second Circuit further stated that, "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Id.* The Court of Appeals also stated that a defendant is entitled to qualified immunity when " 'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]'

to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Id.* at 420 (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)).

### DISCUSSION

Baker, as a private employee of a company that had a contract to provide meals to the jail inmates, was not an employee of Chemung County "acting under color of state law." Furthermore, the Court finds that Baker does not meet the requirements of the "close nexus" test, which would justify a finding that, as a private entity, he acted under color of state law. *See Turturro v. Continental Airlines,* 334 F.Supp.2d 383, 394 (S.D.N.Y.2004). With regard to the "close nexus" test, plaintiff points to no statute, rule, or command from jail staff requiring that the meals be marked in the manner that Aladdin chose to mark them. The evidence establishes only that Baker was required to prepare specific types of meals, which implies that when the meals were delivered to the jail, that the special ones had to be identified in some way to ensure their proper delivery. That Baker chose to mark the hepatic meals "Hepatic," does not, in itself, show that Baker was a state actor. Furthermore, marking a meal as hepatic could not be construed to violate plaintiff's medical privacy, since Baker had no information for whom the meal was being prepared, nor from what disease, if any, the eventual recipient of that meal suffered. *See Mercer v. Green Haven Correctional Facility,* No. 94 CIV. 6238(DLC), 1998 U.S. Dist. LEXIS 2108 \*16, 1998 WL 85734 (S.D.N.Y. Feb. 27, 1998) ("given the plaintiff's failure to submit evidence to support his claim that these two defendants actually possessed and improperly leaked confidential information, the Court need not address whether such actions, if proven, would constitute a violation of his rights under Section 1983.").

**\*5** Further, 42 U.S.C. § 1997e(e) states that, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Here, plaintiff has failed to present any evidence that he suffered physical injury in relation to the emotional injuries he claims resulted from the labeling. Thus, his lawsuit against Baker for the alleged privacy violation is barred.

Turning to the specific claims asserted against the remaining two defendants, the limitation in 42 U.S.C. § 1997e(e), discussed above, by its plain language, also applies to both Nicolo and Gonzalez. The lawsuit, therefore, cannot go forward in the absence of any physical injury to plaintiff. Further, plaintiff brought one grievance for one instance of marking his foam container, and upon plaintiff's request, the label was changed to "Hi-pro." There is no evidence before the Court that subsequent labels violated plaintiff's civil rights, or that plaintiff exhausted his administrative remedies with regard to any other allegedly offensive labels. Moreover, no evidence shows that either Nicolo or Gonzalez had any personal involvement in the marking of plaintiff's foam meal containers. Additionally, the undisputed facts before the Court on this motion show that the first label, "Hepatic," does not itself reveal any confidential medical information.

Additionally, any claim that defendants' actions violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") would require a finding that the statute authorizes a private right of action, an argument which has been consistently rejected by other district courts:

See Wright v. Combined Ins. Co. of Am., 959 F.Supp. 356, 363 (N.D.Miss.1997) ("in HIPAA, the undersigned cannot find any manifest congressional intent to create a new federal cause of action"); Means v. Ind. Life & Accident Ins. Co., 963 F.Supp. 1131, 1135 (M.D.Ala.1997) ("the court finds no evidence of congressional intent to create a private right of action under the HIPAA"); Brock v. Provident Am. Ins. Co., 144 F.Supp.2d 652, 657 (N.D.Tex.2001); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F.Supp.2d 1176, 1180 (D.Wyo.2001). Furthermore, legal commentators appear to unanimously assume that there is no private right of action under HIPAA, including to enforce the "privacy rule" of § 1320d-6. See, e.g., A Craig Eddy, A Critical Analysis of

Health and Humans Services' Proposed Health Privacy Regulations in Light of the Health Insurance Privacy and Accountability Act of 1996, 9 Annals Health L. 1, 32 (2000); Francoise Gilbert, Emerging Issues in Global Aids Policy; Preserving Privacy, 25 Whittier L.Rev. 273, 289 (2003); Joy L. Pritts, Altered States: State Health Privacy Laws and the Impact of the Federal Health Privacy Rule, 2 Yale J. Health Pol'y L. & Ethics, 325, 343 (2002); Frederick Y. Yu, Medical Information Privacy under HIPAA: A Practical Guide, Colorado Lawyer, May 2003, at 22.

**\*6** Univ. of Colo. Hosp. Auth. v. Denver Publ. Co., 340 F.Supp.2d 1142, 1145 (D.Colo.2004). In the absence of any argument on plaintiff's behalf that HIPAA authorizes a private right of action, the Court declines to find one sue sponte.

Finally, the Court determines that both Nicoli and Gonzalez are entitled to qualified immunity. Plaintiff has cited to no law establishing a privacy right with regard to his specific liver ailments, or holding that writing "hepatic" on a meal delivered to an inmate with his specific liver condition is a constitutional violation. C.f. Powell v. Schriver, 175 F.3d 107, 100 (2d Cir.1999) ("Individuals who are infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition.").

CONCLUSION

Accordingly, defendants' motions (34, 41 & 49) for summary judgment are granted in their entirety and the case is dismissed.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3334523

---

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:18-cv-00631-MAD-TWD    Document 12    Filed 08/17/18    Page 75 of 126

2016 WL 9227665
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Justyn KROWICKI, and Allison Baum, Plaintiffs,

v.

Timothy SAYEMOUR,[1] Comm'r
of DSS/CPS, et al., Defendants.

6:16-CV-1186
|
Signed 10/05/2016

[1]    Plaintiffs have named "Timothy Sayemour" as the Commissioner of the Herkimer Department of Social Services. This individual's name is actually "Timothy Seymour," and the court will use the proper spelling of his name in the body of this Report-Recommendation.

**Attorneys and Law Firms**

JUSTYN KROWICKI, Plaintiff pro se.

ALLISON BAUM, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the court a complaint, filed on a form for civil rights actions pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiffs Justyn Krowicki and Allison Baum. (Dkt. Nos. 1-3).

**I. IFP Application**

Plaintiffs appear to be a couple.[2] Each plaintiff has completed his or her own form because they are separate plaintiffs for this action.[3] A review of the IFP applications shows that the plaintiffs are not able to afford to pay the filing fee. Thus, the court will assume for purposes of this Order and Report-Recommendation that, together, and separately, plaintiffs meet the financial criteria for IFP.

[2]    Plaintiffs live at the same address. However, it is unclear whether they are married. Their marital status does not affect any of the findings in this Order and Report-Recommendation.

[3]    It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself or herself. *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case.

In addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will

now turn to a consideration of the plaintiffs' complaint under the above standards.

## II. Complaint

**\*2** The plaintiffs' complaint is disjointed and vague, but the court will attempt to interpret it as liberally as possible to determine whether the complaint states any claims for relief. [4] See *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Plaintiffs allege that on November 20, 2015, their Fourth and Fourteenth Amendment rights were violated when an "out of county CPS" [5] came to the hospital, without a warrant, six hours after their son was born, and asked plaintiffs to "sign [their] rights to County with honestly no reason." (Complaint ("Compl.") ¶ 4) (Dkt. No. 1).

[4]    This is made more difficult because most of plaintiffs' sentences run together, and it is unclear who the writer of the complaint is. Sometimes it appears that Allison is writing, while other times it appears that Justyn could be the author of the complaint.

[5]    The court assumes that plaintiffs are referring to Child Protective Services ("CPS").

Plaintiffs state that they said "no," so the hospital "placed [their] son on hold," and plaintiffs could not take him out of the hospital. (*Id.*) On November 23, 2015, the "HCDSS" [6] filed for "Immediate Removal" of plaintiffs' son. Plaintiffs state that "while still in the hospital," one of them got a telephone call, informing the couple that they had to be in court in forty-five minutes in Herkimer, while they were still in Cooperstown. One of their stepfathers "rushed up there," but plaintiffs state that they were not properly served for the court date, and claim that this was "illegal." (*Id.*) Then plaintiffs state that they had a court date on November 24, 2015, and their child was placed in foster care overnight. (*Id.*)

[6]    The court assumes that plaintiffs are referring to Herkimer County Department of Social Services ("HCDSS").

Plaintiffs then state that on November 25, 2015, "they" tried to say that Allison did not have custody of her oldest son, but plaintiffs have "joint custody" with the son's father, although he has "physical custody." Plaintiffs claim that "they" tried to "use that" as their "basis," but

then kept "changing their reasons for taking the child. [7] Plaintiffs also state that "they" would not have known anything "if they didn't break HIPPA [sic]." [8]

[7]    In liberally interpreting the complaint, the court reads these sentences as alleging that, either the caseworkers or the court used plaintiff Baum's alleged loss of custody of her older son as the "basis" for removal of the new baby, but that the basis for removal "kept changing."

[8]    The court assumes that plaintiffs are referring to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6.

In their "Causes of Action," plaintiffs allege that HCDSS and CPS "medically kidnapped" their son "under false allegations." (Compl. ¶ 5). "They" violated HIPAA and falsified information about a "sealed file," discriminating against plaintiffs because they were "bipolar," a condition for which they had always been treated. Plaintiffs claim that the "psychiatric" doctor wrote a note "for our worker and nurses," stating that the child could go home with them, but the note was not "there." Plaintiffs also state that CPS did not have a warrant, and that an "out of county CPS" came to the hospital because "Herkimer didn't want to." Finally, plaintiffs allege that Justyn is now "dealing with hypertension" due to "those events," and that plaintiffs wish to raise a claim of "emotional distress." (*Id.*) Plaintiffs ask that defendants "pay for these damages and mistakes," and that their child "gets returned ... to us safely." (*Id.*)

## III. Respondeat Superior/Personal Involvement

### A. Legal Standards

**\*3** Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also

exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft. See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

**B. Application**

Plaintiffs have sued Timothy Seymour, the Commissioner of the Herkimer Department of Social Services; Jackie Asnoe;[9] Collette Fredricks, CPS Worker; and Kathy Lyndecker, Case Worker. (Compl. at 1). None of the defendants are mentioned by name anywhere in the body of the complaint, and it is unclear what part each defendant played in the conduct alleged by the plaintiffs. Plaintiffs must be specific in their allegations against defendants in a civil rights action. Conclusory allegations are insufficient to state a claim under *section 1983*. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

[9]    Plaintiffs do not list an "official position" for Ms. Asnoe. On the complaint, her address is listed as the same as Commissioner Seymour's address. An internet search indicates that Ms. Asnoe may be an attorney.

In addition, Timothy Seymour is the Commissioner of the HCDSS, and it is also unclear what personal involvement he would have had in plaintiffs' case. As stated above, in order for a supervisory official to be "personally involved" in an alleged constitutional violation, that individual would have to have actually "participated" in the alleged infraction, would have to have failed to remedy the situation after having become aware of the constitutional violation through a report or appeal, or would have to have created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or would have to have been grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams*, *supra.*

**\*4** Plaintiffs have not alleged the personal involvement of Commissioner Seymour or any of the other defendants.[10] To the extent that plaintiffs seek damages against any of the defendants, this case must be dismissed. The complaint may also be dismissed for alternative reasons, discussed below.

[10]    To the extent that plaintiffs wish to sue Commissioner Seymour in his "official capacity," they would be suing Herkimer County. A *section 1983* action against municipal officers in their official capacities is treated as an action against the municipality itself. *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)). The municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under *Section 1983*. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id. at 694*. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). In this case, plaintiffs have not asserted any of the bases for municipal liability, and the complaint may be dismissed as against Commissioner Seymour in his official capacity.

**IV. HIPAA**

**A. Legal Standards**

"Courts have overwhelmingly concluded that there is no private right of action under HIPAA." *Coon v. Burkly*, No. 1:13-CV-1306, 2014 WL 1976669, at *8 (N.D.N.Y. May 15, 2014) (citing *Wilkerson v. Shinseki*, 606 F.3d

1256, 1267 n. 4 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *Rosado v. Herard*, No. 12 Civ. 8943(PGG) (FM), 2013 WL 6170631, at *3, 2013 (S.D.N.Y. Nov. 25, 2013), *report and rec. adopted in part and modified in part on other grounds*, 2014 WL 1303513 (S.D.N.Y. Mar. 24, 2014); *Mascetti v. Zozulin*, No. 3:09 Civ. 963(PCD), 2010 WL 1644572, at *4 (D. Conn. Apr. 20, 2010); *Cassidy v. Nicolo*, No. 03 Civ. 6603(CJS), 2005 WL 3334523, at *5 (W.D.N.Y. Dec. 7, 2005) (collecting cases)). Enforcement of HIPAA is reserved exclusively to the Secretary of Heath and Human Services. *Rzayeva v. United States*, 492 F. Supp. 2d 60, 83 (D. Conn. 2007).

### B. Application

Plaintiff alleges that the defendants "broke" HIPAA. However, it is clear that plaintiff may not bring an action based upon alleged HIPAA violations, regardless of who, or what entity, plaintiff names. Any claims based upon HIPAA may be dismissed with prejudice.

## V. Rooker-Feldman

### A. Legal Standards

A challenge under the *Rooker Feldman* doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

**\*5** The doctrine also bars the federal court from considering claims, whether or not raised in state court, that assert injury based on a state judgment and seek review and reversal of that judgment. *Hensel v. City of Utica*, 6:15-CV-374 (LEK/TWD), 2016 WL 1069673, at *4 (N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Such claims are "inextricably intertwined" with the prior state court determination. *Id.*

As applied in this circuit, four prerequisites must be met for the *Rooker Feldman* doctrine to apply: (1) the federal court plaintiff lost in state court; (2) plaintiff complains of injuries flowing from the state court judgment; (3) the action invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered prior to commencement of the federal court proceedings. *Hoblock*, 422 F.3d at 85.

### B. Application

The application of *Rooker Feldman* can be a complicated issue because the question of whether a plaintiff is complaining of injuries "flowing" from the state court judgment may be difficult to determine. In addition, it must be clear that the plaintiff lost in state court. *See Green v. Mattingly*, 585 F.3d 97, 102-103 (2d Cir. 2009) In *Green*, the Second Circuit reversed the district court's application of *Rooker Feldman* when the state court did not enter a final order, permanently removing the plaintiff's child from her custody, declining to find that plaintiff "lost" in state court. However, the court in *Green* held that "the situation would have been different if the Family Court had entered a final order of disposition, ... and plaintiff had brought this action seeking the return of her child." *Id.* at 103. *See also Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 540-44 (E.D.N.Y. 2013) (discussing the difference between challenging a final order issued by the state court and a situation in which the plaintiff is challenging procedures utilized prior to the state court order and does not "invite district court review and rejection of a state court judgment").

In this case, plaintiffs potentially allege due process violations from before the state court judgment and as a result of the judgment. [11] Although plaintiffs do appear to seek the return of their child in addition to damages, indicating that they are attempting to overturn the court's judgment, the outcome of the state court action is unclear, and thus, I will not recommend dismissal based on *Rooker Feldman* at this time. [12] *See also P.A. v. City of New York*, 44 F. Supp. 3d 287, 297-98 (E.D.N.Y. 2014) (declining to apply *Rooker Feldman* where family court proceedings never reached a final outcome that would be appealable in state court).

[11]    If the state court action were still pending, this court would also consider whether it lacked jurisdiction under the abstention doctrine pursuant to *Younger*

*v. Harris*, 401 U.S. 37, 43-45 (1971). Pursuant to *Younger*, the District Court is without jurisdiction under the abstention doctrine if there is an ongoing state proceeding; where an important state interest is implicated; and the plaintiff has an avenue open for review of constitutional claims in state court. *See Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra*; *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997)). The *Younger* doctrine originally applied only to criminal proceedings, but is now applicable to civil actions as well, including state administrative proceedings. *Id.* (citations omitted). The doctrine also applies to claims for declaratory and injunctive relief. *Id.* In this case, if the state court action were still pending, the above factors would dictate that the court abstain from consideration of plaintiff's issues. There is no indication that plaintiffs do not have an avenue for consideration of their custody issues in state court.

12    If plaintiffs are able to amend their complaint to allege more specific facts against the individual defendants, the court might be able to discern whether they are challenging only the final decision of the state court if one exists or whether they are alleging only due process violations that occurred when the baby was first taken from them into temporary custody. As the complaint is written, plaintiffs seem to be challenging the state court's decision or the perhaps the arguments made by the CPS workers at the court appearance. Plaintiffs allege that some of the statements they made were false, and that "they" kept changing the reason for taking the child in addition to the "illegal seizure" and "medical kidnapping" of the baby.

## VI. Due Process

### A. Legal Standards

**\*6** Parents' interest in the custody of their child is a constitutionally protected liberty interest, subject to due process protection. *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-104 (2d Cir. 1999) (citing inter alia *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992)); *Schweitzer*, 935 F. Supp. 2d at 545-46. As a general rule, before parents may be deprived of the care, custody, or management of their children without their consent, due process ordinarily requires a court proceeding resulting in an order permitting removal. *Schweitzer*, 935 F. Supp. 2d at 545 (quoting *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012)) (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003), *reh'g en banc denied*, 681

F.3d 122 (2012), *cert. denied*, 569 U.S. ——, 133 S. Ct. 980 (2013)).

In emergency situations, the child may be taken into custody " 'by a responsible state official without court authorization or parental consent.' " *Id.* (citations omitted). Standards exist which must be followed in determining whether "emergency circumstances" existed at the time of removal. *Id. at 546* (the government must offer objectively reasonable evidence that harm to the child was imminent; N.Y. Fam. Ct. Act § 1024(a) (defining emergency circumstances). Procedural due process protects the procedure by which a removal is effected, while a substantive due process claim challenges the "fact" of the removal. *Id. at 548-49* (discussing substantive due process).

### B. Application

Plaintiffs allege that their due process rights were violated when their son was taken from them, but it is unclear what the due process violation was, and which defendant was responsible. Plaintiffs must identify which defendant was responsible for the alleged due process violation, and plaintiffs must identify the due process violation that they are attempting to raise. If they are able to do so, the plaintiffs could conceivably state a claim, although they have not done so based on the facts that they have stated in the existing complaint.

Plaintiffs concede that they were afforded a hearing on the custody issue. They claim that there was no warrant to seize their son, but no indication of which defendant might have been responsible for the seizure. Plaintiffs also allege that "out-of-county" CPS came to the hospital. Such conduct was logical because plaintiffs state that they were in a Cooperstown hospital. Cooperstown is in Otsego County, while plaintiffs reside in Herkimer County. Thus, if plaintiffs choose to amend their complaint, they must specify the conduct they believe rose to the level of a due process violation.

## VII. Unlawful Seizure

### A. Legal Standards

When a child is taken into custody, "his or her person" is seized for Fourth Amendment purposes. *Schweitzer*, 935 F. Supp. 2d at 550 (citing inter alia *Southerland*, 680 F.3d at 143). Even a temporary removal may constitute

a "seizure" for purposes of the Fourth Amendment. *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010). However, the child must assert the claim for the unlawful seizure. *Id.* Parents do not have Fourth Amendment rights as to the child's removal, and may bring claims only on their child's behalf. *Id.* (citing *Tenenbaum v. Williams*, 193 F.3d 561, 601 n.13 (2d Cir. 1999)).

### B. Application

The plaintiffs' child is not a plaintiff in this action. Additionally, the plaintiffs are pro se and may not represent the interests of their son, whatever those interests are. As stated above, a person who has not been admitted to practice law may not represent anyone other than himself. *Lattanzio v. COMTA*, 481 F.3d at 139-40; 28 U.S.C. § 1654. Thus, pro se plaintiffs may not represent their minor child. *Armatas v. Maroulleti*, 484 Fed.Appx. 576, 577 (2d Cir. 2012); *Tindall v. Poultney High School Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). The court will proceed to consider the complaint as it applies only to plaintiffs' own claims. Any claims based on the Fourth Amendment may be dismissed with prejudice unless plaintiffs obtain counsel for themselves, [13] and/or their son.

[13]     Plaintiffs may continue to appear pro se on their own behalf.

### VIII. Americans with Disabilities Act ("ADA")/ Rehabilitation Act ("RA")

#### A. Legal Standards

**\*7** Under Title II of the ADA, the plaintiffs must establish that they (1) are qualified individuals with a disability(ies); (2) the defendant is subject to the ADA; and (3) plaintiffs were denied the opportunity to either participate in, or to benefit from the defendants' services, programs, or activities or were otherwise discriminated against because of plaintiffs' disabilities. *United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). In order to state a claim under section 504 of the Rehabilitation Act, the plaintiffs must show that they (1) have a disability for purposes of the Act; (2) that they were "otherwise qualified" for a benefit that they were denied; (3) that they were denied the benefit solely because of their disabilities;

and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc.* 246 F.R.D. 432, 440 (S.D.N.Y. 2007).

#### B. Application

In this case, plaintiffs state that they were subject to discrimination because "they" are bipolar, and that a doctor wrote a note that should be in their "file," stating that the baby could come home with them. Once again, plaintiffs claim is conclusory. Consideration of a mental disability "standing alone," is not a violation of the ADA or the RA in the context of child custody. *Schweitzer*, 935 F. Supp. 2d at 553 (citing *Ward v. Murphy*, 330 F. Supp. 2d 83, 98-99 (D. Conn. 2004)) (holding that consideration of a parent's mental disability in determining whether child should remain in his house was not a violation of the ADA). Without more, plaintiffs have not stated that the decision to remove the baby was "impermissibly based" on the couple's disability. Plaintiffs, therefore, do not state a claim under the ADA or RA. [14]

[14]     The court must note that plaintiffs did not raise such a claim, but the court has interpreted plaintiffs' complaint to raise the strongest arguments it suggests, and the ADA and RA have been utilized in this context in other court actions. *See Schweitzer, supra.*

### IX. Opportunity to Amend

#### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

#### B. Application

In this case, plaintiffs have failed to state a claim, primarily because they have failed to allege any wrong doing by the individual defendants, and they have set forth only conclusory facts that do not properly state due process or any other constitutional claims. However, the court finds that plaintiffs should be given an opportunity to amend

their complaint in an attempt to cure the deficiencies discussed above.[15] Thus, if the court approves this Recommendation, plaintiffs should be given forty-five (45) days from the date of the district court's order within which to file a proposed amended complaint for the court's review.

[15]    This does not apply to the HIPAA claim because there is no amendment which will allow plaintiffs to bring a cause of action based upon HIPPA. This also does not apply to the Fourth Amendment claim because such a claim is personal to plaintiffs' child, who cannot appear without counsel.

If plaintiffs file an amended complaint, the court may return it to me for substantive review. If plaintiffs fail to file a proposed amended complaint within the assigned time or fail to ask for an extension of time to do so, this court then recommends dismissal of the entire action with prejudice.

**\*8  WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' applications to proceed IFP (Dkt. Nos. 2, 3) are **GRANTED FOR PURPOSES OF FILING**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE** as to any HIPAA claims and as to any Fourth Amendment claims brought by the current plaintiffs, and it is

**RECOMMENDED**, that the remainder of the complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) (ii), and it is

**RECOMMENDED**, that if the District Court approves this recommendation, the court afford plaintiffs forty-five (45) days from the date of its order within which to file a proposed amended complaint for the court's review or ask for a reasonable extension of time to do so, and it is

**RECOMMENDED**, that if plaintiffs fail to file a proposed amended complaint by the assigned date or by any date extended by the court, the case be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that if plaintiffs file a proposed amended complaint, the court send it back to me for my review, and it is

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiffs.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2016 WL 9227665

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 856283
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Pamela CARVEL, Plaintiff,

v.

Leonard ROSS, Ross & Matza, Eve Markewich,
Markewich & Rosenstock, Blank Rome,
Frank Streng, McCarthy Fingar, Joel
Arnou, Anthony Scarpino, John/Jane
Doe 1–20, Doe Co. 1–20, Defendants.

No. 09 Civ. 0722(LAK)(JCF).
|
Feb. 16, 2011.

*REPORT AND RECOMMENDATION*

JAMES C. FRANCIS IV, United States Magistrate
Judge.

**\*1** TO THE HONORABLE LEWIS A. KAPLAN,
U.S.D.J.:

Pamela Carvel brings this action against four attorneys,
their current and former firms, and the Westchester
County Surrogate, alleging that they acted, both alone
and in concert, to violate her constitutional rights and
deprive her of monies that she is owed. Ms. Carvel
seeks substantial monetary damages, along with costs,
attorneys' fees, and declaratory relief. Three separate
groups of defendants have filed motions to dismiss the
plaintiff's claims pursuant to Rules 8(a)(2), 9(b), 12(b)
(1), and 12(b)(6) of the Federal Rules of Civil Procedure.
For the reasons that follow, I recommend that these
motions be denied with respect to the plaintiff's claim for
breach of contract against Joel Aurnou, Frank Streng, and
McCarthy Fingar LLP; otherwise, I recommend that the
motions be granted and the remainder of the plaintiff's
claims be dismissed.

*Background*

This lawsuit is the latest sally in a long-fought battle
between Ms. Carvel and various other individuals and
entities for control of the assets left by Thomas Carvel,
the late ice cream magnate, and his wife, Agnes. For the
sake of brevity, I will summarize here only those facts
most relevant to the instant proceeding. A more detailed
history of Ms. Carvel's involvement with the estates of
Thomas and Agnes Carvel can be found in Judge Michael
H. Dolinger's Report and Recommendation of May 7,
2010, adopted in *Thomas and Agnes Carvel Foundation v.
Carvel*, —— F.Supp.2d ——, No. 09 Civ. 5083, 2010 WL
3303777 (S.D.N.Y. Aug. 20, 2010).

*A. Thomas and Agnes Carvel*

Pamela Carvel is the niece of Thomas and Agnes
Carvel. (Amended Complaint and Demand for Jury Trial
("Am.Compl."), ¶¶ 3, 45). In 1988, Thomas and Agnes
Carvel executed mirror-image wills along with a contract
binding the surviving spouse to place his or her assets in
trust for life, with the remainder to be left to the Thomas
and Agnes Carvel Foundation (the "Foundation"), a
charitable organization. (Approved Judgment of the High
Court of Justice, Chancery Division dated June 11, 2007
("6/11/07 Judgment"), attached as Exh. F to Affidavit of
Joseph J. Brophy dated Oct. 12, 2009 ("Brophy 10/12/09
Aff."), ¶ 4). Thomas Carvel died in 1990, and in April 1991
Agnes Carvel established the Agnes Carvel 1991 Trust
(the "1991 Trust"). (Am. Compl., ¶ 46; The Agnes Carvel
1991 Trust Agreement dated April 22, 1991 ("1991 Trust
Agreement"), attached as Exh. V to Affidavit of Leonard
M. Ross dated Sept. 27, 2010 ("Ross 9/27/10 Aff.")). The
1991 Trust had two enumerated purposes: first, to pay
Agnes Carvel an income for the remainder of her life; and
second, to pay for the "funeral expenses, debts and the
expenses of administering [Agnes Carvel's] estate" upon
her death. (1991 Trust Agreement at 1). The remainder of
the 1991 Trust was to be left either to the Foundation or
to another charitable organization chosen by its trustees.
(1991 Trust Agreement at 2).

**\*2** Following disputes over the proper disposal of
Thomas Carvel's estate, Agnes Carvel executed a new
will in 1995, naming the plaintiff, Pamela Carvel, as her
personal representative and leaving her residuary estate
to a Florida charitable foundation cofounded and led by
Ms. Carvel. (Last Will and Testament of Agnes Carvel
dated July 7, 1995 ("Agnes Carvel Will"), attached as
Exh. Q to Ross 9/27/10 Aff.; 6/11/07 Judgment, ¶ 6).
On August 4, 1998, Agnes Carvel died in the United
Kingdom. (Am.Compl., ¶ 71).

*B. The Ross Defendants*

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

The plaintiff first retained Leonard Ross, principal of the firm of Ross & Matza (collectively, the "Ross defendants"), in 1990 or 1991. (Am. Compl., ¶ 32; Supplemental Pleading for a More Definite Statement ("Supp.Pleading"), ¶ 14; Memorandum of Law of Leonard Ross and Ross & Matza in Support of Their Motion to Dismiss the Amended Complaint ("Ross Memo.") at 8). At that time, the Ross defendants represented Ms. Carvel in estate matters arising out of the death of Thomas Carvel. (Am. Compl., ¶ 32; Ross Memo. at 8). Ms. Carvel states that she later retained the Ross defendants to represent her, both individually and on Agnes Carvel's behalf, in charity fraud investigations and estate litigation. (Supp.Pleading, ¶¶ 14, 81, 82, 85, 87). The Ross defendants allege that their representation of the plaintiff terminated entirely in March of 1999, when Mr. Ross was appointed the New York ancillary administrator of Agnes Carvel's estate. (Ross Memo. at 10; Supplemental Memorandum of Law of Leonard Ross and Ross & Matza in Support of Their Motion to Dismiss the Amended Complaint and Supplemental Pleading for More Definite Statement at 4). However, Ms. Carvel claims that their representation continued in all matters through at least July of 2010, because "Ross and Ross & Matza never have withdrawn from representation, or given notice of the intention to withdraw." (Supp.Pleading, ¶ 17).

### C. *The Blank Rome Defendants*

Ms. Carvel claims to have retained the firm of Blank Rome LLP ("Blank Rome") to represent her on multiple matters in various locations over the past ten years, including "in Florida Trust litigation, Delaware trust litigation, New York estate and trust litigation, and New York charity fraud litigation." (Am.Compl., ¶ 34). With respect to the litigation that underlies this complaint—the adjudication of Agnes Carvel's estate in Westchester Surrogate's Court—the plaintiff states that she retained Eve Markewich, Peter Valente, and Herbert Bockstein of Blank Rome (together with Markewich and Rosenstock LLP, the "Blank Rome defendants") to "represent the ancillary administration" of Agnes Carvel's estate in New York. (Plaintiff Pamela Carvel's Request for Judicial Notice ("Carvel 1/7/11 Request"), ¶ 21; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. G to Declaration of Philip Touitou dated Nov. 24, 2009 ("Touitou 11/24/09 Decl."), at 1). However, the retainer letter signed by Ms. Carvel clearly states that Blank Rome was "retained by Leonard Ross" in his capacity as the New York ancillary administrator of Agnes Carvel's estate; another letter sent the same day to Mr. Ross by Mr. Camerik confirmed Blank Rome's representation of Mr. Ross alone. (Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. G to Touitou 11/24/09 Decl.). The letter retainer signed by the plaintiff did require her to "personally guarantee and agree to be personally liable for" Blank Rome's fees and costs in connection with its representation of Mr. Ross, and it further stated the Blank Rome defendants' intention to "dutifully apply to any appropriate Court to seek reimbursement to the Estate, you, or any other appropriate party, of the fees and costs we are paid." (Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request, at 1).

**\*3** Ms. Carvel notes that in February of 2005, Ms. Markewich published an article in the New York Law Journal entitled, "Getting Grounded in Ethical Dilemmas," in which she detailed "[t]he unethical, if not illegal, tactics used by Plaintiff's adversaries against" Agnes Carvel during the last years of her life. (Am. Compl., ¶ 73; Eve Rachel Markewich, "Getting Grounded On Ethical Dilemmas," NYLJ, Feb. 14, 2005, attached as part of Exh. D to Touitou 11/24/09 Decl.). Five months later, the plaintiff sent Ms. Markewich an angry letter, accusing her of acting against the interests of Agnes Carvel's estate and committing related ethical violations. (Letter of Pamela Carvel dated July 11, 2005, attached as Exh. S to Touitou 11/24/09 Decl.). Ms. Markewich responded by letter, defending her representation of the estate's interests and clarifying that Blank Rome was "retained to represent Leonard Ross, as Ancillary Administrator c.t.a. of the Estate of Agnes Carvel" not Ms. Carvel, and therefore that she was not obliged to proceed as Ms. Carvel directed. (Letter of Eve Rachel Markewich dated July 20, 2005, attached as Exh. H to Touitou 11/24/09 Decl.). When Ms. Markewich left Blank Rome in 2007 and established the firm of Markewich and Rosenstock LLP ("M & R"), Mr. Ross retained M & R to represent him in his capacity as the New York ancillary administrator of Agnes Carvel's estate. (Ross Memo. at 11; Retainer Agreement for Estate of Agnes Carvel dated April 18, 2007, attached as Exh. E to Affidavit of Leonard M. Ross dated Oct. 8, 2009 ("Ross 10/8/09 Aff.")). Ms. Carvel professes confusion regarding her relationship with M & R, stating that "[a]t

some unknown date, Markewich & Rosenstock appear to have acquired financial interest in and control over *Carvel* litigation from Blank Rome," thus establishing a relationship with Ms. Carvel. (Supp.Pleading, ¶ 23). Ms. Carvel maintains that Blank Rome continues to represent her and that none of the Blank Rome defendants ever withdrew from representation of her. (Supp.Pleading, ¶¶ 22, 24).

### D. *The McCarthy Fingar Defendants*

Ms. Carvel hired Joel Aurnou in 1999 or 2000 to seek reimbursement of legal fees she had advanced in connection with litigation related to Thomas and Agnes Carvel's estates. (Am. Compl ., ¶ 37; Supp. Pleading, ¶¶ 29–30). Shortly after she retained him, Mr. Aurnou affiliated with the firm of McCarthy Fingar LLP ("McCarthy Fingar"), which began representing Ms. Carvel in 2000. (Am. Compl., ¶ 38; Supp. Pleading, ¶ 25; Brophy 10/12/09 Aff., ¶ 9; Letter of Philip T. Temple dated Oct. 13, 2000, attached as Exh. F to Declaration of Philip Touitou dated Sept. 30, 2010 ("Touitou 9/30/10 Aff.")). McCarthy Fingar and Frank Streng (together with Joel Aurnou, collectively, the "McCarthy Fingar defendants"), one of its attorneys, represented Ms. Carvel in proceedings related to both Thomas and Agnes Carvel's estates in New York. (Supp.Pleading, ¶¶ 10(h), 182; Brophy 10/12/09 Aff., ¶ 9). The firm was awarded at least $900,000 in fees out of the estates for their work on these representations. (Decision dated June 30, 2003 ("6/30/03 Decision"), attached as Exh. L to Touitou 11/24/09 Decl., at 7; Order dated July 30, 2003 ("7/30/03 Order"), attached as Exh. M to Touitou 11/24/09 Decl., at 3; Decision dated Dec. 29, 2004 ("12/29/04 Decision"), attached as Exh. N to Touitou 11/24/09 Decl., at 4).

**\*4** On June 30, 2005, Ms. Carvel sent Mr. Streng a letter in which she accused him of acting against her interests and those of Agnes Carvel's estate. (Letter of Pamela Carvel dated June 30, 2005, attached as Exh. I to Affidavit of Joseph J. Brophy in Further Support of Motion to Dismiss and in Response to Supplemental Pleading dated Sept. 30, 2010 ("Brophy 9/30/10 Aff.")). She followed that with a second letter on July 15, 2005, in which she asserted that Mr. Streng had "acquired loyalty to others," including Ms. Markewich and Mr. Ross, at the expense of the interests of Agnes Carvel's estate and of Ms. Carvel as its executor; she also accused Mr. Streng of failing to seek reimbursement of monies advanced to him and to Blank Rome by Ms. Carvel for legal fees. (Letter of Pamela Carvel dated July 15, 2005, attached as Exh. J to Brophy 9/30/10 Aff.). Mr. Streng responded by letter on July 15, 2005, defending his and his firm's representation of Ms. Carvel and Agnes Carvel's estate, and terminating McCarthy Fingar's representation of Ms. Carvel in the proceedings related to Agnes Carvel's estate. (Letter of Frank W. Streng dated July 15, 2005, attached as Exh. K to Brophy 9/30/10 Aff .). In a decision dated March 3, 2006, Justice Anthony A. Scarpino, Jr., of Westchester County Surrogate's Court, granted Mr. Streng's motion to withdraw McCarthy Fingar as counsel to Ms. Carvel in the proceedings related to Thomas Carvel's estate. (Decision dated Dec. 6, 2005, attached as part of Exh. E to Brophy 10/12/09 Aff.; Order dated March 3, 2006, attached as part of Exh. E to Brophy 10/12/09 Aff.). Although the plaintiff admits that Mr. Streng and McCarthy Fingar withdrew from representation of her in proceedings related to Thomas Carvel's estate, she maintains that they did not withdraw from representation in proceedings related to Agnes Carvel's estate and so continued to have an attorney-client relationship with her through at least July of 2010. (Supp.Pleading, ¶ 28). Ms. Carvel also maintains that Joel Aurnou never withdrew from representation of her in any matter. (Supp.Pleading, ¶ 34).

### E. *Justice Anthony Scarpino*

Justice Scarpino has been the Surrogate of Westchester County since 2001 and has presided over proceedings related to both Thomas and Agnes Carvel's estates. (Am. Compl., ¶ 39; *see also, e.g.,* Decision and Order dated Dec. 24, 2001, attached as Exh. J to Toitou 11/24/09 Decl.; 6/30/03 Decision). He was named as a defendant in Ms. Carvel's original Complaint in this action, which was filed on January 26, 2009. (Complaint). On May 28, 2009, the Complaint was dismissed with respect to Justice Scarpino due to the plaintiff's failure to serve him or to show cause for her failure. (Order dated May 28, 2009). By subsequent order, the plaintiff was prohibited from serving Justice Scarpino with further process in this action. (Order dated Oct. 16, 2009). As a result, Justice Scarpino is no longer a defendant in this lawsuit and any claims asserted by Ms. Carvel against him should be dismissed with prejudice. [1]

---

[1]    Ms. Carvel's claims against Justice Scarpino should be barred in any case by the doctrine of absolute judicial immunity. *See Carvel v. New York,* 369 Fed. Appx. 269, 270 (2d Cir.2010).

### F. *Procedural History*

#### 1. *Westchester Surrogate's Court Proceedings*

**\*5** The allegations in this action focus primarily on proceedings conducted by Justice Scarpino during the administration of Agnes Carvel's estate in New York. Those proceedings began immediately following Agnes Carvel's death in 1998, when the Foundation filed suit in Westchester Surrogate's Court to enforce the reciprocal will contract signed by Thomas and Agnes Carvel. (6/11/07 Judgment, ¶ 9). A contest then ensued between the Foundation and Ms. Carvel, who had submitted Agnes Carvel's 1995 will for probate in the United Kingdom. (6/11/07 Judgment, ¶ 7). Following a trial, Juustice Scarpino invalidated the 1995 will as violative of the contract between Agnes and Thomas Carvel and named the Foundation as the proper remainder beneficiary of Agnes Carvel's estate. *In re The Thomas and Agnes Carvel Foundation,* 8 Misc.3d 1025(4), 806 N.Y.S.2d 449 (West.Sur.Ct.2002).

Significant legal fees were incurred by all parties involved in the Westchester Surrogate's Court proceedings. In October and December of 2001, Mr. Ross, Blank Rome, and representatives of the 1991 Trust and the Foundation entered into stipulations for the ongoing payment of administrative costs to Mr. Ross as the New York ancillary administrator of Agnes Carvel's estate and attorneys' fees to Blank Rome as Mr. Ross' attorney. (Transcript of Proceedings in Westchester County Surrogate's Court dated Oct. 23, 2001, attached as Exh. E to Carvel 1/7/11 Request, at 5–7; Stipulation dated Dec. 17, 2001 (the "2001 Stipulation"), attached as Exh. G to Touitou 9/30/10 Aff.). These payments were to be made out of the 1991 Trust, which was intended to cover the expenses of administering Agnes Carvel's estate, and were subject to the approval of the Foundation, the 1991 Trust's remainder beneficiary. (1991 Trust Agreement at 1, 2; 2001 Stipulation at 2–3).

In 2003, Justice Scarpino awarded McCarthy Fingar $400,000 in legal fees out of the 1991 Trust as payment for its representation of Ms. Carvel in proceedings related to Agnes Carvel's estate. (6/30/03 Decision at 7; 7/30/03 Order at 3). However, in 2004 Justice Scarpino denied an application made by Ms. Carvel for the advance payment of legal fees to her out of Agnes Carvel's New York ancillary estate so that Ms. Carvel could pursue litigation in Delaware on behalf of Agnes Carvel's United Kingdom

estate. (Decision dated June 30, 2004 ("6/30/04 Decision"), attached as Exh. F to Ross 10/8/09 Aff., at 1). Justice Scarpino found, among other reasons, that Ms. Carvel's request was premature due to a 2002 order in which he had frozen distribution of the New York ancillary estate's assets until its final settlement. (6/30/04 Decision at 3). That final settlement was made in 2010 following a second trial and significant motion practice. (Decision After Trial dated June 30, 2010 ("6/30/10 Decision"), attached as Exh. S to Ross 9/27/10 Aff., at 5, 17). Although Ms. Carvel had initially challenged Mr. Ross' final accounting and petitioned for the reimbursement of $167,270 in legal fees that she had advanced to Blank Rome on Mr. Ross' behalf, she later abandoned those claims by failing both to show up at the trial and to provide Mr. Ross with required documentation. (6/30/10 Decision at 5–6, 10–11).

#### 2. *The Instant Action*

**\*6** The complaint in this action was filed on January 26, 2009. Due to Ms. Carvel's failure to perfect service on Mr. Ross, Ms. Markewich, and Justice Scarpino, the action was dismissed as to those three defendants on May 28, 2009. (Order dated May 28, 2009). Ms. Carvel subsequently served all of the defendants except Justice Scarpino with an Amended Complaint, which she had filed on May 24, 2009. (Am. Compl.; Order dated Oct. 16, 2009). The Ross defendants, the Blank Rome defendants, and the McCarthy Fingar defendants each filed a motion to dismiss the Amended Complaint. (Notice of Motion dated Oct. 8, 2009; Notice of Motion dated Oct. 13, 2009; Notice of Motion dated Nov. 24, 2009). The defendants raised various defenses, including res judicata, lack of standing, and expiration of the statute of limitations, and they ask that the complaint to be dismissed pursuant to Rules 8(a)(2), 9(b), 12(b) (1), and 12(b)(6) of the Federal Rules of Civil Procedure. (Ross Memo. at 2; Memorandum of Law in Support of Defendants Eve Rachel Markewich, Blank Rome LLP and Markewich & Rosenstock LLP's Motion to Dismiss the Complaint ("Blank Rome Memo.") at i; Defendants' (McCarthy Fingar LLP, Frank Streng, and Joel Aurnou) Memorandum of Law in Support of Motion to Dismiss ("McCarthy Fingar Memo.") at i-ii).

I held a hearing on March 17, 2010, to determine whether there was an appropriate basis for diversity jurisdiction in this action; the outcome of that inquiry is discussed below. (Order dated March 3, 2010; Hearing Transcript dated March 17, 2010 ("Tr.")). Following the hearing,

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

the plaintiff filed a motion for an order dismissing Blank Rome and adding Mr. Bockstein and Mr. Valente as defendants. (Plaintiff's Motion to Dismiss and Join Defendants). I denied her motion "without prejudice to being resubmitted together with a copy of the proposed amended complaint" and subsequently ordered her to file a supplemental pleading. (Order dated April 27, 2010; Order dated July 2, 2010). Ms. Carvel filed a supplemental pleading on July 20, 2010, retaining Blank Rome as a defendant and adding Mr. Bockstein and Mr. Valente. (Supp. Pleading at 1).

*Discussion*

A. *Legal Standards*

1. *Rule 8(a)(2)*

Rule 8(a) (2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The pleading must be sufficient to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009). However, "Rule 8(a) sets a lower bar than Rule 12(b)(6) or Rule 9(b)," *In re Allou Distributors, Inc.,* 395 B.R. 246, 258 (Bankr.E.D.N.Y.2008), and dismissal under Rule 8(a) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *Shomo v. New York,* 374 Fed. Appx. 180, 182 (2d Cir.2010) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)). In applying Rule 8(a) to a *pro se* complaint, the pleading must be construed liberally, *id.* at 183, and with sufficient sensitivity "so as to do justice" as required by Rule 8(e) of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 8(e).

2. *Rule 9(b)*

**\*7** Rule 9(b) of the Federal Rules of Civil Procedure establishes a heightened pleading standard for complaints alleging fraud or mistake; such pleadings must "state with particularity the circumstances constituting the violation. Fed.R.Civ.P. 9(b).

To meet this standard, a complaint must " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Wood ex rel. United States v. Applied Research Associates, Inc.,* 328 Fed. Appx. 744, 747 (2d Cir.2009) (quoting *Shields v. Citytrust Bancorp, Inc .,* 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, " 'conclusory allegations that [a] defendant's conduct was fraudulent or deceptive are not enough.' " *CreditSights, Inc. v. Ciasullo,* No. 05 Civ. 9345, 2008 WL 4185737, at \*9 (S.D.N.Y. Sept. 5, 2008) (quoting *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982)). Although *pro se* pleadings are construed liberally, *pro se* petitioners are nevertheless required to comport with Rule 9(b)'s particularity requirements when alleging fraud or mistake. *See, e.g., Rafter v. Liddle,* 704 F.Supp.2d 370, 377–78 (S.D.N.Y.2010) ("Given that [the plaintiff] is proceeding *pro se,* the Court considers her pleadings leniently, but nonetheless finds that [she] has not alleged [her claims] with any particularity."); *Houraney v. Burton & Associates, P.C.,* 701 F.Supp.2d 258, 262–63 (E.D.N.Y.2010) (dismissing *pro se* complaint for failure to meet 9(b) standard).

3. *Rule 12(b)(1)*

Rule 12(b) (1) of the Federal Rules of Civil Procedure requires that a claim be dismissed for lack of subject matter jurisdiction " 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Qader v. Cohen & Slamowitz,* No. 10 Civ. 1664, 2011 WL 102752, at \*2 (S.D.N.Y. Jan. 10, 2011) (quoting *Morrison v. National Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008)). Subject matter jurisdiction is a " 'threshold inquiry' " that must be addressed before reaching the merits of a claim. *Dominguez ex rel. Dominguez v. Verna,* No. 10 Civ. 4296, 2010 WL 4942205, at \*3 (S.D.N.Y. Dec. 3, 2010) (quoting *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008), *vacated on other grounds,* 585 F.3d 559 (2d Cir.2009)). The party asserting subject matter jurisdiction bears the burden of proving it by a preponderance of the evidence. *Lunney v. United States,* 319 F.3d 550, 554 (2d Cir.2003) (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)).

There are three bases for federal subject matter jurisdiction: (1) arising under jurisdiction, for civil actions "arising under the Constitution, laws, or treaties of the

United States," 28 U.S.C. § 1331; (2) diversity jurisdiction, for civil actions arising under state law between citizens of different states where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a)(1); and (3) supplemental jurisdiction, for civil actions arising under state law that are nonetheless part of the same case or controversy as a properly filed claim over which the court has original jurisdiction, 28 U.S.C. § 1367(a).

**\*8** For purposes of diversity jurisdiction, the citizenship of an individual is determined by her domicile; an individual can have only one domicile, which in turn is defined as the location of her " 'true fixed home ... to which, whenever [she] is absent, [she] has the intention of returning.' " *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 42 (2d Cir.2000) (quoting *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir.1998)). In contrast, the citizenship of a partnership includes every state in which any member of the partnership is a citizen. *See Herrick Co. v. SCS Communications, Inc.,* 251 F.3d 315, 322 (2d Cir.2001) (citing *Carden v. Arkoma Associates,* 494 U.S. 185, 192–95 (1990)). To sustain diversity jurisdiction, complete diversity between opposing parties is required. *See, e.g., In re Methyl Tertiary Butyl Ether Products Liability Litigation,* 674 F.Supp.2d 494, 500 (S.D.N.Y.2009) (citing *State Farm Fire and Casualty Co. v. Tashire,* 386 U .S. 523, 530–31 (1967)). Where a non-essential, non-diverse party stands in the way of complete diversity, the court can dismiss that party so as to cure the jurisdictional defect. *See Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 572–73 (2004).

### 4. *Rule 12(b)(6)*

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus,* 551 U .S. 89, 90, 94 (2007) (per curiam); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 110–11 (2d Cir.2010). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Iqbal,* 129 S.Ct. at 1949–50 (citing *Twombly,* 550 U.S. at 555). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard. *Id.* at 1950. "The task of the court in ruling on a Rule 12(b)(6) motion is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *In re Initial Public Offering Securities Litigation,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (quoting *Levitt v. Bear Stearns & Co.,* 340 F.3d 94, 101 (2d Cir.2003)).

*Pro se* complaints are held to less stringent standards than those drafted by lawyers. *Erickson,* 551 U.S. at 94; *see also McKeown v. New York State Commission on Judicial Conduct,* 377 Fed. Appx. 121, 122 (2d Cir.2010). In fact, pleadings of a *pro se* party should be read " 'to raise the strongest arguments that they suggest.' " *Kevilly v. New York,* No. 09–4635, 2010 WL 5156766, at *1 (2d Cir. Dec. 21, 2010) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006)). Even after *Iqbal,* which imposed heightened pleading standards for all complaints, *pro se* complaints are to be liberally construed. *See Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009). Dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. *See, e.g., Paul v. Bailey,* No. 09 Civ. 5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010) (citing *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997)).

### 5. *Conversion into Motion for Summary Judgment*

**\*9** The plaintiff asserts that, by relying on documents outside of the pleadings, the defendants have converted their motions to dismiss into motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Plaintiff Pamela Carvel's Affidavit on Personal Knowledge & Memorandum of Law in Opposition to Defendants Leonard Ross/Ross and Matza's Motion to Dismiss ("Pl. Ross Opp. Memo."), ¶¶ 8–10; Plaintiff Pamela Carvel's Memorandum of Law in Opposition to Defendants Eve Markewich, Markewich & Rosenstock, Blank Rome Motion to Dismiss ("Pl. Blank Rome Opp. Memo."), ¶ 2; Plaintiff Pamela Carvel's Affidavit on Personal Knowledge & Memorandum of Law in Opposition to Defendants Frank Streng, McCarthy Fingar LLP, Joel Aurnou's Motion to Dismiss ("Pl. McCarthy Fingar Opp. Memo."), ¶¶ 9–10).

This characterization is incorrect. On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–54 (2d Cir.2002). However, the court may also consider documents " 'integral to the complaint' " or those that were necessarily relied on by

the plaintiff in drafting the complaint. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). Such documents are particularly relevant where the complaint alleges fraud. *Id.* Furthermore, federal courts are empowered to take judicial notice of facts "not subject to reasonable dispute," including public records and the decisions of other courts. Fed.R.Evid. 201(b); *see United States v. Miller,* 626 F.3d 682, 687 n. 3 (2d Cir.2010); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,* 596 F .3d 112, 124 n. 12 (2d Cir.2010). However, a court can only take judicial notice of a decision filed by another court "to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Global Network Communications, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006) (quoting *Lum v. Bank of America,* 361 F.3d 217, 222 n. 3 (3d Cir.2004)).

Ms. Carvel does not challenge the authenticity of any of the documents submitted by the defendants; indeed, she has attached a number of the same documents to her own submissions and to her requests for judicial notice. (*E.g.,* Stipulation, attached as Exh. G to Touitou 9/30/10 Aff. and Exh. F to Carvel 1/7/11 Request). Moreover, the documents submitted by the parties fall within the enumerated categories of documents that a court can properly consider when deciding a motion to dismiss. The majority of the submissions are judicial opinions from other courts, including the Westchester Surrogate's Court, the Florida Fourth District Court of Appeal, the United States District Court for the District of Delaware, and the United Kingdom's High Court of Justice. (Decision and Order dated Feb. 27, 2009, attached as Exh. R to Ross 9/27/10 Aff.; Decision of the Fourth District Court of Appeal of the State of Florida dated Oct. 11, 2006, attached as Exh. D to Carvel 1/7/11 Request; Memorandum Opinion dated July 17, 2008, attached as Exh. H of Ross 10/8/09 Aff.; 6/11/07 Judgment). While all of these decisions are subject to judicial notice, the contents of some of them underlie the plaintiff's allegations of bribery and conspiracy and thus are also integral to her complaint. (Am. Compl., ¶¶ 148, 153; Supp. Pleading, ¶ 40(e); Reply for Supplemental Pleading for More Definite Statement ("Supp. Pleading Reply"), ¶ 10). Other submissions are documents already in the public record, including Agnes Carvel's 1995 will, which was submitted to probate in the United Kingdom, and documents related to the 1991 Trust. (Agnes Carvel Will; 1991 Trust Agreement). Finally, both the defendants and

the plaintiff have submitted various letters exchanged among the parties. (*E.g.,* Letter of Howard M. Camerik dated March 13, 2000, attached as Exh. C to Carvel 1/7/11 Request; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. D to Ross 10/8/09 Aff.). These letters are properly considered here because they establish the dates on which the attorney-client relationships between Ms. Carvel and the defendants were established and terminated and thus are integral to the allegations of legal malpractice and breach of contract, among others, contained in the plaintiff's complaint.

B. *Subject Matter Jurisdiction*

**\*10** The plaintiff alleges a variety of state and federal causes of action, grounding jurisdiction for her state law claims in diversity. (Am.Compl., ¶ 25). She states that she is a citizen of Florida while "[a]ll named Defendants are citizens of New York." (Am.Compl., ¶ 25). In their moving papers, the Blank Rome defendants challenge the plaintiff's assertion of diversity jurisdiction, suggesting that although Ms. Carvel was a United States citizen and had claimed a Florida residence, she was actually domiciled in the United Kingdom and therefore could not properly bring a diversity action against a United States citizen defendant. (Reply Memorandum of Law in Further Support of Defendants Eve Rachel Markewich, Blank Rome LLP and Markewich and Rosenstock LLP's Motion to Dismiss the Complaint at 6–7); *see also Johnson v. Smithsonian Institution,* 4 Fed. Appx. 69, 71 (2d Cir.2001) (" '[A] suit by or against United States citizens domiciled abroad may not be premised on diversity.' " (quoting *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68 (2d Cir.1990). On March 17, 2010, I held a hearing on this matter at which Ms. Carvel and Mr. Ross testified. (Order dated March 3, 2010; Tr. at 3–55).

On the basis of the evidence presented at the hearing, along with documents submitted by the parties, I recommend the Court find that Ms. Carvel is domiciled in Florida and therefore a citizen of Florida for diversity purposes. Ms. Carvel states that she has lived in Florida since 1970 or 1980—in Hollywood, Florida until 1995, and since then in a home she purchased in Fort Lauderdale, Florida. (Tr. at 4, 5; Plaintiff Pamela Carvel's Affirmation on Personal Knowledge Evidenced by Certified Business Records in the Public Record dated March 12, 2010 ("Carvel 3/12/10 Aff."), ¶¶ 7–9, 13–14; Warranty Deed dated June 22, 1995, attached as Exh. D to Carvel 3/12/10 Aff.). She testified that her "only domicile is Florida" and

that she has never resided in the United Kingdom. (Tr. at 7, 10). She is registered to vote in Florida and voted there in 2009, carries a Florida driver's license and a United States passport, files her tax returns from her home in Fort Lauderdale, and maintains her primary bank account in Fort Lauderdale. (Tr. at 5–6, 16, 17; Voter Information Card, attached as Exh. E to Carvel 3/12/10 Aff.; Florida Driver License, attached as Exh. G to Carvel 3/12/10 Aff.; United States of America Passport Card, attached as Exh. H to Carvel 3/12/10 Aff.). Although the defendants rightly note that the plaintiff uses addresses in the United Kingdom and Delaware in her litigation documents, Ms. Carvel explained that she uses these addresses only for mail forwarding purposes and does not reside or own residences in either of these locations. (Tr. at 6–7, 12–13, 31). Ms. Carvel claims not to maintain a mailbox at her home in Florida; instead, she receives mail through mail forwarding services located in Delaware and the United Kingdom because she has been unable to find a reliable service in Florida. (Tr. at 12–13). While Ms. Carvel admitted to regularly spending time in New Jersey with her mother, she states that she does not own any property there and does not reside there. (Tr. at 15–16, 34–36). She also claimed not to have lived in New York City since the 1960s or 1970s, despite being a stock holder in five co-operative apartments located there; the defendants did not challenge this contention. (Tr. at 27–31). Ms. Carvel has thus sustained her burden of demonstrating that she is a citizen of Florida for diversity purposes.

**\*11** Blank Rome is also a citizen of Florida. Michael Leeds, a general partner at Blank Rome since 2001, states that he has lived and worked in Boca Raton, Florida, since 1997. (Affirmation of Michael H. Leeds dated March 26, 2010 ("Leeds Aff."), ¶¶ 1, 4, 9; Blank Rome LLP Amended and Restated Partnership Agreement dated Nov. 3, 2001, attached as Exh. 1 to Leeds Aff.). His domicile and citizenship are therefore also located in Florida. (Leeds Aff., ¶ 9). Furthermore, Blank Rome itself is registered as a limited partnership with the Florida Department of State and maintains an office in Boca Raton, Florida, in which Mr. Leeds works. (Leeds Aff ., ¶¶ 4–5; Statement of Registration–Domestic Registered Limited Liability Partnership dated Jan. 2, 1998, attached as Exh. 2 to Leeds Aff.; Partnership Registration Statement dated April 7, 2000, attached as part of Exh. 5 to Leeds Aff.).

Because Mr. Leeds is a citizen of Florida, Blank Rome is also a citizen of Florida and therefore is not diverse

from Ms. Carvel for jurisdictional purposes. As a result, Blank Rome must be dismissed from the case to preserve diversity jurisdiction as to the remaining defendants. Although it would be possible for the Court to retain jurisdiction over the plaintiff's action even in the absence of complete diversity through the exercise of arising under and supplemental jurisdiction, this would not be appropriate given my recommendation below that all of Ms. Carvel's federal claims be dismissed as to all of the defendants. *See Jenkins v. St. Luke's–Roosevelt Hospital Center,* No. 09 Civ. 12, 2009 WL 3682458, at *11 (S.D.N.Y. Oct. 29, 2009) (" 'Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well.' " (alteration in original) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966))); *see also* 28 U.S.C. § 1367(a), (c) ( "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction.").

### C. *The Merits*

I will address the plaintiff's remaining claims in four groups: (1) claims that are not causes of action or do not carry a private right of action, (2) common law claims, (3) federal law claims, and (4) state statutory claims. [2]

[2]    I note that the plaintiff does not organize her causes of action in this manner but instead groups them under six headings: (1) "Civil Conspiracy for Deprivation of Rights"; (2) "Conspiracy for Deprivation of Rights Secured by U.S. Constitution"; (3) "Reprehensibility Misconduct by Lawyers"; (4) "Bad Faith, Breaches of Contract, Unjust Enrichment"; (5) "Breach of Fiduciary Duty, Duty of Loyalty, Duty of Care"; and (6) "Harassment; Intimidation; Extortion." (Am. Compl. at 42, 45, 47, 49, 52, 53). However, her allegations have a wider scope than these six headings allow and thus are more appropriately addressed on an individual basis.

### 1. *Invalid Claims*

Among her allegations, the plaintiff claims a number of violations that either are not causes of action or are based on statutes that do not provide for a private right of action. I therefore recommend that these claims should be dismissed.

### a. *Not a Cause of Action*

In her pleadings, Ms. Carvel asserts claims for harassment, intimidation, and "failure to assert a claim for elder abuse." (Am. Compl. at 53 & ¶¶ 178, 180–81; Supp. Pleading, ¶ 47). None of these are cognizable as civil causes of action under federal or New York law. *See Pandozy v. Tobey,* 335 Fed. Appx. 89, 91 (2d Cir.2009) ("New York law does not recognize a claim for civil harassment."); *Bradt v. White,* 190 Misc.2d 526, 535, 740 N.Y.S.2d 777, 784 (Greene Sup.Ct.2002) ("[T]he Court notes that there is no common law cause of action for harassment, annoyance, [or] intimidation." (internal citation omitted)); *Gilbert v. Gilbert,* No. 02 Civ. 3728, 2003 WL 22790940, at *2 (S.D.N.Y. Nov. 25, 2003) ("[N]either federal nor New York law recognizes a cause of action for 'elder abuse.' "). Therefore, I recommend that these claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### b. *No Private Right of Action*

**\*12** The plaintiff also asserts a number of causes of action for which there are no private rights of action, including violations of 18 U.S.C. § 4 (misprision of felony), 18 U.S.C. § 2382 (misprision of treason), 18 U.S.C. § 1346 (honest services fraud), and New York Penal Law § 210.10 (perjury); extortion; tax fraud; and violations of federal and state attorney disciplinary rules. (Am. Compl. at 53 & ¶¶ 75, 96–97, 138, 175, 176, 178; Supp. Pleading, ¶¶ 39(d), 40(e), 49–76, 118, 130; Pl. Ross Opp. Memo., ¶ 88; Pl. Blank Rome Opp. Memo., ¶¶ 14, 18, 86, 106; Pl. McCarthy Fingar Opp. Memo., ¶¶ 18, 21); *see Chen ex rel. V.D. v. Lester,* 364 Fed. Appx. 531, 536 (11th Cir.2010) (affirming dismissal of civil suit under 18 U.S.C. § 2382 because statute does not provide a private right of action); *In re Phillips,* 510 F.2d 126, 126 (2d Cir.1975) (holding that private citizens lack standing to participate in attorney disciplinary proceedings); *Carvel v. Franchise Stores Realty Corp.,* No. 08 Civ. 8938, 2009 WL 4333652, at *8 (S.D.N.Y. Dec. 1, 2009) ("The federal statute for misprision of felony is a criminal statute that does not create a private cause of action."); *Abrahams v. Incorporated Village of Hempstead,* No. 08 CV 2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because "there is no private right of action for perjury" under New York law); *Williams v. Jurow,* No. 05 Civ. 6949, 2007 WL 5463418, at *13 (S.D.N.Y. June 29, 2007) ("[T]here is no private right of action under the federal extortion statute."), *report and recommendation adopted in relevant part,* 2008 WL 4054421 (S.D.N.Y. Aug. 28, 2008); *Seabury v. City of*

*New York,* No. 06 CV 1477, 2006 WL 1367396, at *5 (E.D.N .Y. May 18, 2006) ("Private citizens cannot enforce the provisions of the Tax Code."); *Gaind v. Pierot,* No. 04 Civ. 9407, 2006 WL 846268, at *4–5 (S.D.N.Y. March 31, 2006) (noting that 18 U.S.C. § 1346 does not have private right of action), *aff'd,* 282 Fed. Appx. 946 (2d Cir.2008); *Minnelli v. Soumayah,* 41 A.D.3d 388, 389, 839 N.Y.S.2d 727, 728 (1st Dep't 2007) ("[E]xtortion and attempted extortion are criminal offenses that do not imply a private right of action." (internal citation omitted)).

It is axiomatic that " 'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.' " *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894, 897 (2d Cir.1981) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 688 (1979)). It follows that where courts have already determined that a private right of action does not exist for a particular law, an individual cannot bring a civil suit for monetary damages based on a violation of that law. Therefore, Ms. Carvel's attempt to civilly enforce the above-mentioned statutes fails, and these claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 2. *Common Law Claims*

**\*13** The plaintiff alleges twelve common law causes of action in her Amended Complaint: (1) legal malpractice, (2) breach of fiduciary duty, (3) breach of contract, (4) common law fraud, (5) fraudulent and negligent misrepresentation, (6) conversion, (7) unjust enrichment, (8) attorney liability in negligence to third parties, (9) aiding breach of fiduciary duty and conversion, (10) tortious interference with business relations, (11) fraudulent conveyance, and (12) intentional infliction of emotional distress. I will discuss each of them in turn.

### a. *Legal Malpractice*

There are three elements to a claim of legal malpractice in New York: " '(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages.' " *Baker v. Dorfman,* 239 F.3d 415, 420 (2d Cir.2000) (quoting *Davis v. Klein,* 224 A.D.2d 196, 198–99, 637 N.Y.S.2d 137, 139 (1st Dep't 1996), *aff'd,* 88 N.Y.2d 1008, 648 N.Y.S.2d 871 (1996)). There is a three-year statute of limitations for legal malpractice, which begins

running on the date of the alleged malpractice unless it is tolled by the continuous representation doctrine until the date that the representation "in the specific matter at issue" was terminated. *Nobile v. Schwartz,* 56 Fed. Appx. 525, 526 (2d Cir.2000) (citing *Shumsky v. Eisenstein,* 96 N.Y.2d 164, 167–68, 726 N.Y.S.2d 365, 368–69 (2001)); *see also* N.Y. CPLR § 214(6). For a representation to be continuous, "the parties [must] possess a mutual understanding of the need for further representation [and] ... explicitly contemplate that the professional relationship continue." *Arnold v. KPMG LLP,* 543 F.Supp.2d 230, 236 (S.D.N.Y.2008) (internal quotation marks and citations omitted), *aff'd,* 334 Fed. Appx. 349 (2d Cir.2009), *cert. denied,* 130 S.Ct. 503 (2009).

Although Ms. Carvel does not describe her claim as one for legal malpractice, she clearly alleges the elements of this cause of action with respect to all of the defendants —she claims that, while working as her attorneys, they refused to provide representation, respond to her instructions, give her detailed invoices, make promised applications for reimbursement of funds, return her legal files, or give her notice of proceedings that affected her rights and interests. (Am. Compl., ¶¶ 13–14, 33, 34, 36, 38, 129, 159, 161, 165; Supp. Pleading, ¶¶ 10, 14, 18, 20, 25–27, 29–30, 32, 40(b), 52, 61, 131–32, 136–37, 166–70, 176, 183–89, 191, 211–12). As a direct result of these failures, Ms. Carvel alleges that she was damaged in the amount of $100,000,000. (Am.Compl., ¶¶ 163–66). However, the plaintiff's claims of legal malpractice fail with respect to all three groups of defendants, both because the statute of limitations has run and because her claims are not plausible.

### i. The Ross Defendants

Although the plaintiff has alleged acts of malpractice by Mr. Ross, none of those acts are within the three-year period immediately preceding the filing of this action; as a result, they fall outside the applicable statute of limitations and should be dismissed. First, Ms. Carvel alleges that Mr. Ross violated the terms of his representation by "accept[ing] paid employment" from Betty Godley, "an adverse litigant" in a proceeding related to Agnes Carvel's estate assets, and by refusing to assert Ms. Carvel's interest in the same assets. (Supp.Pleading, ¶¶ 116–17, 119). However, Ms. Carvel defines the time period during which this behavior took place as 2000–2005; because this action was not filed until January 2009, these allegations fall outside the applicable statute of limitations. (Supp.

Pleading, ¶¶ 113, 115, 116, 118; Complaint). Second, to the extent that the plaintiff is attempting to assert violations of Agnes Carvel's rights that were assigned to her prior to Agnes Carvel's death, the statute of limitations on those claims began running, at the latest, upon Agnes Carvel's death in 1998 and thus also expired before the filing of this action. (Supp. Pleading, ¶¶ 119, 121; Pl. Ross Opp. Memo., ¶¶ 3, 37; Complaint); *Trans–Resources, Inc. v. Nausch Hogan and Murray,* 298 A.D.2d 27, 30, 746 N.Y.S.2d 701, 704 (1st Dep't 2002) (holding that assignee of claim is subject to defenses that could have been asserted against assignor). Similarly, the plaintiff's allegations that Mr. Ross failed to respond to her directions and refused to turn over evidence that he had collected at her behest and for which she had paid also fall outside of the statute of limitations, having occurred between 2000 and 2004, and therefore should be dismissed. (Supp.Pleading, ¶¶ 125–26, 132, 144).

**\*14** Ms. Carvel argues that the continuous representation doctrine tolls the statute of limitations because Mr. Ross continued to represent her through at least July of 2010. (Supp.Pleading, ¶ 17). However, all of the tasks the Ross defendants performed for her terminated many years ago, and thus the continuous representation doctrine does not toll the statute of limitations for her legal malpractice allegations for a sufficient period of time to render them timely. First, Ms. Carvel states that she retained Mr. Ross to represent her as a named executor to Thomas Carvel's estate in 1990. (Supp.Pleading, ¶ 78). Any representation for that purpose would have terminated when Ms. Carvel resigned from this position in 2000. (Decision dated Feb. 17, 2000, attached as Exh. J to Ross 10/8/09 Aff.). Second, any representation by Mr. Ross of Agnes Carvel, or of Pamela Carvel as Agnes Carvel's guardian, terminated with Agnes Carvel's death in 1998. (Supp.Pleading, ¶¶ 14, 83, 84, 86). Third, any role Ms. Carvel played in having Mr. Ross appointed the New York ancillary administrator to Agnes Carvel's estate did not create an attorney-client relationship between them and so cannot be the basis for a legal malpractice claim. (Am. Compl., ¶ 32; Supp. Pleading, ¶¶ 15, 88). Finally, Ms. Carvel states that she retained Mr. Ross to represent her in litigation related to the ownership of Agnes Carvel's shares in "Chain Locations of America, Inc. and Andreas Holdings Corp." and to "assist" her in investigating various charity fraud allegations. (Supp.Pleading, ¶¶ 81, 82, 85, 87). However, the facts alleged in Ms. Carvel's supplemental pleading

indicate that these engagements occurred beginning in the 1990s and continued through 2005 at the latest—she does not identify any act of legal representation or legal malpractice by the Ross defendants related to either of these engagements after 2005. (Supp.Pleading, ¶¶ 111–34). Because all of the various engagements that Ms. Carvel claims the Ross defendants performed for her terminated over three years before she asserted any claim of legal malpractice, Ms. Carvel's allegations of ongoing legal malpractice against the Ross defendants also fail on statute of limitations grounds. (Am. Compl., ¶¶ 13–14, 129, 159, 161, 165; Supp. Pleading ¶¶ 40(b), 52, 147, 208). Therefore, her legal malpractice claim against the Ross Defendants should be dismissed.

### ii. *The Blank Rome Defendants*

Ms. Carvel's sole legal malpractice allegation against the Blank Rome defendants is that they failed to seek reimbursement for legal fees she had advanced to them for representation in proceedings related to Agnes Carvel's estate. (Am. Compl., ¶¶ 33, 129, 161; Supp. Pleading, ¶¶ 136–38). However, Ms. Carvel has not plausibly alleged that any of the Blank Rome defendants represented her in that litigation. In her Amended Complaint, the plaintiff states that she retained Ms. Markewich to "immediately seek reimbursement" for sums she had advanced, and in her supplemental pleading she identifies the date of that retainer as February of 2000. (Am. Compl., ¶ 33; Supp. Pleading, ¶¶ 18–19). However, the retainer letter memorializing that agreement, which Ms. Carvel submitted, clearly states that Blank Rome was "retained by Leonard Ross" in his position "as New York Ancillary Administrator of the Estate of Agnes Carvel." (Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request, at 1). In light of this letter, the plaintiff's allegations of an attorney-client relationship between herself and the Blank Rome defendants with respect to litigation involving Agnes Carvel's estate are not plausible. Although she does plausibly plead an attorney-client relationship between herself and Blank Rome covering litigation between her and the Foundation, Ms. Carvel's claims regarding the Blank Rome defendants' failure to obtain reimbursement of her legal expenses do not relate to that representation. (Supp. Pleading, ¶ 135; Letter of Howard M. Camerik dated March 13, 2000, attached as Exh. C to Carvel 1/7/11 Request). The plaintiff's legal malpractice claim against the Blank Rome defendants should therefore be dismissed.

### iii. *The McCarthy Fingar Defendants*

**\*15** The plaintiff alleges that the McCarthy Fingar defendants committed various acts of legal malpractice, including billing for tasks not performed, failing to provide invoices, breaching the terms of their retainer agreement, and refusing to provide representation. (Am. Compl., ¶¶ 36, 38, 165; Supp. Pleading, ¶¶ 25–27, 29–30, 32, 167–71, 176, 183–89, 211). Yet the pleadings and incorporated documents show that the attorney-client relationship between Ms. Carvel and the McCarthy Fingar defendants terminated in 2005; therefore, the statute of limitations defeats her claim for legal malpractice against them.

Ms. Carvel claims that the McCarthy Fingar defendants represented her beginning in 1999 or 2000 in two capacities relevant to this lawsuit—in litigation related Agnes Carvel's estate and litigation related to Thomas Carvel's estate. (Supp.Pleading, ¶¶ 25, 28, 166). She maintains that Mr. Aurnou has never withdrawn from either of these representations, by letter or otherwise. (Supp.Pleading, ¶¶ 34, 171, 197). Although the plaintiff admits that Mr. Streng and McCarthy Fingar withdrew from representing her in proceedings related to Thomas Carvel's estate in 2005, she maintains that they continued representing her in proceedings related to Agnes Carvel's estate through at least July of 2010 because they had not explicitly "withdr[awn] representation" as of that date. (Supp.Pleading, ¶¶ 28, 190). However, Mr. Streng wrote to Ms. Carvel in July 2005 withdrawing himself and McCarthy Fingar from representation in proceedings related to Agnes Carvel's estate and asking her to obtain new counsel in those proceedings. (Letter of Frank W. Streng dated July 15, 2005, attached as Exh. K to Brophy 9/30/10 Aff., at 2). This letter was sufficient to terminate his and McCarthy Fingar's representation in those proceedings because, at the very least, it undermined the "mutual understanding," *Arnold*, 543 F.Supp.2d at 236, necessary for a finding of continuous representation. Similarly, Ms. Carvel has failed to allege any independent act of legal representation or malpractice by Mr. Aurnou since 2000, aside from his ongoing failure to contact her or respond to her inquiries. (Supp.Pleading, ¶¶ 171, 176). The attorney-client relationship between Ms. Carvel and Mr. Aurnou therefore terminated, at the latest, with McCarthy Fingar's 2005 withdrawal. Because there was no attorney-client relationship between Ms. Carvel and the McCarthy Fingar defendants during the three-year period immediately prior to the institution of this

lawsuit, the plaintiff's legal malpractice claim against the McCarthy Fingar defendants should be dismissed.

### b. *Breach of Fiduciary Duty*
A breach of fiduciary duty occurs where (1) a fiduciary duty exists between the plaintiff and the defendant, (2) the defendant breaches the duty, and (3) damages result to the plaintiff from the breach. *Meisel v. Grunberg,* No. 07 Civ. 11610, 2010 WL 4966443, at *2 (S.D.N.Y. Nov. 30, 2010) (citing *Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115 (2d Cir.1986)). The statute of limitations for a fiduciary duty claim under New York law depends on the nature of the relief sought. For complaints seeking monetary relief, the statute of limitations is three years; for those seeking equitable relief, it is six years. *Malmsteen v. Berdon, LLP,* 369 Fed. Appx. 248, 249 (2d Cir.2010) (citing *Weiss v. T.D. Waterhouse,* 45 A.D.3d 763, 764, 847 N.Y.S.2d 94, 95 (2d Dep't 2007)). Ms. Carvel's Amended Complaint seeks both monetary and declaratory relief. (Am. Compl., at 58–60). Declaratory relief is not inherently legal or equitable; rather, its character depends on that of the underlying action; "[t]he test is whether, in the absence of a prayer for declaratory judgment, the issues presented should be properly disposed of in an equitable as opposed to a legal action." 22A Am.Jur.2d *Declaratory Judgments* § 2; *see also Yoon v. Fordham University Faculty and Administration Retirement Plan,* No. 99 Civ. 11042, 2004 WL 3019500, at *12 (S.D.N.Y. Dec. 29, 2004) (noting declaratory judgment suits neither inherently legal nor inherently equitable, but dependent upon nature of issues presented). Because the sole relief sought here aside from a declaratory judgment is monetary, the action is legal, and thus a three-year statute of limitations applies. [3] (Am. Compl., ¶¶ 58–60; *see also Kermanshah v. Kermanshah,* 580 F.Supp.2d 247, 268 (S.D.N.Y.2008) ("The statute of limitations period for a declaratory judgment action is based on the underlying substantive claims upon which it is premised.").

[3]   To the extent that Ms. Carvel is claiming actual fraud, a six-year statute of limitations applies, regardless of the nature of the relief requested. *Scantek Medical, Inc. v. Sabella,* 583 F.Supp.2d 477, 490 (S.D.N.Y.2008). But, as will be discussed below, the plaintiff's fraud claims all fail.

**\*16** Ms. Carvel argues for the application of equitable tolling to stay the statute of limitations until the point at which she discovered the relevant conduct by the

defendants. (Pl. Ross Opp. Memo., ¶ 93; Pl. Blank Rome Opp. Memo., ¶¶ 90–91; Pl. McCarthy Fingar Opp. Memo., ¶ 98). "Equitable tolling applies where a plaintiff has been prevented in some extraordinary way from exercising [her] rights." *Hogan v. J.P. Morgan Chase Bank,* No. 09–3048, 2010 WL 4847032, at *1 (2d Cir. Nov. 30, 2010) (internal quotation marks omitted). To be eligible for equitable tolling, the burden is on the plaintiff to show that she "acted with reasonable diligence during the time period she seeks to have tolled." *Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 112 (2d Cir.2008) (internal quotation marks omitted). Only "where a defendant's fraudulent or deceptive actions prevented [the] plaintiff from discovering the fraudulent scheme and/or filing a claim within the statutory period" will equitable tolling be appropriate. *Scherer v. Gaildon Medical Systems, Inc.,* No. 02 Civ. 8847, 2004 WL 2884312, at *4 (S.D.N.Y. Dec. 10, 2004) (citing *Simcuski v. Saeli,* 44 N.Y.2d 442, 448–49, 406 N.Y.S.2d 259, 262 (1978)).

Even giving the plaintiff the benefit of equitable tolling until the time when she became aware of each alleged breach of fiduciary duty, and even assuming that fiduciary relationships existed between her and each of the defendants, she has failed to allege any acts within the applicable tolled statute of limitations period that could plausibly constitute a breach of fiduciary duty by any of the defendants. In Count Five of her Amended Complaint, Ms. Carvel alleges that the defendants breached their fiduciary duty to her by (1) entering into "agreements against their own client Pamela Carvel" and (2) "engag[ing] in deceptive business practices when they delivered ... signed letter agreements making promises to Pamela Carvel so as to induce her to pay them, but these were false promises Defendants never intended to keep." (Am.Compl., ¶ 170).

With respect to the first allegation, the plaintiff points to the 2001 stipulation, which was entered into by Mr. Ross, Ms. Markewich, and representatives of the 1991 Trust and the Foundation. (2001 Stipulation). She asserts that, following the signing of the 2001 stipulation, the Ross defendants and the Blank Rome defendants ceased representing her interests and began purposely withholding or obstructing the delivery of monies owed to her. (Supp.Pleading, ¶¶ 21, 48, 101, 144, 152). However, the plaintiff admits that she was made aware of the existence of the 2001 stipulation in 2003. (Supp.Pleading, ¶ 148). Thus, even assuming her interpretation of the 2001

stipulation and giving her the benefit of equitable tolling until 2003, any cause of action for breach of fiduciary duty based on the signing of the 2001 stipulation had to be asserted by 2006 at the latest, three years before the complaint in this action was filed. Therefore, the signing of the 2001 stipulation cannot sustain the plaintiff's claim for breach of fiduciary duty.

**\*17** With respect to the letter agreements that form the second basis for Ms. Carvel's breach of fiduciary duty allegations, none of these agreements are sufficiently recent to fall within the statute of limitations period. The plaintiff has failed to allege the existence of any "signed letter agreements" between herself and Mr. Ross; in any case, all of the allegations against Mr. Ross that could constitute a breach of fiduciary duty occurred before 2006. (Supp.Pleading, ¶¶ 90, 115, 116, 118, 125, 131). Ms. Carvel accuses both the Blank Rome defendants and the McCarthy Fingar defendants of promising to seek reimbursement of legal fees she had advanced to them but then failing to do so. (Am. Compl., ¶¶ 33, 36; Supp. Pleading, ¶ 184). However, there is abundant evidence that she was aware of this alleged behavior on the part of both groups of defendants well before 2006, and at the latest by 2005, when she sent angry letters to both Mr. Streng and Ms. Markewich accusing them of precisely these acts. (Letter of Pamela Carvel dated July 11, 2005, attached as Exh. S to Touitou 11/24/09 Decl., at 2; Letter of Pamela Carvel dated June 30, 2005, attached as Exh. I to Brophy 9/30/10 Aff., at 1–2). Therefore, none of these allegations can form the basis of a timely breach of fiduciary duty claim, even tolling the statute of limitations until 2005.

The only act alleged by Ms. Carvel that could constitute a breach of fiduciary duty within the limitations period is a hearsay statement allegedly made by Mr. Ross and communicated to Ms. Carvel by Ms. Markewich in 2009 to the effect that Mr. Ross "would take no steps to protect any interests of any beneficiaries or creditors of Agnes Carvel." (Pl. Ross Opp. Memo., ¶ 87; Pl. Blank Rome Opp. Memo., ¶ 85). The plaintiff claims to be both a beneficiary and a creditor of Agnes Carvel's estate. (Am. Compl., ¶ 40; Supp. Pleading, ¶¶ 149, 216; Pl. Ross Opp. Memo., ¶ 85; Pl. Blank Rome Opp. Memo., ¶¶ 58, 83, 87; Plaintiff Pamela Carvel's Affidavit on Personal Knowledge in Opposition to Defendants Eve Markewich, Markewich & Rosenstock, Blank Rome Motion to Dismiss, ¶ 20). However, the documentary evidence shows that she cannot be a beneficiary of Agnes

Carvel's estate in New York, the only portion of the estate under Mr. Ross' protection, since Justice Scarpino found in 2002 that the sole beneficiary of that estate was the Foundation. *In re The Thomas and Agnes Carvel Foundation,* 2002 WL 32872391, at \*10. To the extent that Ms. Carvel was a creditor of Agnes Carvel's New York estate, Mr. Ross not only acknowledged that fact, he attempted to obtain reimbursement for Ms. Carvel in the amount of \$167,270 for the legal fees she had advanced to Blank Rome. (Reply Memorandum of Law of Leonard Ross and Ross & Matza in Support of Their Motion to Dismiss the Amended Complaint at 4–5; Decision and Order dated Feb. 27, 2009, attached as Exh. R to Ross 9/27/10 Aff., at 1). Ultimately, Justice Scarpino decided not to award those fees to the plaintiff, but his decision was not predicated on Mr. Ross' failure to seek them. (6/30/10 Decision at 10–11). As a result, it is not plausible that Mr. Ross' hearsay statement could have comprised a breach of the fiduciary duty he may have owed to Ms. Carvel as a creditor of Agnes Carvel's estate in New York; the plaintiff's claims for breach of fiduciary duty should therefore be dismissed in their entirety.

#### c. *Breach of Contract*

**\*18** The elements of a breach of contract claim in New York are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.,* 375 F.3d 168, 177 (2d Cir.2004). The statute of limitations for a breach of contract claim is six years, and it begins running on the date of breach. N.Y. CPLR § 213(2); *John J. Kassner & Co. v. City of New York,* 46 N.Y.2d 544, 550, 415 N.Y.S.2d 785, 788 (1979) ("In contract cases, the cause of action accrues and the Statute of Limitations begins to run from the time of the breach."). A breach of contract claim that is " 'premised on the same facts and seeking the identical relief' " as a claim for legal malpractice " 'is redundant and should be dismissed.' " *Nordwind v. Rowland,* No. 04 Civ. 9725, 2007 WL 2962350, at \*4–5 (S.D.N.Y. Oct. 10, 2007), *aff'd,* 584 F.3d 420 (2d Cir.2009); *see also InKine Pharmaceutical Co. v. Coleman,* 305 A.D.2d 151, 152, 759 N.Y.S.2d 62, 63 (1st Dep't 2003) ("The breach of contract and breach of fiduciary duty claims were properly dismissed as duplicative, since they arose from the same facts as the legal malpractice claim and allege similar damages.").

The plaintiff states that all of the defendants breached contracts with her, alleging that they "misrepresented their intentions and their services in written and verbal contracts and agreements—all of which were breached to the detriment of Pamela Carvel." (Am. Compl. at 49 & ¶ 163). In particular:

> Defendants acting individually and as managing partners in their firms, breached their promised conditions of employment and verbal agreements to represent Pamela Carvel and immediately seek reimbursement or indemnification to Pamela Carvel .... The specific conditions of employment to provide legal representation to Pamela Carvel required Defendant lawyers to seek payment for all sums advance [sic] to them by Pamela Carvel. Not one Defendant did so, and refused to do so when asked in a timely fashion as promised.

(Am.Compl., ¶ 165). For the reasons discussed below, this claim should be dismissed with respect to the Ross and Blank Rome defendants; however, because the plaintiff has stated a claim for breach of contract against the McCarthy Fingar defendants, their motion to dismiss should be denied with respect to this cause of action.

### i. The Ross and Blank Rome Defendants

Ms. Carvel does not specify when or under what circumstances the Ross defendants promised to seek reimbursement of legal fees she had advanced to them or to other attorneys on their behalf; however, she clearly alleges the existence of an agreement between herself and the Ross defendants to seek reimbursement of such monies. (Am. Compl., ¶ 13; Supp. Pleading, ¶ 120). With respect to the Blank Rome defendants, the plaintiff points to a letter agreement sent to her by Mr. Camerik regarding the terms of Blank Rome's representation of Mr. Ross as New York ancillary administrator of Agnes Carvel's estate, which states:

> **\*19** As you have done previously, it is my understanding that you will be advancing or loaning funds to the Estate of Agnes Carvel in order to satisfy the firm's fees and costs. While our payment of fees and costs will not be contingent upon an award of any court, we will of course dutifully apply to any appropriate Court to seek reimbursement to the Estate, you, or any other appropriate party, of the fees and costs we are paid.

(Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request, at 1). Ms. Carvel also alleges that Ms. Markewich verbally represented that she would seek "immediate reimbursement for all advances made by Pamela on behalf of the estate" upon Blank Rome's retainer in 2000. (Supp.Pleading, ¶ 174).

The plaintiff identifies the Ross and Blank Rome defendants' act of breach of these alleged agreements as their signing of the 2001 stipulation in December of 2001; she alleges that this document excluded her "as equal fiduciary entitled to indemnification, in violation of the letter contract retaining Blank Rome." (Pl. Blank Rome Opp. Memo., ¶ 99; *see also* Am. Compl., ¶¶ 5, 57; Supp. Pleading, ¶¶ 101, 144). Even assuming Ms. Carvel's interpretation of the 2001 stipulation is correct, this document was executed over seven years before the complaint in this action was filed, and thus it falls outside the applicable statute of limitations period. (2001 Stipulation). Because the statute of limitations begins running at the time of breach, this claim is not subject to equitable tolling. Further, although the plaintiff states that she did not discover the stipulation itself until 2003, she claims that the parties began breaching their agreement with her earlier than that. (Am. Compl., ¶ 21; Supp. Pleading, ¶¶ 39(c), 101, 144, 148). Therefore, Ms. Carvel's claims for breach of contract should be dismissed with respect to the Ross and Blank Rome defendants. To the extent that other allegations made by Ms. Carvel against Mr. Ross and discussed above in the section on legal malpractice can also be construed as claims for breach of contract, those claims should be dismissed as duplicative of the plaintiff's legal malpractice claim. *Nordwind,* 2007 WL 2962350, at *4–5.

### ii. The McCarthy Fingar Defendants

The plaintiff alleges that the McCarthy Fingar defendants promised to seek reimbursement of all legal fees she

had advanced for litigation related to Agnes Carvel's estate as a condition of their retention in 1999 and 2000. (Am. Compl., ¶¶ 13, 36–37; Supp. Pleading, ¶¶ 25, 29, 170). She claims that they subsequently breached that agreement by failing to recover advances she had made to other attorneys, including the Blank Rome defendants. (Am. Compl., ¶ 38; Supp. Pleading, ¶¶ 27, 32, 170). Furthermore, she alleges that despite McCarthy Fingar's having been awarded $400,000 in attorneys' fees by Justice Scarpino in June of 2003, the firm did not reimburse her for the legal costs she had advanced them in anticipation of that award, thereby taking payment twice over for the same services. (Supp. Pleading, ¶¶ 27, 184, 194; 6/30/03 Decision at 7; 7/30/03 Order at 3).

**\*20** Because Ms. Carvel alleges that the McCarthy Fingar defendants' breach occurred in 2003, following Justice Scarpino's decision, that act falls within the six-year statute of limitations since this action was filed in January of 2009. (Supp.Pleading, ¶ 27). Ms. Carvel's claim is therefore timely.

Her claim is also plausible. She alleges an agreement between herself and the McCarthy Fingar defendants pursuant to which she retained them and advanced their legal fees, but which they breached by failing to seek or obtain reimbursements of those fees and other monies she claimed entitlement to; as a result, Ms. Carvel claims damages in the amount of $800,000 to $1,000,000. (Supp.Pleading, ¶¶ 184, 196). The existence of such a retainer agreement is plausible, and Ms. Carvel's recitation of events is supported by the documentary evidence, including a 2000 retainer letter between her and McCarthy Fingar and Justice Scarpino's 2003 decision and order awarding McCarthy Fingar significant legal fees for its representation of Ms. Carvel. (Letter of Philip T. Temple dated Oct. 13, 2000 ("McCarthy Fingar Letter"), attached as Exh. F to Touitou 9/30/10 Aff.; 6/30/03 Decision at 7; 7/30/03 Order at 3). The McCarthy Fingar defendants have failed to address Ms. Carvel's breach of contract allegations, asserting only that she failed to properly plead the elements of this claim in her Amended Complaint. (McCarthy Fingar Memo. at 12–13). This assertion is incorrect, especially in light of the more lenient standard applied to *pro se* pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Erickson,* 551 U.S. at 94. The plaintiff has therefore stated a claim for breach of contract against the McCarthy Fingar defendants, and

I recommend that their motion to dismiss be denied with respect to this claim.

#### d. *Common Law Fraud*

Common law fraud under New York law is comprised of four elements: (1) a "material, false representation," (2) made with the intent to defraud, (3) that is reasonably relied on by the plaintiff, (4) thereby causing her damage. *Chanayil v. Gulati,* 169 F.3d 168, 171 (2d Cir.1999) (internal quotation marks omitted). The statute of limitations is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." N.Y. CPLR § 213(8). A claim for common law fraud is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In her Amended Complaint, Ms. Carvel claims that each of the defendants "made false representation to [her] regarding services to be rendered" and that she relied on those representations to her financial detriment. (Am.Compl., ¶¶ 159, 161). Her claims of fraud nevertheless fail because they are either untimely or insufficiently pled.

**\*21** The key act of fraud alleged by Ms. Carvel against the defendants is their false promise to obtain reimbursement of the legal fees she advanced in connection with litigation related to Agnes Carvel's estate. (Am. Compl., ¶¶ 13–14, 129; Supp. Pleading, ¶¶ 29, 32, 136–37, 174–75). She states that each of the defendants "made false representations to [her] about steps they would take to seek reimbursement for cash advances [she] made to them." (Am.Compl., ¶ 159). In reliance on these promises, Ms. Carvel claims to have continued paying cash advances to the defendants. (Am.Compl., ¶ 13). This claim founders, however, because the plaintiff alleges that these promises were made in 1999 or 2000, eight years or more before the complaint in this action was filed and thus outside the statute of limitations period. (Am. Compl., ¶ 129; Supp. Pleading, ¶¶ 25, 27, 29, 174; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request, at 1; McCarthy Fingar Letter). Furthermore, the plaintiff's pleadings make clear that she was aware of the defendants' alleged misrepresentations by either 2003, when she learned of the 2001 stipulation, or 2005 at the latest, when she wrote letters to Ms. Markewich and Mr. Streng accusing them and their firms

of violating their promise to seek reimbursement of fee advances. (Supp. Pleading, ¶ 148; Letter of Pamela Carvel dated July 11, 2005, attached as Exh. S to Touitou 11/24/09 Decl., at 2; Letter of Pamela Carvel dated June 30, 2005, attached as Exh. I to Brophy 9/30/10 Aff., at 1–2). She therefore waited far longer than the two years allowed her under the statute of limitations from the time she discovered this alleged fraud until the date she filed her complaint.

The plaintiff additionally alleges that all of the defendants fraudulently promised to work on her behalf "against the unlawful actions by the foundation fraudsters" but then failed to do so, thereby causing her financial harm. (Am. Compl., ¶ 161; Supp. Pleading, ¶ 41(e)). This allegation also fails on statute of limitations grounds. Ms. Carvel states that the defendants first refused to oppose the "foundation fraudsters" in 2000, a refusal that she was no doubt aware of at the time since she was actively involved in litigation against the Foundation. Therefore, these claims necessarily accrued years before the complaint was filed in 2009. (Supp.Pleading, ¶ 41(e)).

The only series of facts alleged by the plaintiff that could come within the statute of limitations for common law fraud is her claim to have first learned in 2009 that Mr. Ross was not going to take any "steps to protect any interests of any beneficiaries or creditors of Agnes Carvel." (Pl. Ross Opp. Memo., ¶ 87; Pl. Blank Rome Opp. Memo., ¶ 85). Although the plaintiff does not state when Mr. Ross initially promised her that he would protect her interests as a beneficiary or creditor of Agnes Carvel's estate, any such promise took place prior to his appointment as the New York ancillary administrator of the estate, since Ms. Carvel approved of and promoted his taking on that position. (Am. Compl., ¶ 32; Supp. Pleading, ¶¶ 15, 88). That places his statement in 1998 or 1999, far more than six years before the filing of the complaint in this action and therefore outside the applicable statute of limitations. (Am. Compl., ¶ 32; Supp. Pleading, ¶¶ 15, 88; Ross Memo. at 10).

**\*22** Yet to the extent that Ms. Carvel reasonably continued to rely on any intentional misrepresentation by Mr. Ross until her conversation with Ms. Markewich in 2009, her claim for common law fraud could still be timely. However, the plaintiff has not plausibly alleged such reliance. First, she states at various points in her pleadings that she was aware long before 2009 that Mr.

Ross had already abandoned his purported obligation to protect her as a beneficiary and creditor of Agnes Carvel's estate, primarily as a result of his decision to sign the 2001 stipulation, which she learned of in 2003, but also as a result of other acts of which she was aware by 2005. (Am. Compl., ¶ 40 (referring to the 2001 stipulation); Supp. Pleading, ¶¶ 144, 148, 153, 216). As a result, her claim to have been surprised or materially affected by again receiving this information in 2009 is not plausible. Second, Ms. Carvel has failed to allege the circumstances of this misrepresentation with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. She has not identified when or where Mr. Ross promised to protect her as a beneficiary or creditor of Agnes Carvel's estate, Wood, 328 Fed. Appx. at 747; she also has not explained why this statement was fraudulent, especially in light of Mr. Ross' attempt to obtain reimbursement of her legal fees as part of the settlement of Agnes Carvel's estate. (Decision and Order dated Feb. 27, 2009, attached as Exh. R to Ross 9/27/10 Aff., at 1).

Thus, the plaintiff's allegations of common law fraud are both untimely and insufficiently pled to sustain her burden under Rule 9(b) of the Federal Rules of Civil Procedure, and I recommend that they be dismissed.

### e. *Fraudulent or Negligent Misrepresentation*

Fraudulent misrepresentation has four elements under New York Law: " '(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.' " *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.,* No. 05 CV 6734T, 2007 WL 162763, at \*6 (W.D.N.Y. Jan. 18, 2007) (quoting *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 940 (2d Cir.1998)). Negligent misrepresentation is also comprised of four elements: (1) the defendant was "careless[ ] in imparting words," (2) on which listeners could reasonably be expected to rely, (3) and based upon which they acted or failed to act, (4) resulting in damage. *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 788 (2d Cir.2003). The statute of limitations for fraudulent misrepresentation is the same as that for common law fraud—the greater of six years from the date the fraud was perpetrated or two years from the date of the plaintiff's actual or reasonably possible discovery of the fraud. N.Y. CPLR § 213(8). Although claims sounding in negligence typically

2011 WL 856283

carry a three-year statute of limitations under New York law, claims of negligent misrepresentation based on the commission of a fraud carry the same statute of limitations as for fraudulent misrepresentation. *Federal Insurance Co. v. Distinguished Properties Umbrella Managers Inc.,* 721 F.Supp.2d 293, 297 & n. 1 (S.D.N.Y.2010). Claims for both fraudulent misrepresentation and negligent misrepresentation based on fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b).

**\*23** The plaintiff's claims for fraudulent and negligent misrepresentation are based on the same factual allegations that underlie her claim for common law fraud. Because the same statute of limitations also applies, the majority of the plaintiffs' allegations of fraudulent and negligent misrepresentation are untimely, as discussed above. With respect to her allegations regarding her conversation with Ms. Markewich in 2009 in which the latter allegedly communicated, for the first time, Mr. Ross' intention not to fulfill "any legal obligations to ... named beneficiaries and to known creditors of Agnes Carvel," this claim again fails as untimely and insufficiently pled. (Pl. Ross Opp. Memo., ¶ 87; Pl. Blank Rome Opp. Memo., ¶ 85). As discussed above, the underlying misrepresentation must have occurred on or before 1999, placing it far outside the applicable statute of limitations for this claim. Because the pleadings state that Ms. Carvel was aware as early as 2003 that Mr. Ross had abandoned any obligation he might have to her as a beneficiary or creditor of Agnes Carvel's estate, her alleged "discovery" of the misrepresentation in 2009 is not plausible and thus places these allegations entirely outside the statute of limitations. Finally, this allegation fails to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure since Ms. Carvel has failed to identify facts regarding the underlying misrepresentation or how she was injured by it. Therefore, the plaintiff's claims for fraudulent and negligent misrepresentation should be dismissed.

### f. *Conversion*

Under New York law, conversion is " 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.' " *Thyroff v. Nationwide Mutual Insurance Co.,* 460 F.3d 400, 403–04 (2d Cir.2006) (quoting *Vigilant*

*Insurance Co. of America v. Housing Authority,* 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347 (1995)). Conversion does not apply to sums of money unless the money sought is a "determinate sum [ ]" that is "specific and capable of identification." 90 C.J.S. *Trover and Conversion* § 16; *see also LoPresti v. Terwilliger,* 126 F.3d 34, 41–42 (2d Cir.1997) (" '[I]t is well-settled that an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question." (alteration in the original) (quoting *Vanderbilt University v. Dipsters Corp.,* No. 84 Civ. 7215, 1986 WL 10471, at \*3 (S.D.N.Y. Sept. 17, 1986))). The statute of limitations for a claim of conversion is three years, and it accrues on the date that the conversion occurs. N.Y. CPLR § 214(3); *Daisley v. FedEx Ground Package System, Inc.,* 376 Fed. Appx. 80, 81 (2d Cir.2010).

The plaintiff's claim for conversion relies on two incidents. The first, which Ms. Carvel terms "Fraudulent Conversion of Real Estate," allegedly occurred when "Plaintiff's adversaries conspired to fraudulently transfer real estate once owned by Thomas and Agnes Carvel for less than fair market value, to insiders, in a self-dealing scheme with Hudson Valley Bank." (Am. Compl. at 31 & ¶ 93). Although she alleges that the defendants here were tangentially involved in this scheme in that they failed "to stop or recover the illegally transferred assets because of the agreements for these same adversaries to pay [the] Defendants for their collusion," Ms. Carvel nowhere alleges any damage to herself as a result of this transfer. (Am.Compl., ¶ 93). Therefore, this claim fails to meet the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**\*24** The second incident involves Mr. Ross' acquisition and withholding of a quantity of United States savings bonds allegedly belonging to Ms. Carvel. (Am. Compl., ¶¶ 122–23; Supp. Pleading, ¶¶ 95–110). The plaintiff claims that these bonds were left to her as a specific bequest in Agnes Carvel's will but remained in the possession of a lawyer in Tennessee until 2003. (Supp.Pleading, ¶¶ 95–97, 99). At that point, Mr. Ross was contacted by that attorney regarding the appropriate disposition of the bonds, and Mr. Ross directed that they be forwarded to him for delivery to Ms. Carvel; yet when the bonds arrived in New York, he did not notify her. (Supp.Pleading, ¶¶ 99, 102–03). The primary flaw in this allegation its timing: the plaintiff states that all of these events occurred in

January of 2003 and that she was made aware of them "[a]t some time around 2003" when Mr. Ross "verbally admitted to [her] that he had directed delivery of the bonds to himself" and was retaining them as part of his role as the New York ancillary administrator of Agnes Carvel's estate. (Supp.Pleading, ¶¶ 99, 102, 104). Because the alleged conversion occurred in 2003, the statute of limitations accrued at that time and expired in 2006. Moreover, Ms. Carvel cannot claim the benefit of equitable tolling because she admits that she was informed of these activities in 2003.

Because the plaintiff's conversion claims are untimely and insufficiently pled, they should be dismissed.

### g. *Unjust Enrichment*

In Count Four of her complaint, Ms. Carvel claims that the defendants have been unjustly enriched at her expense and asks for compensatory damages in the amount of $100,000,000. (Am. Compl. at 49 & ¶ 166). However, a cause of action for unjust enrichment under New York law is only available where a valid, enforceable contract does not already exist between the parties. *Rabin v. Mony Life Insurance Co.,* 387 Fed. Appx. 36, 42 (2d Cir.2010). Where a plaintiff brings claims for both breach of contract and unjust enrichment but fails to allege any duty owed to her outside that specified in the contract, her claim for unjust enrichment should be dismissed as duplicative. See *Hoeffner v. Orrick, Herrington & Sutcliffe LLP,* 61 A.D.3d 614, 615, 878 N.Y.S.2d 717, 719 (1st Dep't 2009) (finding plaintiff's unjust enrichment claim "duplicative of his breach of contract claim, since he alleges no duty owed him by defendants independent of the contract").

Here, the plaintiff's unjust enrichment claim is entirely duplicative of her breach of contract claims—the claims are pled under the same heading, rely on the same underlying facts, and lead to the same prayer for relief. (Am. Compl. at 49 & ¶¶ 163, 165, 166). Therefore, I recommend that the plaintiff's unjust enrichment claim be dismissed.

### h. *Attorney Liability in Negligence to Third Parties*

In her motion papers, Ms. Carvel cites *Schwartz v. Greenfield Stein & Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582 (Queens Sup.Ct.1977), for the proposition that an attorney can be liable in tort to an individual not her client but for whom she promises to perform a

legal task. (Pl. Ross Opp. Memo., ¶ 83; Pl. Blank Rome Opp. Memo., ¶ 79; Pl. McCarthy Fingar Opp. Memo., ¶ 90). In that case, the plaintiff made a secured loan to a borrower and relied on the borrower's attorney to perfect the security agreement. *Id.* at 882–83, 396 N.Y.S.2d at 582. The attorney failed to do so and the borrower subsequently went into bankruptcy, leaving the plaintiff without recourse for his loan. *Id.* at 883, 396 N.Y.S.2d at 582–83. The plaintiff then sued the borrower's attorney, claiming that the latter owed a duty to the plaintiff to perfect the security agreement and that, as a result of the attorney's negligence, the plaintiff had suffered the loss of the monies he loaned to the borrower. *Id.* at 883, 396 N.Y.S.2d at 583. The Queens County Supreme Court agreed with the plaintiff, finding that privity of contract between the plaintiff and the attorney was not necessary because the attorney owed an independent duty to the plaintiff as a result of his promise to perfect the security agreement. *Id.* at 886–87, 396 N.Y.S.2d at 584–85.

**\*25** It is not clear that this case has any application in the instant matter. The plaintiff alleges privity of contract between herself and all of the defendants; there is thus no reason why she would need to rely on this theory in order to sustain claims against the defendants for violations of their agreements. She offers no additional facts in support of this claim aside from the ones that underlie her breach of contract and negligent misrepresentation claims. This claim therefore has no basis in the plaintiff's complaint, and I recommend that it be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### i. *Aiding Breach of Fiduciary Duty and Conversion*

The plaintiff asserts that the defendants "could be held liable" for having aided other defendants in their breaches of fiduciary duty and acts of conversion. (Pl. Ross Opp. Memo., ¶ 81; Pl. Blank Rome Opp. Memo., ¶ 77; Pl. McCarthy Fingar Opp. Memo ., ¶ 88). She relies on *Joel v. Weber,* 197 A.D.2d 396, 602 N.Y .S.2d 383 (1st Dep't 1993), which holds that "under New York law, an attorney may be liable to third parties for actions taken in furtherance of his role as counsel upon proof ... of the existence of fraud, collusion, malice or bad faith." *Id.* at 396–97, 602 N.Y.S.2d at 384 (internal quotation marks omitted). Such actions sound in malpractice and therefore carry a three-year statute of limitations. N.Y. CPLR § 214(6).

This claim runs aground because it is untimely and because the plaintiff has failed to plead sufficient facts to sustain it. Ms. Carvel's pleadings indicate that this cause of action arises out of four different representations undertaken by the Ross and Blank Rome defendants. First, she refers to Mr. Ross' role as "both client-fiduciary and lawyer for the estates, trusts and corporations ." (Pl. Ross Opp. Memo., ¶ 80; Pl. Blank Rome Opp. Memo., ¶ 76). However, she does not identify the specific "estates," "trusts," or "corporations" to which she is referring; nor does she explain how these entities have violated her rights, let alone how they have done so based on the Ross defendants' advice. Her pleading is therefore insufficient to fulfill the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure. Second, Ms. Carvel refers to Blank Rome's representation of Mr. Ross as the New York ancillary administrator of Agnes Carvel's estate. (Pl. Blank Rome Opp. Memo., ¶ 76). The plaintiff does separately allege that at least one of the Ross defendants' violations of her rights occurred as a result of the Blank Rome defendants' influence over him. (Supp.Pleading, ¶¶ 16, 90). However, that violation—the signing of the 2001 stipulation—occurred in December of 2001 and was discovered by the plaintiff in 2003; as a result, this allegation is untimely. (Supp.Pleading, ¶¶ 101, 144, 148). Third, Ms. Carvel refers to Blank Rome's representation of Agnes Carvel's estate in Florida and New York. (Pl. Blank Rome Opp. Memo., ¶ 76). But she fails to specify what advice the Blank Rome defendants gave to the estate's representatives or how the estate acted to harm her, and thus this claim fails for insufficient pleading pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Finally, Ms. Carvel claims, "[o]n information and belief," that M & R "advised Leonard Ross to engage[ ] in fraud across state lines" when he allegedly converted her savings bonds. (Pl. Blank Rome Opp. Memo., ¶ 86). Because this alleged conversion occurred in 2003, the statute of limitations for this claim expired in 2006; furthermore, the plaintiff does not plead the facts underlying her "belief" that M & R had given Mr. Ross such advice and therefore has not alleged sufficient facts to sustain this claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*26 Because Ms. Carvel's allegations are either untimely or insufficiently pled, I recommend that her claim for aiding breach of fiduciary duty and conversion should be dismissed.

j. *Tortious Interference with Business Relations*

To state a claim for tortious interference with business relations under New York law, the plaintiff must show: "(1) [she] had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Development, L.L.C. v. Park Place Entertainment Corp.,* 547 F.3d 115, 132 (2d Cir.2008). The statute of limitations is three years and " 'accrues at the time the injury is sustained, rather than the date of defendant's alleged wrongful act or the date of discovery of the injury by the plaintiff.' " *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* No. 02 Civ. 6438, 2003 WL 21507529, at *3 (S.D.N.Y. June 30, 2003) (quoting *Rosemeier v. Schenker International, Inc.,* 895 F.Supp. 65, 66 (S.D.N.Y.1995).

The plaintiff briefly mentions this cause of action in her Amended Complaint, stating that the "Defendants conspired to tortiously interfere with Pamela Carvel's business expectations, from contracts, agreements, assignments, and promises valued at over \$15 million." (Am.Compl., ¶ 92). This statement is insufficient to plead a claim for tortious interference with business relations. Even considering the entirety of the plaintiff's pleadings, it is impossible to discern which defendants are alleged to have participated in this conspiracy or what potential business expectations or relations were interfered with. I therefore recommend that this cause of action be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

k. *Fraudulent Conveyance*

"[T]he general goal of fraudulent conveyance laws is to prevent valuable assets from being transferred away from a debtor in exchange for less than fair value, thus leaving insufficient funds or assets to compensate honest creditors." 37 Am.Jur.2d *Fraudulent Conveyances and Transfers* § 1. To prove that a fraudulent conveyance occurred under New York law, " 'a creditor must show intent to defraud on the part of the transferor.' " *In re Sharp International Corp.,* 403 F.3d 43, 56 (2d Cir.2005) (quoting *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1059 n. 5 (2d Cir.1995)). Because such intent constitutes fraud, it must be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. *Id.*

Ms. Carvel's sole reference to any alleged fraudulent conveyances appears in Count Six of her Amended Complaint, where she claims that the defendants "engaged in fraudulent transfers to themselves and their agents to defraud Pamela Carvel's claims." (Am.Compl., ¶ 177). However, this allegation is insufficiently specific to meet Rule 9(b)'s threshold—it does not identify who possessed the transferred assets, explain how that individual or entity was in the plaintiff's debt, describe when or where the defendants executed these transfers, state how the plaintiff was defrauded by them, or claim any damages. Therefore, this cause of action should be dismissed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

l. *Intentional Infliction of Emotional Distress*

**\*27** Under New York law, the tort of intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). For conduct to be considered "extreme and outrageous," it must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999) (quoting *Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (1993)). The statute of limitations for a claim of intentional infliction of emotional distress is one year, accruing on the date the tort was committed. *Zaltz v. Wells Fargo Home Mortgage,* No. 08 Civ. 11225, 2010 WL 3026536, at \*4 (S.D.N.Y. Aug. 2, 2010).

In Count Six of her Amended Complaint, the plaintiff identifies various of the defendants' acts that underlie her claim for intentional infliction of emotional distress, including "financial extortion, personal threats amounting to criminal coercion, and harassment" of both Agnes Carvel and herself. (Am.Compl., ¶¶ 178–80). To the extent that these threats were actually made against Agnes Carvel, they clearly fall outside the statute of limitations, since Agnes Carvel died in 1998. [4] (Am.Compl., ¶¶ 24, 71, 178, 180).

[4]    Ms. Carvel would not have direct standing to enforce any tort committed against Agnes Carvel; however,

she claims standing as an assignee because "in 1994 Agnes Carvel assigned her causes of action[ ] in claims to Pamela Carvel." (Pl. Ross Opp. Memo., ¶ 37).

Of the remaining acts, the plaintiff alleges only one that falls within the statute of limitations applicable to her claim for intentional infliction of emotional distress. Ms. Carvel states that she was informed in 2009 by Ms. Markewich that Mr. Ross "would take no steps to protect any interests of any beneficiaries or creditors of Agnes Carvel because those matters would be left to the estate in England." (Pl. Ross Opp. Memo., ¶ 87). As described, this act falls far short of the "atrocious" and "utterly intolerable" behavior required to meet the standard for "extreme and outrageous" conduct under New York law. *Stuto,* 164 F.3d at 827. Therefore, the plaintiff has failed to sufficiently plead the elements of a claim for intentional infliction of emotional distress, and this cause of action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

3. *Federal Claims*

In addition to her common law claims, the plaintiff has pled five causes of action based in federal law: (1) a violation of her rights as protected by 42 U.S.C. § 1981, (2) a conspiracy to violate her constitutional rights pursuant to 42 U.S.C. § 1983, (3) a conspiracy to violate her constitutional rights pursuant to 42 U.S.C. § 1985(2), (4) a violation of her rights as protected by 42 U.S.C. § 1988, and (5) a civil RICO claim. I will address each of these claims in turn.

a. *42 U.S.C. § 1981*

**\*28** Section 1981 confers on

> [a]ll persons within the jurisdiction of the United States ... the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a). To state a claim pursuant to § 1981, the plaintiff must show that she "is a member of a racial minority group and the defendants intended to discriminate against her based on her race." *White v.*

*St. Joseph's Hospital,* 369 Fed. Appx. 225, 226–27 (2d Cir.2010). Although Ms. Carvel claims the protection of § 1981, she has failed to plead that she is a member of a racial minority or that the defendants took adverse actions against her based on her race. (Am. Compl. at 42). Therefore, she has failed to state a claim for a violation of 42 U.S.C. § 1981, and this cause of action should be dismissed.

### b. *42 U.S.C. § 1983*

"To state a claim for relief in an action brought under § 1983, [the plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). Acting "under color of state law" requires a defendant to "exercise[ ] power possessed by virtue of state law and made possible only because [she] is clothed with the authority of state law." *Arar v. Ashcroft,* 585 F.3d 559, 568 (2d Cir.2009) (quoting *West v. Atkins,* 487 U.S. 42, 49 (1988)) (internal quotation marks omitted). A private individual can also be subject to suit under § 1983, but only if she is "a willful participant in a joint activity with the State or its agents." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 947 (1982). The statute of limitations for a claim under § 1983 in New York is three years, *Harrison v. Harlem Hospital,* 364 Fed. Appx. 686, 688 (2d Cir.2010), and it accrues when the plaintiff learns, or reasonably should have learned, of the injury on which the claim is based, *De Carlo v. Ratner,* 204 F.Supp.2d 630, 638 (S.D.N.Y.2002), aff'd, 53 Fed. Appx. 161 (2d Cir.2002).

" 'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages.' " *AK Tournament Play, Inc. v. Town of Wallkill,* No. 09 Civ. 10579, 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011) (quoting *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999)). Although a plaintiff cannot simply set forth conclusory allegations of a § 1983 conspiracy, *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002), the Second Circuit has acknowledged that "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn,* 200 F .3d at 72 (internal quotation marks omitted).

*29 Ms. Carvel claims that all of the defendants here, along with other individuals not named, participated in a conspiracy to deprive her of various constitutional rights, including: (1) "equal treatment as that given other *Carvel* fiduciaries, beneficiaries, and creditors who aligned with [the Foundation]" pursuant to the Privileges and Immunities Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) "due process to recover stolen and wrongfully diverted property" pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (3) "the right to assist law enforcement without personal and financial threats, harassment, and intimidation" pursuant to the First Amendment to the United States Constitution; and (4) the right to a jury trial pursuant to the Seventh Amendment to the United States Constitution. (Am. Compl., ¶¶ 79, 146; Supp. Pleading, ¶¶ 42(c), 75(d)). She alleges that this conspiracy had two purposes: to maintain the Foundation's control over Agnes Carvel's estate assets and to prevent Ms. Carvel from investigating acts of fraud and wrongdoing by the defendants, Justice Scarpino, and the individuals running the Foundation. She further alleges that it was accomplished in two ways: by naming the Foundation as the remainder beneficiary of Agnes Carvel's estate and by causing the plaintiff financial hardship by denying her reimbursement of her legal fees. (Am. Compl., ¶¶ 10–11, 16, 40, 63, 87, 98, 146, 148, 153, 187; Supp. Pleading, ¶¶ 38(b), 55–58, 153).

Ms. Carvel alleges that these actions were perpetrated "under color ... of state law" because the defendants were joined in this conspiracy by Justice Scarpino, a state employee acting in his official capacity. (Am.Compl., ¶¶ 5, 16, 40, 59). She states that both Juustice Scarpino and the defendants agreed to participate in the conspiracy after accepting payment from the "foundation fraudsters," the individuals running the Foundation and the 1991 Trust. (Am. Compl., ¶ 66; Supp. Pleading, ¶ 140; Supp. Pleading Reply, ¶¶ 7, 9). In particular, the plaintiff alleges that William Griffin, the President of the Foundation and also the purported owner of Hudson Valley Bank, bribed Justice Scarpino with three home equity lines of credit totaling $400,000 that Justice Scarpino took out in 2000, 2001, and 2004. (Am. Compl., ¶¶ 77–78; Supp. Pleading, ¶ 40(e); Supp. Pleading Reply, ¶¶ 7, 9). She also claims that the same "foundation fraudsters" gave money to the Ross and Blank Rome defendants to induce them to abandon

her interests by failing to seek reimbursement for her and "throwing" the trial that ended with the Foundation being named as the remainder beneficiary of Agnes Carvel's estate. (Am. Compl., ¶¶ 63, 66; Supp. Pleading at 18 & ¶¶ 55–58). She states that the "foundation fraudsters" paid off the Ross and Blank Rome defendants through the 2001 stipulation, in which the Foundation and the 1991 Trust agreed to pay the Ross and Blank Rome defendants on an ongoing basis for their legal work on behalf of Agnes Carvel's ancillary estate in New York. (Supp.Pleading, ¶ 48(a); Stipulation). With respect to the McCarthy Fingar defendants, Ms. Carvel alleges that Mr. Streng had a personal relationship with Justice Scarpino that enabled him to deny Ms. Carvel reimbursement of the legal fees she had advanced to McCarthy Fingar despite having been awarded $900,000 in fees by Justice Scarpino for his representation of the plaintiff. (Am. Compl., ¶ 83; Supp. Pleading, ¶¶ 193–94).

**\*30** Even if these allegations were true, the plaintiff's claim is time-barred. The injuries underlying her conspiracy claim—the failure to reimburse her legal fees, the denial of her right to a jury trial, and the selection of the Foundation as the remainder beneficiary of Agnes Carvel's estate—were all apparent to the plaintiff by 2005 at the latest, and thus the statute of limitations for this claim expired in 2008. (Am. Compl., ¶ 2; Supp. Pleading, ¶¶ 56–57, 153, 210–11, 216; Letter of Pamela Carvel dated July 11, 2005, attached as Exh. S to Touitou 11/24/09 Decl., at 2; Letter of Pamela Carvel dated June 30, 2005, attached as Exh. I to Brophy 9/30/10 Aff., at 1–2; *In re The Thomas and Agnes Carvel Foundation,* 2002 WL 32872391, at \*10). Therefore, this claim should be dismissed.

c. *42 U.S.C. § 1985(2)*
To state a claim for conspiracy pursuant to *§ 1985(2)*, the plaintiff must allege that (1) she is a member of a protected class, (2) the defendants conspired to deprive her of her constitutional rights, (3) the defendants "acted with class-based, invidiously discriminatory animus," and (4) the plaintiff suffered damage. *Simpson ex rel. Simpson v. Uniondale Union Free School District,* 702 F.Supp.2d 122, 133 (E.D.N.Y.2010) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)). Ms. Carvel references a claim for conspiracy pursuant to *42 U.S.C. § 1985(2)* in both her Amended Complaint and her motion papers. (Am. Compl. at 42; Pl. Blank Rome Opp. Memo., ¶ 64). However, nowhere does she allege either that she is a member of a protected class or that the defendants'

conspiratorial actions were motivated by her membership in that class. This cause of action should therefore be dismissed for failure to state a claim.

d. *42 U.S.C. § 1988(a)*
In her motion papers, Ms. Carvel implies that the defendants have violated her rights as protected by § 1988(a). (Pl. Blank Rome Opp. Memo., ¶ 65). This claim fails for a variety of reasons. In the first instance, § 1988(a) does not give individuals a substantive right but rather provides a mechanism for filling procedural gaps that might hinder the enforcement of federal civil rights laws. *See, e.g., Wallace v. Kato,* 549 U.S. 384, 402 (2007); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 725 (1999). The plaintiff has stated no facts relevant to the application of this procedural mechanism; she has also failed to explain how § 1988(a) protects her, how the defendants violated it, or what damages she has sustained as a result. Therefore, her claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5. *Civil RICO*
The Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") authorizes the filing of private civil suits by "any person injured in his business or property by reason of a violation" of its provisions. 18 U.S.C. § 1964(c). A person bringing a RICO claim must first plead the elements of a RICO violation, which include "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," followed by an "injury to [her] business or property as a result of the RICO violation." *Terrell v. Eisner,* 104 Fed. Appx. 210, 212 (2d Cir.2004) (internal quotation marks omitted). To show a "pattern of racketeering activity," the plaintiff must allege at least two acts among those enumerated in 18 U.S.C. § 1961(1), which include bribery, obstruction of justice, obstruction of criminal investigations, tampering with a witness or victim, and retaliating against a witness or victim. 18 U.S.C. § 1961(1), (5). The statute of limitations for a civil RICO claim is four years, and it accrues " 'when the plaintiff discovers or should have discovered the RICO injury.' " *Gilmore v. Gilmore,* No. 09 Civ. 6230, 2010 WL 4910211, at \*3 (S.D.N.Y. Nov. 15, 2010) (quoting *National Group for Communications and Computers Ltd. v. Lucent Technologies Inc.,* 420 F.Supp.2d 253, 264 (S.D.N.Y.2006)).

**\*31**  In her Amended Complaint, Ms. Carvel alleges "[o]n information and belief" that the defendants "entered into an enterprise of corruption," which she refers to as a RICO violation. (Am.Compl., ¶¶ 68, 106–07, 183). Of the various acts allegedly committed by the defendants, there are four that could qualify as racketeering activity as defined by 18 U.S.C. § 1961(1). The first is bribery—the plaintiff states that the defendants here participated in a scheme whereby Mr. Griffin bribed Justice Scarpino to make rulings favorable to the Foundation. (Am. Compl., ¶¶ 77–78; Supp. Pleading, ¶ 40(e)). However, any injury arising from these alleged bribes would have been known to Ms. Carvel by 2002, when Justice Scarpino found that the Foundation was the rightful remainder beneficiary of Agnes Carvel's estate. *In re The Thomas and Agnes Carvel Foundation,* 2002 WL 32872391. This injury therefore falls outside the four-year statute of limitations for a civil RICO claim. Next, Ms. Carvel claims that the defendants, in particular the Ross defendants, obstructed criminal investigations into fraud related to Thomas and Agnes Carvel's estates by refusing to turn over evidence or properly pay expert witnesses. (Supp.Pleading, ¶¶ 124–26, 128–29, 131). According to the pleadings, however, these activities occurred and were immediately known to the plaintiff by November of 2004 at the latest; any injury resulting from them thus fall outside the statute of limitations for her civil RICO claim. Third, Ms. Carvel accuses the defendants of acquiescing in behavior intended to intimidate and harass Agnes Carvel and thereby tampering with a victim. (Am.Compl., ¶¶ 178, 180). Any such acts were necessarily both performed and known to the plaintiff by the time of Agnes Carvel's death in 1998; they therefore fall outside the statute of limitations for this claim. Finally, the plaintiff accuses the defendants of refusing to reimburse her legal fees in retaliation for her investigations into their participation in criminal fraud and ethical violations. (Am. Compl., ¶ 153; Supp. Pleading, ¶ 38(b); Supp. Pleading Reply, ¶ 9). This claim also falls outside the statute of limitations. With respect to the Ross and Blank Rome defendants, Ms. Carvel states that they accomplished their diversion of monies owed to her by entering into the 2001 stipulation, which she was informed of in 2003. (Am. Compl., ¶¶ 21, 148; Supp. Pleading Reply, ¶ 9). The McCarthy Fingar defendants were awarded legal fees by Justice Scarpino in 2003 and 2004; their failure to reimburse Ms. Carvel for those fees would have been apparent to her at that time, if not before. (6/30/03 Decision at 7; 7/30/03 Order at 3; 12/29/04 Decision at 4).

Because none of Ms. Carvel's allegations of racketeering behavior are timely, her civil RICO claim should be dismissed.

### 4. *State Statutory Claims*

Finally, the plaintiff pleads two claims pursuant to New York statutory law: embezzlement and violations of New York State Judiciary Law § 487.

#### a. *Embezzlement*

**\*32**  The plaintiff alleges that she was damaged in the amount of \$18,000,000 by Mr. Ross' "collusion to embezzle corporate assets." (Supp.Pleading, ¶¶ 58, 118, 121). Embezzlement is prohibited by New York Penal Law § 155.05(2)(a); however, the plaintiff's claim fails for insufficient pleading. She has not stated any facts regarding the alleged embezzlement aside from her conclusory allegation that Mr. Ross "engaged" in "collusion" to commit it. Therefore, this cause of action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

#### b. *New York State Judiciary Law § 487*

New York State Judiciary Law § 487 (" § 487") creates a private right of action for any individual harmed by an attorney's act of "deceit or collusion," where that act was committed "with intent to deceive the court or any party." N.Y. Jud. Law § 487(1). For the attorney's misconduct to be actionable, her acts must have occurred during the pendency of a court action while she was acting in her capacity as an attorney. *See O'Brien v. Alexander,* 898 F.Supp. 162, 168–69 (S.D.N.Y.1995) ("Since no lawsuit was pending when the alleged representations in question were made ... plaintiff's claim must be dismissed, for section 487 by its terms applies only to statements made to the court or any party to a lawsuit."), *aff'd,* 101 F.3d 1479 (2d Cir.1996); *Northern Trust Bank of Florida/Sarasota, N.A. v. Coleman,* 632 F.Supp. 648, 650 (S.D.N.Y.1986) ("Section 487 is aimed at actions by an attorney in his or her role *as an attorney.* The mere fact that a wrongdoer is an attorney is insufficient to impose liability for treble damages under section 487." (emphasis in the original)); *Nardella v. Braff,* 621 F.Supp. 1170, 1172 (S.D.N.Y.1985) ("For a civil action to lie for violation of § 487 the deceit complained of must occur during the pendency of a court action."). Because this cause of action sounds

in malpractice, its statute of limitations is three years, accruing on the date of the alleged malpractice. N.Y. CPLR § 214(6); *Rafter v. Liddle,* No. 05 Civ. 4296, 2006 WL 2255093, at *7, *11 (S.D.N.Y. Aug. 4, 2006), *aff'd,* 288 Fed. Appx. 768 (2d Cir.2008).

In her motion papers, the plaintiff accuses all of the defendants of numerous violations of § 478; however, these allegations are both untimely and insufficiently pled. The plaintiff first alleges that the defendants have lied to this Court in their motions to dismiss. (Pl. Ross Opp. Memo., ¶¶ 102(4), 107; Pl. Blank Rome Opp. Memo., ¶ 100(4); Pl. McCarthy Fingar Opp. Memo., ¶ 85). This accusation is insufficiently pled—Ms. Carvel fails to state which of the many statements in defendants' various motions are false or what damage has been done to her as a result of those false statements. Some of the plaintiff's other allegations are based on events outside the statute of limitations for this action; for example, she alleges deceit by the Ross and Blank Rome defendants in signing the 2001 stipulation and in transferring savings bonds from Tennessee to New York in 2003. (Pl. Ross Opp. Memo., ¶¶ 101, 102(1); Pl. Blank Rome Opp. Memo., ¶¶ 99, 100(1)). Although the plaintiff provides a further laundry list of examples of the defendants' "deceit [and] collusion resulting in financial damages," no dates are ascribed to the acts, and the allegations are largely incoherent. (Pl. Ross Opp. Memo., ¶ 102; Pl. Blank Rome Opp. Memo., ¶ 100). To the extent that these accusations are duplicative of the plaintiff's legal malpractice and breach of fiduciary duty allegations, discussed above, they are untimely. To the extent that some of them may relate to events that occurred on or after January 2006, they are insufficiently pled and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. *Leave to Amend*

**\*33** A *pro se* complaint "should not be dismissed 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Wilson v. Wilson–Polson,* No. 09 Civ. 9810, 2010 WL 3733935, at *10 (S.D.N.Y. Sept. 23, 2010) (quoting *Branum v. Clark,* 927 F .2d 698, 705 (2d Cir.1991)). " 'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.' " *Lucente v. International Business Machines Corp.,* 310 F.3d 243, 258 (2d Cir.2002) (quoting *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993)). Here, the plaintiff

has already been given two opportunities to amend and supplement her pleadings so as to state cognizable causes of action. With the exception of one claim, she has failed to do so. Therefore, where the Court dismisses the plaintiff's claims, it should do so with prejudice.

### E. *Filing Injunction*

Where appropriate, " '[a] district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.' " *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986) (quoting *Abdullah v. Gatto,* 773 F.2d 487, 488 (2d Cir.1985)). One common way for courts to fulfill this obligation is by issuing filing injunctions, which forbid individuals from filing lawsuits on particular topics or against particular defendants without the court's prior approval. *See, e.g., Iwachiw v. New York State Department of Motor Vehicles,* 396 F.3d 525, 528–29 (2d Cir.2005). The Second Circuit has established five factors for courts to consider when determining whether to issue a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 528 (quoting *Safir,* 792 F.2d at 24).

In their motion papers, the Blank Rome defendants ask the Court to "impose an injunction ... to prevent further litigation against the Markewich Firms" by the plaintiff. (Supplemental Reply Memorandum of Law in Support of Defendants Eve Rachel Markewich, Blank Rome LLP and Markewich & Rosenstock LLP's Motion to Dismiss the Complaint at 10). Similar injunctions have already been entered against Ms. Carvel by the Honorable Shira A. Scheindlin and the Honorable Jed S. Rakoff of this

**Carvel v. Ross, Not Reported in F.Supp.2d (2011)**

2011 WL 856283

Court. *See Carvel v. Scarpino,* No. 08 Civ. 3305, 2010 WL 5174392, at *10 (S.D.N.Y. Dec. 16, 2010); *Thomas and Agnes Carvel Foundation,* 2010 WL 3303777, at *1. Judge Scheindlin's injunction applies to some of the defendants here, namely, Eve Markewich, Frank Streng, and Joel Aurnou. *Carvel,* 2010 WL 5174392, at *10. The reason for these injunctions is clear: Ms. Carvel has demonstrated a preference for filing repetitive, meritless *pro se* lawsuits against the Blank Rome defendants, undoubtedly at great expense to them and with no consideration for the Court's time and resources. Taking her motives at their most innocent, she appears to be driven by her conviction that the Blank Rome defendants are somehow responsible for losses of money and property that she believes are rightfully hers; however, Ms. Carvel has failed to successfully channel this belief into any semblance of a viable lawsuit despite numerous attempts. Her repeated insistence on filing lawsuits against the Blank Rome defendants has thus crossed the line into harassment and raises the inference "that she seeks to appropriate property to which she is not entitled and, in the alternative, to impose unjustified litigation burdens on those whom she deems responsible for the frustration of her efforts in this regard." *Thomas and Agnes Carvel Foundation,* 2010 WL 3303777, at *34. Therefore, to the extent that the Blank Rome defendants are not already protected by this district's prior filing injunctions, an injunction should be entered prohibiting Ms. Carvel from filing further complaints in this district against Ms. Markewich, Mr. Bockstein, Mr. Valente, Blank Rome, or M & R, without the prior approval of the Court.

*Conclusion*

**\*34** For the reasons set forth above, I recommend that the defendants' motions to dismiss be denied with respect to the plaintiff's claim for breach of contract against Joel Aurnou, Frank Streng, and McCarthy Fingar LLP; otherwise, I recommend that the motions be granted and the remainder of the plaintiff's claims be dismissed with prejudice. I also recommend the entry of a filing injunction against Ms. Carvel with respect to the Blank Rome defendants. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 1310 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 856283

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1560164
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Michael ABRAHAMS, Plaintiff,

v.

INC. VILLAGE OF HEMPSTEAD et al., Defendants.

No. 08 CV 02584(SJF)(WDW).
|
June 2, 2009.

West KeySummary

**1**   **Constitutional Law**
👉 Termination or discharge

**Municipal Corporations**
👉 Proceedings

**Public Employment**
👉 State, local, and other non-federal
personnel in general

A village administrator sufficiently stated a due process claim against a village for allegedly coercing a third party into making a false affidavit against the administrator. The affidavit stated that the administrator had consensual oral sex with the third party. The administrator alleged that the village disseminated this information to a news publication and that several employers would not employ him because of the information in the news publication. Further, the administrator alleged that the statements were false and that the village knew they were false, and that he was not provided with any opportunity to contest the accusation before he was terminated. U.S.C.A. Const.Amend. 5; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

**Attorneys and Law Firms**

Michael Abrahams, Hempstead, NY, pro se.

Howard Marc Miller, Bond, Schoeneck & King, Garden City, NY, for Defendants.

**OPINION & ORDER**

FEUERSTEIN, District Judge.

I. Introduction

 *1   On June 27, 2008, *pro se* plaintiff Michael Abrahams ("Plaintiff") commenced this action against defendants Inc. Village of Hempstead ("Village"); Wayne Hall ("Hall"), as the Village Mayor and as an individual; Perry Pettus ("Pettus"), as the Village trustee and as an individual; Tanya Ford ("Ford"), as the Village Clerk and as an individual; Michelle Banks ("Banks"), as Secretary to the Village Planning Board and as an individual; Debra DeSalvo ("DeSalvo"), as the Village Attorney and as an individual; Willie Dixon ("Dixon"), as Deputy Chief of the Village and as an individual (collectively, the "Village Defendants"); Earlene Hooper ("Hooper"), as New York State Assemblywoman and as an individual; and Samantha Potts ("Potts") (collectively, with Hooper and the Village Defendants, "Defendants"), pursuant to 42 U.S.C. § 1983 (" § 1983") asserting various federal and state law claims. The Village Defendants now move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)"). For the reasons set forth herein, the motion of the Village Defendants is granted in part and denied in part. The motion is granted to the extent that: (1) the state law claims against Banks and Ford are dismissed; and (2) the claims for perjury and fraud against Defendants are dismissed. The motion is otherwise denied.

II. Background [1]

[1]      As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Complaint are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. They do not constitute findings of fact by this court.

In or about October 2006, Plaintiff was employed by the Village as the Village Administrator. (Compl.¶ 1.) On or about June 29, 2007, Plaintiff was asked to sign a letter of resignation by Lisa Barrington, [2] the Village Human Resources Director, and DeSalvo, the Village Attorney.

(*Id.* at ¶ 12.) Plaintiff contends that "there was no reason given to [him] ... why [he] should sign ..." and that he was "escorted out of Village Hall by Village police ..." when he refused. (*Id.*)

Although Plaintiff identifies this individual as Lisa Harrington, the Village Defendants identify her as Lisa Barrington. (Mem. of Law in Supp. of Village Defs.' Mot. to Dismiss Compl., filed Dec. 22, 2008 ("Village Defs.' Mem."), p. 4.)

The next day, "the Village caused an article to appear in Newsday ...," (*id.* at ¶ 13), which stated, *inter alia*, that: (1) Plaintiff "was terminated '[w]hen he didn't resign;" (2) Newsday received "a sworn affidavit that contained a statement from a woman who said she had had consensual sex with [Plaintiff] on June 13 in a village car" from the office of Assemblywoman Hooper; and (3) Plaintiff's termination was "not connected to the affidavit." (William Murphy, *Village Administrator fired,* NEWSDAY, June 30, 2007 ("June 2007 Newsday article"), attached as Ex. A to Compl.) Plaintiff contends that "[t]he Village released this information to ... Assemblywoman [Hopper] and to the City of Long Beach Attorney's Office. (Compl.¶ 14.)

Potts, the affiant, later recanted her statements. (*Id.* ¶¶ 17, 19.)

"Immediately" after Plaintiff's termination, Banks, "in her capacity as [Hall's] Secretary," stated to a "group of Village residents that [Plaintiff] did have sex with [Potts] in the Village vehicle and that the Newsday report was true." (*Id.* at ¶ 21.) Ford, to whom Plaintiff's Village vehicle was assigned after his termination, "in her capacity as the Village Clerk, telephoned several parties and communicated that [Plaintiff] had sex with [Potts] in the Village vehicle," that she had found a letter to Plaintiff from his wife, and that, "in her capacity as Village Clerk[,] ... [she] shared the contents [of the letter] with third parties." (*Id.* at ¶¶ 21, 22.)

**\*2** On or about May 2008, Plaintiff "discovered that [Desalvo] created a false letter ... and inserted it in [Plaintiff's] personnel file," (*id.* at ¶ 23), which stated, inter alia, that "[Plaintiff] had made disparaging comments to other employees pertaining to his race." [3] (Letter to Pl. from DeSalvo, dated Oct. 19, 2006, attached as Ex. C to Compl.)

3

Plaintiff also alleges that, while he was employed by the Village, on or about October 2006, "[Plaintiff] was cornered in [his] office by white supervisors; and they threatened to beat [him] up while using racial epithets." (Compl.¶ 4.) Plaintiff further alleges that he reported the incident to Hall, who "refused to address the issue." (*Id.*)

### III. Discussion

#### A. Rule 12(b)(6)

The standard of review on a motion made pursuant to Rule 12(b) (6) is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do ... Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic,* 550 U.S. 555, 127 S.Ct. at 1965, 167 L.Ed.2d 929 (citations omitted). Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. *Williams v. Berkshire Fin. Group, Inc.,* 491 F.Supp.2d 320, 324 (E.D.N.Y.2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003); *see also Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir.2007). The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002) (citing *International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)).

A *pro se* plaintiff's submissions are held " 'to less stringent standards than formal pleadings drafted by lawyers ....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

B. Due Process

**\*3** Plaintiff alleges that Defendants denied him due process because, *inter alia,* (1) "Defendants wrongfully terminated [him];" and (2) "[D]efendants' defamatory conduct has denied [him] the opportunity to earn a living." (Compl.¶ ¶ 34–35.)

The Due Process Clause of the Fourteenth Amendment requires that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. However, "[d]efamation alone, even by a government entity, does not constitute a deprivation of a liberty interest protected by the Due Process Clause." *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 31 (2d Cir.1994) (citing *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)); *see also Patterson v. City of Utica,* 370 F.3d 322, 328 (2d Cir.2004). Rather, "some 'stigma plus' " is required "before mere defamation will rise to the level of a constitutional deprivation." *Martz,* 22 F.3d at 31 (citing *Easton v. Sundram,* 947 F.2d 1011,1016 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.1989), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989)). " 'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." *Segal v. City of New York,* 459 F.3d 207, 213 (2d Cir.2006) (quoting *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003)); *see also Patterson,* 370 F.3d at 330 (stating that "[l]oss of one's reputation can ... invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment") (citation omitted).

"[I]n order to demonstrate a deprivation of the stigma component of a stigma-plus claim," a plaintiff must show that: (1) "the government made stigmatizing statements about [him]-statements that call into question [the] plaintiff's good name, reputation, honor, or integrity;" (2) "these stigmatizing statements were made public;" and (3) "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Segal,* 459 F.3d at 212 (citations and quotation marks omitted); *see also Patterson,* 370 F.3d at 330. A "plaintiff also must demonstrate that [his] liberty was deprived without due process of law." *Segal,* 459 F.3d at 213.

Construing the Complaint liberally and interpreting it to raise the strongest arguments it suggests, as the Court must on a motion to dismiss a *pro se* plaintiff's complaint, Plaintiff has sufficiently alleged a due process violation that is plausible on its face. Plaintiff alleges, *inter alia,* that Hall, Pettus, Dixon and DeSalvo "coerced" Potts into making a false affidavit, "the Village caused" the June 2007 Newsday article, and "the Village released" the information to Hooper and the City of Long Beach. (Compl.¶¶ 13, 14, 19.) The affidavit stated, *inter alia,* that "in a [Village] vehicle, [Potts] had consensual oral sex with [Plaintiff]," (Potts Aff., attached as Ex. A to Compl.), and the June 2007 Newsday article stated that it received "a sworn affidavit that contained a statement from a woman who said she had had consensual sex with [Plaintiff] ... in a village car." (June 2007 Newsday article.) Plaintiff further alleges that he "was told by several employers that they could not employ [Plaintiff] because of the information that the Village caused to be disseminated to third parties, particularly Newsday" and that he was told that he was "damaged goods." (Compl.¶ 24.) "[S]tatements that 'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession' will satisfy the stigma requirement." *Segal,* 459 F.3d at 212 (quoting *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630–31 (2d Cir.1996)).

**\*4** Plaintiff also alleges that the statements were false and that Defendants knew that they were false. "A plaintiff generally is required only to raise the falsity of these

stigmatizing statements as an issue, not prove they are false." *Segal,* 459 F.3d at 213 n. 5 (citations and quotation marks omitted).

In addition, the allegedly stigmatizing statements "were made concurrently with, or in close temporal relationship to," Plaintiff's termination. *Segal,* 459 F.3d at 212. The affidavit is dated several days prior to Plaintiff's termination and Plaintiff alleges that "Defendants gave the information to [Hopper] before [Plaintiff] was terminated." [4] (Pl.'s Aff. in Opp'n, filed Feb. 17, 2009 ("Pl.'s Opp'n."), ¶ 12.) Contrary to the Village Defendants' contention, Plaintiff's claim does not fail simply because the June 2007 Newsday article was printed one (1) day after Plaintiff was terminated and the statements made by Banks and Ford occurred "immediately" after Plaintiff's termination, (Compl.¶¶ 13, 21). *See Velez v. Levy,* 401 F.3d 75, 89 (2d Cir.2005) (stating that "[w]hen government actors defame a person and-either previously or subsequently-deprive them of some tangible legal right or status, ... a liberty interest may be implicated, even though the "stigma" and "plus" were not imposed at precisely the same time) (citations omitted); *Patterson,* 370 F.3d at 335 (stating, although "the statements were made after plaintiff's termination, ... in this particular situation, where some of the statements were made within one week of plaintiff's termination, and were made in direct response to requests for reasons for plaintiff's termination, that the proper nexus exists to demonstrate a deprivation of plaintiff's liberty interest that is protected by the Due Process Clause") (citations omitted).

[4]     Because Plaintiff is pro se, the Court considers the factual allegations raised in the Complaint as well as in his opposition papers. *See, e.g., Bordianu v. Educational Broad. Corp.,* No. 07 Civ. 1762, 2008 WL 1882106, at * 3 (E.D.N.Y. Apr. 24, 2008) (citing *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987)).

To the extent that Plaintiff alleges that the June 2007 Newsday article stated that "the reasons for Plaintiff's termination were 'not connected to the affidavit' " and that the statements by Banks and Ford "did not relate to the reasons why Plaintiff was terminated," (Village Defs.' Mem. pp. 9, 11), these arguments raise factual issues that are not appropriate on a motion to dismiss. Plaintiff asserts, *inter alia,* that he was terminated without being given a reason. Moreover, the context in which Banks and Ford made the alleged false statements is not before

the Court. Such questions are more suitably resolved in a motion for summary judgment.

Plaintiff also alleges that he was denied due process because, *inter alia,* he was terminated without "the rights afforded to [him] as a CSEA member," "was given no warnings or prior disciplinary action." and "[Defendants] never inquired of [Plaintiff] regarding the accusations of [Potts]." (Compl.¶ 34.) While "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim," *Segal,* 459 F.3d at 214, "a well-pleaded complaint may proceed even if ... recovery is very remote and unlikely." *Bell Atlantic,* 550 U.S. at 556 (citations omitted); *see also Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (stating that "in considering [ ] a motion to dismiss, [t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims") (citations and quotation marks omitted).

**\*5** Accordingly, the motion of the Village Defendants' to dismiss Plaintiff's Due Process claim is denied.

## C. Section 1983 Claims [5]

[5]     42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

### 1. Municipal Liability

A municipality or municipal entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Linder v. City of New York,* 263 F.Supp.2d 585, 591 (E.D.N.Y.2003). A municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] ... [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic]

2009 WL 1560164

channels." *Monell,* 436 U.S. at 690, 98 S.Ct. 2018, 56 L.Ed.2d 611. The plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers,* 924 F.Supp. 8, 12 (S.D.N.Y.1996); *see also Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 478 (E.D.N.Y.2002).

Contrary to Defendants' contention, Plaintiff's failure to allege any official custom or policy that caused the alleged deprivation of his constitutional rights does not require dismissal of his claim. Construing the Complaint liberally, Plaintiff has pled sufficient facts to withstand a motion to dismiss. Plaintiff alleges wrongful conduct by Hall, the Village Mayor, who very likely has final decision-making authority, which caused the alleged violation of Plaintiff's civil rights. [6] *See Anthony v. City of New York,* 339 F.3d 129, 139 (2d Cir.2003) (stating that "[a]ctions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim") (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Plaintiff asserts, *inter alia,* that Hall "observed" Potts being coerced into signing the affidavit even though he "never believed the facts that were being alleged" and "facilitated the dissemination [of the affidavit] to Newsday." (Pl.'s Opp'n. ¶ 5.) Moreover, Plaintiff alleges that Hall encourages "Village attorneys" to "create false paper trails." (Compl.¶ 23.)

---

[6]    Whether the Village Mayor has final decision-making authority is at least a question of fact.

**\*6** Accordingly, the motion of the Village Defendants to dismiss Plaintiff's § 1983 claim against the Village is denied.

### 2. Individual Capacity Claims

"In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Al—Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065–66 (2d Cir.1989)).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted).

Construing the Complaint liberally and accepting all factual allegations as true, Plaintiff alleges sufficient personal involvement of the Village Defendants to survive a motion to dismiss. Plaintiff alleges, *inter alia,* that Hall, Pettus, Dixon and DeSalvo "coerced" Potts into making a false affidavit, and that Ford and Banks made false statements concerning the veracity of the affidavit.

Case 6:18-cv-00631-MAD-TWD  Document 12  Filed 08/17/18  Page 112 of 126
Abrahams v. Inc. Village of Hempstead, Not Reported in F.Supp.2d (2009)
2009 WL 1560164

Accordingly, the motion of the Village Defendants to dismiss Plaintiff's § 1983 claim against the Village Defendants in their individual capacities is denied.

### D. Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 72 L.Ed.2d 396 (1982), or where it was objectively reasonable for them to believe that their acts did not violate those rights. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed. 523 (1987); *see also Almonte v. City of Long Beach,* 478 F.3d 100, 109 (2d Cir.2007) (stating that "an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law"). "At the motion to dismiss stage of a civil damages action, a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Charles W. v. Maul,* 214 F.3d 350, 356–57 (2d Cir.2000) (citations and quotation marks omitted). A right is "clearly established" if it is: (1) "defined with reasonable specificity;" (2) if "the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right," or (3) "whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent." *Id.* at 360.

**\*7** "[T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause ... violates a clearly established right." *Groh v. Ramirez,* 540 U.S. 551, 578, 124 S.Ct. 1284, 1302, 157 L.Ed.2d 1068 (2004). However, at this stage of the litigation, it is premature for the Court to decide whether the Village Defendants violated Plaintiff's constitutional rights and whether it was objectively reasonable for the Village Defendants to believe that their acts did not violate Plaintiff's constitutional rights. *See Ford v. McGinnis,* 352 F.3d 582, 598 (2d Cir.2003) (stating that if the district court finds that the plaintiff's "constitutional rights were violated ... then [it should]

entertain defendants' arguments that they are nevertheless entitled to qualified immunity") (citing *Stuto v. Fleishman,* 164 F.3d 820, 825 (2d Cir.1999) (holding courts should first determine whether a constitutional violation occurred before deciding whether qualified immunity exists)); *see also Toth ex rel. Toth v. Board of Educ., Queens Dist. 25,* No. 07 Civ. 3239, 2008 WL 4527833, at \*7 (E.D.N.Y. Sept. 30, 2008) (stating that "[b]ecause [the defense of qualified immunity] 'necessarily involves a fact-specific inquiry, [i]t is generally premature to address the defense of qualified immunity in a motion to dismiss ....' ") (quoting *Bernstein v. City of New York,* No. 06 Civ. 895, 2007 WL 1573910, at \*9 (S.D.N.Y. May 24, 2007)).

Accordingly, the motion of the Village Defendants to dismiss based upon qualified immunity is denied.

### E. State Law Claims

Plaintiff asserts various state law claims, including, *inter alia,* defamation, fraud, and perjury. Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367.

### 1. Notice of Claim

State notice of claim statutes apply to pendent state law claims in federal court. *See Hardy v. New York City Health & Hosp. Corp.,* 164 F.3d 789, 793 (2d Cir.1999); *Kyne v. Carl Beiber Bus Servs.,* 147 F.Supp.2d 215, 217 (S.D.N.Y.2001). Under New York law, a notice of claim is a condition precedent to maintaining tort actions against municipalities or any of their officers, agents or employees. *See* N.Y. Gen. Mun. Law §§ 50–e and 50–I; *Hardy,* 164 F.3d at 793. The notice of claim must set forth, among other things, the nature of the claim, and must be filed within ninety days of when the claim arises. *See* N.Y. Gen. Mun. Law §§ 50–e(1)(a) and (2); *Hardy,* 164 F.3d at 793. Notice of claim requirements are strictly construed, and a failure to comply with the requirements generally requires dismissal of the state law claims. *See Hardy,* 164 F.3d at 793–94.

It is undisputed that Plaintiff never filed a notice of claim. However, Plaintiff contends that Defendants were acting outside the scope of their employment when they committed the alleged wrongdoing. "[W]hether an

2009 WL 1560164

individual defendant's alleged conduct occurred within the scope of employment is often a question of fact" but "the court is not precluded from deciding this question as a matter of law where the plaintiff's allegations regarding an individual defendant are limited to conduct that occurred within the scope of employment." *See Cortlandt v. Westchester County,* No. 07 Civ. 1783, 2007 WL 3238674, at *7 (S.D.N.Y. Oct, 31, 2007) (citations omitted). Unlike Hall, Pettus, DeSalvo and Dixon, Plaintiff's allegations concerning Banks and Ford are limited to alleged wrongdoing that occurred in their capacity as Hall's Secretary and Village Clerk, respectively, thus Plaintiff was required to file a notice of claim with regard to defendants Banks and Ford.

**\*8** Accordingly, the motion of the Village Defendants to dismiss the state law claims is granted to the extent that the state law claims are dismissed against Banks and Ford.

### 2. Fraud/Perjury

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." *City of New York v. Smokes–Spirits. Com, Inc,* 541 F.3d 425, 454 (2d Cir.2008) (citations omitted). Even construing the Complaint liberally, the Complaint fails to state a fraud claim that is plausible on its face because, *inter alia,* it is

devoid of any factual allegations that Plaintiff relied on any false material fact.

Insofar as Plaintiff asserts a claim for perjury, there is no private right of action for perjury and, thus, this claim is likewise dismissed. [7] *See Bennett v. Falcone,* No. 05 Civ. 1358, 2009 WL 816830, at * 3 n. 7 (S.D.N.Y. Mar. 25, 2009) (citations omitted).

[7]    Although Hooper and Potts have not moved to dismiss or otherwise appeared in this action, Plaintiff's claims for perjury and fraud are dismissed against these defendants for the same reasons stated herein. Insofar as Plaintiff seeks a default judgment against Hooper and Potts, (*see* Pl.'s Opp'n p. 5), such request is denied without prejudice for, *inter alia,* failure to comply with the Federal Rules of Civil Procedure and Rule 4 of this Court's Individual Rules.

Accordingly, the motion of the Village Defendants to dismiss with respect to Plaintiff's fraud and perjury claims is granted.

### IV. Conclusion

The motion of the Village Defendants to dismiss the Complaint is GRANTED in part and DENIED in part.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1560164

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2902954
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Jefferson L. PIERCE, Individually and as Legal
Parent and Guardian of J.P. and M.P., Minors, and
Diane J. Pierce, Individually and as Legal Parent
and Guardian of J.P. and M.P., Minors, Plaintiffs,
v.
CHAUTAUQUA COUNTY, New York; Chautauqua
County Sheriff's Department; Joseph A. Gerace,
Individually and as Chautauqua County Sheriff;
Chautauqua County Sheriff's Deputies, Chris
Ottoway and Jason Beichner; Intended to be the
Individual Officers involved in the harassment,
assault, and/or detention of Plaintiff, Jefferson L.
Pierce, herein "CCSD John Doe" and/or "CCSD
Jane Doe," the names "CCSD John/Jane Doe,"
being fictitious, and intended to be any additional
individual officers involved in the harassment
assault and/or detention of Plaintiffs herein; Kirk
Maurer, Individually and as Commissioner of
Chautauqua County Department of Social Services;
Chautauqua County Department Of Social Services;
and "DSS John Doe," and/or "DSS Jane Doe,"
the names "DSS John/Jane Doe" being fictitious,
intended to be the Chautauqua County Department
of Social Services Employees or Agents involved in
the harassment of the Plaintiffs herein, Defendants.

No. 06-CV-644C(F).
|
Sept. 28, 2007.

**Attorneys and Law Firms**

Charles Edward Fagan, Jamestown, NY, for Plaintiffs.

Diane F. Bosse, Thomas W. Bender, Volgenau & Bosse, LLP, Buffalo, NY, for Defendants.

**Opinion**

JOHN T. CURTIN, United States District Judge.

**\*1** In this action, plaintiffs seek damages against the County of Chautauqua; the Chautauqua County Sheriff's Department ("Sheriff's Department"); Sheriff Joseph A. Gerace ("Sheriff Gerace"), individually and in his official capacity; Sheriff's Deputies Chris Ottoway ("Ottoway"), Jason Beichner ("Beichner"), and any other deputies involved; Commissioner of Chautauqua County Department of Social Services Kirk Maurer ("Commissioner Maurer") individually and in his official capacity; Chautauqua County Department of Social Services ("DSS"); and any of its agents who may have been involved. Plaintiffs' causes of action are based on theories of liability for several common law torts, as well as violations of plaintiffs' civil rights under 42 U.S.C. § 1983. The defendants have filed a motion to dismiss plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) (Item 23). For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND and FACTS

According to the amended complaint, on November 25, 2005 at approximately 7:50 p.m., Chautauqua County Sheriff's Deputies Ottaway and Beichner arrived at the plaintiffs' house and accused plaintiff Jefferson L. Pierce of discharging a firearm after dark (Item 22, ¶ 19). The deputies also stated that plaintiff Jefferson Pierce had a felony record and was therefore unlawfully in possession of a firearm *(id.)*. Plaintiffs denied that a firearm had been discharged, and Mr. Pierce told the deputies that he was not a convicted felon (*id.,* ¶ 20). Nonetheless, the deputies entered the residence without a warrant and without consent, knocked over the plaintiff's two-year-old daughter, and confiscated several firearms, including a World War I-era rifle which plaintiff Diane J. Pierce was holding (*id.,* ¶¶ 21-22). Plaintiffs also allege that the deputies threatened the plaintiffs that Chautauqua County Child Protection Services agents, who were parked in plaintiffs' driveway, would remove plaintiffs' children if plaintiffs did not comply with the search of their residence (*id.,* ¶¶ 19, 24).

Plaintiffs' complaint further alleges that the deputies used excessive force when arresting Mr. Pierce (Item 22, ¶¶ 36-40). The complaint alleges that the deputies " 'grabbed' Mr. Pierce by the arms, 'wrenched' him around, and forcibly removed him from his home ...," causing pain and exacerbating his preexisting injuries (*id.,* ¶¶ 25, 37, 38). Mr. Pierce was taken to the Chautauqua County jail, where he was detained for approximately one hour until it was

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.  1

discovered that a mistake had been made, and that he was not a convicted felon (*id.,* ¶ 26). Mr. Pierce was then released *(id.).*

Plaintiffs initiated this action by filing a complaint on September 26, 2006 (Item 1). After the defendants filed a motion to dismiss, plaintiffs filed an amended complaint on December 4, 2006 (Item 18). Plaintiffs claim, among other things, that the actions of the Sheriff's Deputies violated their civil rights according to 42 U.S.C. § 1983. Specifically, plaintiffs claim that Chautauqua County and/or Sheriff Joseph A. Gerace are liable for plaintiffs' injuries because Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions ...." (Item 22, ¶ 32). Plaintiffs also claim that Chautauqua County and Sheriff Gerace have a municipal policy which allows officers to act on complaints without sufficient investigation (*id .,* ¶ 33).

**\*2** On January 5, 2007, the defendants filed a motion to dismiss plaintiffs' amended complaint (Item 23). Defendants argue that plaintiffs have failed to allege any actions by the Chautauqua County DSS or Commissioner Maurer that constitute a violation of section 1983, failed to allege any personal involvement by Sheriff Gerace, failed to adequately allege any municipal custom or policy necessary to support a claim against the municipalities or individual defendants sued in their official capacities, failed to state a claim against the Sheriff's Department and DSS as administrative arms of Chautauqua County, and have failed to allege a claim against the individual deputies (Item 24, ¶¶ 14-19).

### *DISCUSSION*

### I. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under Rule 12(b)(6), a plaintiff's complaint will be dismissed if it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When ruling on a defendant's motion to dismiss, a judge must accept as true

all of the factual allegations contained in the complaint. *Bell Atlantic Corp.,* 127 S.Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In ruling on a motion to dismiss, the court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (citing *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). Therefore, after interpreting the complaint in favor of the plaintiff, if it is determined that the plaintiff has failed to allege a set of facts which, if proven to be true, would entitle him to relief, the complaint will be dismissed. *See Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d. Cir.1993), *cert. denied,* 513 U.S. 1121, 115 S.Ct. 925, 130 L.Ed.2d 804 (1994); *Sworn v. Western New York Children's Psychiatric Ctr.,* 269 F.Supp.2d 152, 155 (W.D.N.Y.2003) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

### II. Claims Against the Sheriff's Department and DSS

**\*3** The defendants seek dismissal of the complaint against the Chautauqua County Sheriff's Department and the Chautauqua County DSS on the ground that both governmental departments are administrative units of the County of Chautauqua and are not separate legal entities subject to suit.

It is well settled that, under New York law, "departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Caidor v. M & T Bank,* 2006 WL 839547, at \*2 (N.D.N.Y. March 27, 2006) (quoting *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, since the Chautauqua County Sheriff's Department and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed. *See Willard v. Town of Hamburg,* 1996 WL 607100, at \*1 (W.D.N.Y.

Sept.30, 1996) (dismissing the claims against the Police Department and the Town Board because neither "exist separate and apart from the Town and [they] do not have their own legal identities").

### III. Claims Against Commissioner Maurer and Sheriff Gerace

The plaintiffs have sued both Commissioner Maurer and Sheriff Gerace in their official capacities as well as their individual capacities. The defendants, however, argue that the complaint alleges no facts which indicate personal involvement by Commissioner Maurer or Sheriff Gerace in the alleged incident, and that plaintiffs have failed to allege any actions by these defendants which deprived plaintiffs of their constitutional rights.

In order for a plaintiff to sustain a section 1983 claim against a supervisory official in his individual capacity, the plaintiff must allege and demonstrate that the official was personally involved in the alleged constitutional violation. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (citing *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003), *cert. denied,* 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005)).

> The personal involvement of a supervisory defendant may be shown by the evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

In this case, the plaintiffs' amended complaint does not allege any personal involvement by Commissioner Maurer in the alleged violation of plaintiffs' constitutional rights. Moreover, Commissioner Maurer is never specifically mentioned in the body of the amended complaint. Rather, plaintiffs allege that DSS employees (Child Protection Services agents) were parked in an unfamiliar van in their driveway (Item 22, ¶ 24). Furthermore, plaintiffs never allege any conduct by Commissioner Maurer's employees that would constitute a violation of plaintiffs' constitutional rights. It is merely alleged that DSS employees sat inside of a van parked in plaintiffs' driveway during the course of an official investigation. This conduct does not constitute the violation of a constitutional right. Plaintiffs also fail to allege that Commissioner Maurer has created a custom or policy which violates constitutionally protected rights, that Commissioner Maurer was grossly negligent in supervising his subordinates, or that he exhibited deliberate indifference to the constitutional rights of others. Since plaintiffs have not alleged any conduct by Commissioner Maurer which would establish personal involvement of a supervisory official under section 1983, the claims against Commissioner Maurer must be dismissed. *See Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) ("Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted"), *aff'd,* 210 F.3d 354 (2d Cir.2000) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981), *superseded on other grounds as recognized in Hines v. Sullivan,* 806 F.Supp. 413 (W.D.N.Y.1992)).

**\*4** Similarly, in their amended complaint, plaintiffs do not allege any personal involvement by Sheriff Gerace which would create liability under section 1983. There are no allegations that Sheriff Gerace directly participated in the arrest and detention of Mr. Pierce, nor are there allegations that Sheriff Gerace, after being informed of the wrongful arrest and detention, failed to provide a remedy. Moreover, plaintiffs' allegations of Sheriff Gerace's involvement are conclusory and do not state a claim upon which relief can be granted. Plaintiffs, in their claim of false imprisonment, state that Sheriff Gerace and/or Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions and allowed the officers to act with grave indifference

2007 WL 2902954

to human safety and life." (Item 22, ¶ 32). The plaintiffs rely solely on the alleged constitutional violations surrounding Mr. Pierce's arrest in order to support their claim of inadequate policy and training. Plaintiffs claim that Mr. Pierce's arrest was "unreasonable" and "exhibited depravity," and that "these actions are standard operating procedure for the Chautauqua County Sheriff's Department." *Id.* In addition, plaintiffs also allege that Sheriff Gerace has created a policy which allows officers "to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation ...." *Id.,* ¶ 33. Again, plaintiffs rely solely on the events surrounding the arrest of Mr. Pierce to allege that this is the "standard operating procedure" of the Sheriff's Department. Plaintiffs assert that "[u]pon information and belief, this policy is in existence because of the action and/or lack of action in controlling and/or lack of training of deputy Sheriffs by Sheriff Joseph A. Gerace." *Id.*

These allegations are insufficient to survive a motion to dismiss. The plaintiffs have not alleged sufficient facts to support their claims that Sheriff Gerace created unconstitutional policies, and they have not alleged any facts which indicate that Sheriff Gerace had the requisite personal involvement in the alleged constitutional violation. Specifically, plaintiffs have not alleged factual evidence, outside of this isolated incident, which would create an inference of a custom or policy created by Sheriff Gerace. Furthermore, plaintiffs' allegations are conclusory, and they do not allege a tangible connection between any actions of Sheriff Gerace and the injuries suffered by Mr. Pierce. *See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986)* (dismissing claims against the County Commissioner of Corrections and the Warden because the claims were conclusory and they did not "allege a tangible connection between the acts of [the defendants] and the injuries suffered"). Rather, plaintiffs' allegations are simply an attempt to hold Sheriff Gerace vicariously liable for the alleged constitutional violations of deputies Ottoway and Beichner which, under section 1983, is improper. *See Richardson v. Goord, 347 F.3d 431, 435 (2d Cir.2003)* (" '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior' ") (quoting *Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir.2003), cert. denied, 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005)).* Since plaintiffs' allegations are

conclusory and do not contain sufficient factual support, the claims against Sheriff Gerace must be dismissed.

### IV. Sheriff's Deputies Ottoway and Beichner

**\*5** Plaintiffs have also alleged claims against Chautauqua County Sheriff's Deputies Chris Ottoway and Jason Beichner. Defendants argue that plaintiffs have sued the deputies solely in their official capacities, and that such claims must be dismissed as they are equivalent to claims against the County. In the amended complaint, plaintiffs state that Ottoway and Beichner are "individual[s], who harassed and assaulted Plaintiffs and / or unlawfully detained Plaintiff Jefferson L. Pierce ...." Item 22, ¶¶ 9, 10. In contrast, plaintiffs named Sheriff Gerace and Commissioner Maurer, individually and as County Sheriff and Commissioner of DSS, respectively. *Id.,* ¶¶ 8, 13. While plaintiffs have stated that defendants Ottoway and Beichner are Chautauqua County Sheriff's Deputies, a plain reading of the complaint indicates that plaintiffs intended that Ottoway and Beichner be sued in their individual capacities. The court concludes that Deputies Ottoway and Beichner are named in their individual capacities in the amended complaint, and the section 1983 claims against them for (i) false arrest, (ii) false imprisonment and, (iii) excessive use of force will thus be examined for legal sufficiency.

#### A. False Arrest/Imprisonment

"The elements of false arrest/imprisonment under § 1983 are substantially the same as those under New York law." *See Caidor v. M & T Bank, 2006 WL 839547, at \*4 (N.D.N.Y. March 27, 2006)* (citing *Danielak v. City of New York, 2005 WL 2347095, at \*6 (E.D.N.Y.2005), aff'd,* 209 Fed. Appx. (2d Cir.2006). In order for a plaintiff to state a claim for false arrest/imprisonment under New York law, a plaintiff must show that: (1) the defendant intended to confine him, (2) plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified. *Id.* (quoting *Brewster v. Nassau County, 349 F.Supp.2d 540, 551 (E.D.N.Y.2004)).*

A confinement is privileged or justified if the arrest is made with probable cause. *Brewster v. Nassau County, 349 F.Supp.2d at 551.* Probable cause exists when, at the moment of the arrest, " 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to

warrant a prudent man in believing that the [individual] had committed or was committing an offense.' " *Id.,* quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The determination of whether probable cause exists can be made by the court as a matter of law, so long as there is "no dispute as to the pertinent events and the knowledge of the arresting officers." *Id.* (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). Therefore, pursuant to Rule 12(b)(6), if the court determines that a plaintiff's complaint sufficiently demonstrates that the arresting officers had probable cause, the claim for false arrest must be dismissed. *Id.* (citing *Daniels v. City of New York,* 2003 WL 22510379, at *2-4 (S.D.N.Y. Nov.5, 2003)).

**\*6** In this case, the complaint clearly shows that plaintiff: (1) was confined by Deputies Ottoway and Beichner, (2) was conscious of the confinement, and (3) did not consent to the confinement by the deputies (Item 22, ¶¶ 18-35). Therefore, plaintiff satisfies the first three elements, as set forth above, of the false arrest/imprisonment claim. Defendants' motion turns on the element of probable cause, which is usually a question of fact following discovery. *See Weyant v. Okst,* 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers"); *Bullard v. City of New York,* 240 F.Supp.2d 292, 298 (S.D.N.Y.2003) ("In contrast, '[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature ... the existence ... of probable cause is to be decided by the jury' ") (quoting *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998)).

With regard to the fourth element, plaintiffs allege that the deputies lacked probable cause to arrest Mr. Pierce. Specifically, plaintiffs allege that the deputies "had no reasonable basis to detain Plaintiff, and his false arrest was without just cause or provocation." (Item 22, at ¶ 27.) The complaint alleges that Deputies Ottoway and Beichner acted without a search warrant and upon false information regarding gunshots on Mr. Pierce's property (*id.,* at ¶¶ 26, 42). It is difficult, however, to determine from the complaint exactly what information was available to the deputies at the time they responded to the complaint, and whether they had any reason to question the veracity of the report of a discharged firearm. This deficiency

makes it impossible for the court to determine as a matter of law that the deputies acted with probable cause. Moreover, plaintiffs allege that " 'someone' had 'misread' " information regarding Mr. Pierce's criminal history and, as a result, Mr. Pierce was thought to be a convicted felon (*id.,* at ¶ 26). It is alleged that the deputies relied on this false information in responding to the complaint and in their arrest of Mr. Pierce (*id.*). The fact that Mr. Pierce's criminal history was "misread," and that he was released immediately upon the deputies' learning of the error, raises questions with regard to the existence of probable cause. For these reasons, this court denies defendants' motion to dismiss plaintiffs' false arrest/imprisonment claim.

### B. Excessive Force

The plaintiffs also assert a cause of action against Deputies Ottoway and Beichner for the use of excessive force during the course of the arrest of Mr. Pierce. A person's Fourth Amendment rights are violated, and a section 1983 claim arises, if excessive force is used during an arrest, an investigatory stop, or any other seizure of a free citizen. *See Cox v. County of Suffolk,* 780 F.Supp. 103, 109 (E.D.N.Y.1991) (citing *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). To analyze a claim of excessive force under the Fourth Amendment, the court must apply an objective standard. *Caidor v. M & T Bank,* 2006 WL 839547, at *6 (N.D.N.Y. March 27, 2006). The court's inquiry is whether " 'the officers' actions [were] "objectively reasonable" in light of the facts and circumstances confronting them.' " *Id.* (quoting *Cox,* 780 F.Supp. at 109). Furthermore, the injuries suffered by a plaintiff need not be permanent or severe in order to recover damages under section 1983 for the use of excessive force. *See Cox,* 780 F.Supp. at 109 (quoting *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987)).

**\*7** Here, it is alleged that during the arrest the deputies " 'grabbed' [Mr.] Pierce by the arms, handcuffed him, pulled and 'wrenched him around' with great physical force, then dragged him over the lawn of [his] home and forced him into a sheriff patrol car ." (Item 22, ¶ 37.) It is further alleged that Mr. Pierce showed no resistance during the arrest, yet the deputies still used such excessive force *(id.).* Plaintiffs also allege that the deputies showed a disregard for Mr. Pierce's preexisting injuries, which have rendered him totally disabled *(id.).* It is alleged that the excessive force used by the officers has left Mr. Pierce physically damaged (*i.e.,* bruised, weak, sore, lame), and has exacerbated his preexisting injuries, causing him

great pain, discomfort, and restrictions in his range of motion (*id.,* ¶¶ 38-39). Plaintiffs also allege that Mr. Pierce has suffered emotional pain which makes him "extremely nervous, humiliated and fearful because of [the deputies'] actions, and Plaintiff's feelings that he was unable to protect his wife and children from [the deputies]." (*Id.,* ¶ 39.).

The court finds that these allegations are sufficient, if proven, to show that the actions of the deputies may not have been "objectively reasonable." *See, e.g., Robison v. Via,* 821 F.2d at 924 (denying a summary dismissal when the plaintiff alleged that she had been " 'pushed' ... against the inside of the door of her car, 'yanked' ... out, thr[own] up against the fender, and [had her arm] 'twisted her back' "). Since the allegations by Mr. Pierce are similar in nature to the allegations in *Robison,* and allowing the plaintiffs the benefit of all favorable inferences, the defendants' motion to dismiss plaintiffs' excessive force claim against Deputies Ottoway and Beichner is denied.

**V. Municipal Custom or Policy**

The plaintiffs have also named Chautauqua County as a defendant, arguing that the County has a municipal custom or policy which allows officers to respond to complaints in a manner which violates constitutionally protected rights. Furthermore, the plaintiffs argue that Chautauqua County has not properly trained its officers, and that this lack of training allows them to act in a manner which violates constitutionally protected rights. The defendants argue that plaintiffs' section 1983 claims against Chautauqua County insufficiently allege a custom or policy and that plaintiffs' allegations are conclusory.

According to section 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. § 1983. Municipalities are considered "persons" for purposes of section 1983 claims; however, the municipality may not be sued under section 1983 unless the challenged action of a municipal employee was performed pursuant to a municipal custom or policy. *Monell v. Dep't of Social Services,* 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, a municipality cannot be held liable under section 1983 for the tortious conduct of its employees based on a theory of *respondeat superior. Id.* at 691.

**\*8** Although a plaintiff must show the existence of a municipal custom or policy, the custom or policy need not be an explicitly stated rule or regulation. *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). Rather, an inference that a municipal custom or policy exists may be drawn from:

> circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights ....

*Id.* (internal citation omitted). An inference of a municipal custom or policy may not, however, be drawn from "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level ...." *Id.*

In order for a plaintiff to demonstrate a municipality's "deliberate indifference" to the constitutional rights of those within its jurisdiction, a plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) (citing *Ricciuti,* 941 F.2d at 123; *Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987)).

In this case, the plaintiffs allege that Sheriff Gerace and/or Chautauqua County "have a municipal policy or

custom allowing its officers to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation whatsoever to justify the degree of force displayed [by deputies Ottoway and Beichner] on November 25, 2005." (Item 22, ¶ 33). The plaintiffs further allege that this policy is due to the action, or inaction, of Sheriff Gerace *(id.)*. The plaintiffs, however, have not made sufficient factual allegations to support this claim. The plaintiffs allege that "upon information and belief" the county has such a policy. *Id.* However, plaintiffs' amended complaint contains no factual allegations which support an inference of such a policy other than the events which took place at plaintiffs' residence on November 25, 2005. The plaintiffs allege that because certain actions were taken during the course of the arrest of Mr. Pierce, these actions represent Chautuaqua County custom or policy. As stated above, an inference of a custom or policy cannot be drawn from "a single incident alleged in a complaint." *Ricciuti,* 941 F.2d at 123. Had plaintiffs alleged other occurrences of similar conduct by Chautauqua County deputies, this court may have been able to draw an inference of such a custom or policy. In the absence of such factual support, however, this court must dismiss plaintiffs' claim against Chautauqua County.

**\*9** Similarly, the plaintiffs have failed to allege enough facts to support an inference that Chautauqua County has failed to properly train its municipal employees. Plaintiffs allege that Sheriff Gerace and/or Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions and allowed the officers to act with grave indifference to human safety and life." (Item 22, ¶ 32). Again, these conclusory allegations are not supported by sufficient facts. The plaintiffs rely solely on the events surrounding Mr. Pierce's arrest, and allege no other incidents of officers using similar conduct which would create an inference of Chautauqua County's failure to train its officers regarding "human safety and life." *(Id.)* Furthermore, plaintiffs do not allege that Chautauqua County had any knowledge of officers who have acted with "grave indifference to human safety and life." Therefore, the court cannot conclude that Chautauqua County's need to train its officers regarding "human safety and life" was "so obvious" that its failure to do so was a reflection of its "deliberate indifference" to the constitutional rights of its citizens. *See Canton,* 489 U.S. at 390; *cf. Aguilera v. County of Nassau,* 453 F.Supp.2d 601, 608 (E.D.N.Y.2006) (holding that the plaintiffs' allegations for failure to train its employees were sufficient

because the plaintiffs alleged that the county received "numerous complaints regarding its officers['] failure to provide immediate emergency medical attention ...."). Without factual support, the court is unable to draw the inference that Chautauqua County failed to adequately train its officers. Accordingly, plaintiffs' section 1983 claims against Chautauqua County are dismissed.

## VI. State Common Law Claims

The defendants contend that plaintiffs' state common law causes of action should be dismissed arguing that: (1) some of the causes of action are repetitive, (2) the seventh and eleventh causes of action, for "damage to personal property," are not cognizable claims, and (3) since plaintiffs' federal causes of action should be dismissed, the court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). [1] (*See* Item 24, at 14-16). Plaintiffs have not responded to defendants' arguments regarding the state common law claims.

[1]    Defendants also argue that "a number of plaintiffs' causes of action fail to meet the pleading requirements of the Federal Rules of Civil Procedure ...." (Item 24, Exh. 4, at 13.) The defendants do not, however, specify which causes of action fail to meet the pleading requirements. *See id.,* pp. 14, 16, 771 N.Y.S.2d 804. As the defendants have not specified which causes of action fail to meet the pleading requirements, the court does not address this argument.

At the outset, the court has determined that the amended complaint sufficiently alleges federal law claims against Sheriff's Deputies Ottoway and Beichner for false arrest/imprisonment and for the use of excessive force. In addition, the court concludes that the federal law claims and the state law claims alleged in this case "derive from a common nucleus of operative fact ... such that [plaintiffs] would ordinarily be expected to try them all in one judicial proceeding ...." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, this court will exercise supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(a).

**\*10** With regard to the state law claims, defendants argue that the amended complaint contains repetitive causes of action. For example, the plaintiffs' amended complaint states a fifth cause of action "by plaintiffs" for intentional infliction of emotional distress (Item 22,

¶¶ 43-50). Plaintiffs also allege a ninth cause of action on behalf of Diane Pierce and a twelfth cause of action on behalf of plaintiffs' minor children for intentional infliction of emotional distress (*id.,* ¶¶ 61-66, 73-82). The defendants argue that as the fifth cause of action appears to state a claim on behalf of all the plaintiffs for intentional infliction of emotional distress, the ninth and twelfth causes of action are repetitive and should be dismissed (*See* Item 24, p. 15).

Having read the amended complaint in its entirety, and interpreting the complaint in the light most favorable to the plaintiffs, this court finds that the ninth and twelfth causes of action are not repetitive and should not be dismissed. Although the fifth, ninth, and twelfth causes of action are ambiguously labeled and allege similar facts, each cause of action contains factual allegations specific to one of the parties, and each cause of action appears to be on behalf of a particular party. For example, the fifth cause of action is labeled "by plaintiffs." However, it contains three paragraphs (Item 22, ¶¶ 44-46) which specifically allege facts pertinent to Mr. Pierce's claim. Additionally, these factual allegations are not made in either the ninth or the twelfth causes of action. Furthermore, paragraph E in the prayer for relief states that the fifth cause of action is "in favor of" Mr. Pierce. Similarly, paragraph I states that the ninth cause of action is "in favor of" Mrs. Pierce, and paragraph L states that the twelfth cause of action is "in favor of" of plaintiffs on behalf of their minor children. Therefore, despite its lack of clarity and organization, this court finds that the amended complaint states a fifth cause of action on behalf of Mr. Pierce, a ninth cause of action on behalf of Mrs. Pierce, and a twelfth cause of action on behalf of the minor children for intentional infliction of emotional distress.

The defendants also state that plaintiffs' seventh and eleventh causes of action, for "damages to personal property," are not cognizable claims (Item 24, p. 15). Defendants argue that damages alone are not a "cause of action;" rather, damages to personal property can only be claimed as relief sought in another cause of action (*id.*). The court, however, finds that plaintiffs' "damage to personal property" claims are essentially claims for trespass to chattels. *See, e.g., Davidoff v. Davidoff,* 2006 WL 1479558, at *10 (N.Y.Sup.Ct. May 10, 2006) (concluding that plaintiff's cause of action for destruction of personal property was essentially a claim for trespass to chattels). Moreover, in order to establish a claim for trespass to chattels, a plaintiff must allege that the defendants "intentionally, and without justification or consent, physically interfered with [the] use and enjoyment of [plaintiffs'] personal property in plaintiffs' possession, and that [plaintiffs were] harmed thereby." *School of Visual Arts v. Kuprewicz,* 3 Misc.3d 278, 771 N.Y.S.2d 804 (N.Y.Sup.Ct.2003). Here, the plaintiffs have alleged, in both the seventh and the eleventh causes of action, that the Sheriff's Deputies removed the heirloom rifle from Diane Pierce's hands, tossed it in the trunk of their car, and returned it in a damaged state upon the release of Mr. Pierce (Item 22, ¶¶ 56-58, 70-72). Therefore, the court finds that plaintiffs' seventh and eleventh causes of action for "damage to personal property" state sufficient claims against defendants for trespass to chattels.

### CONCLUSION

**\*11** Accordingly, the defendants' motion to dismiss is granted in part and denied in part. The causes of action brought pursuant to 42 U.S .C. § 1983 against the municipal defendants and defendants Gerace and Maurer are dismissed, and the motion is denied as to the claims brought against deputies Ottoway and Beichner in their individual capacities. The court will retain supplemental jurisdiction over plaintiffs' state law claims. The parties shall meet with the court on Monday, November 26, 2007, at 10 a.m. to set a further schedule.

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2902954

**WESTLAW** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

## MEMORANDUM & ORDER

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section–Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds

intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4, Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

1   Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

## Legal Standard

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

## Factual History

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York,

2014 WL 5823116

Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further support obligations and all subsequent child support collection efforts were unconstitutional. [2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia*, lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

[2]     *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470

F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

### Discussion

**A. *Domestic Relations Exception to Jurisdiction***
Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 U.S.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *aff'd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this

Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at *11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at *2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at *2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at *1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters."). [3] This Court need not resolve whether such a narrow challenge would be

barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,* [4] the *Rooker–Feldman* doctrine.

3    *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted.)

4    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

**B. *Rooker–Feldman* Doctrine**

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application of *Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at \*6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at \*3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with

the state court judgment." *Sorenson,* 2009 WL 580426, at \*7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

**\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, —— F. App'x ——, 2014 WL 4233392, at \*1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the

2014 WL 5823116

Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5823116

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.